Luke A. Barefoot
Lina Bensman
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel for LATAM Airlines Group S.A.*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | x | |
| In re: | : | Chapter 11 |
| | : | |
| LATAM Airlines Group S.A., *et al*., | : | Case No. 20-11254 (JLG) |
| | : | |
| Debtors.[1] | : | Jointly Administered |
| | : | |
| TM Solutions USA LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adv. Pro. No. 20-01207 (JLG) |
| | : | |
| LATAM Airlines Group S.A., | : | |
| | : | |
| Defendant. | : | |
| | x | |

### DEFENDANT LATAM AIRLINES GROUP S.A.'S MEMORANDUM OF LAW
### IN SUPPORT OF ITS MOTION TO DISMISS THE CLASS ACTION COMPLAINT

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's U.S. or local tax identification number (as applicable), are: LATAM Airlines Group S.A. (59-2605885); Lan Cargo S.A. (98-0058786); Transporte Aéreo S.A. (96-9512807); Inversiones Lan S.A. (96-5758100); Technical Training LATAM S.A. (96-847880K); LATAM Travel Chile II S.A. (76-2628945); Lan Pax Group S.A. (96-9696800); Fast Air Almacenes de Carga S.A. (96-6315202); Línea Aérea Carguera de Colombia S.A. (26-4065780); Aerovías de Integración Regional S.A. (98-0640393); LATAM Finance Ltd. (N/A); LATAM Airlines Ecuador S.A. (98-0383677); Professional Airline Cargo Services, LLC (35-2639894); Cargo Handling Airport Services, LLC (30-1133972); Maintenance Service Experts, LLC (30-1130248); Lan Cargo Repair Station LLC (83-0460010); Prime Airport Services Inc. (59-1934486); Professional Airline Maintenance Services LLC (37-1910216); Connecta Corporation (20-5157324); Peuco Finance Ltd. (N/A); Latam Airlines Perú S.A. (52-2195500); Inversiones Aéreas S.A. (N/A); Holdco Colombia II SpA (76-9310053); Holdco Colombia I SpA (76-9336885); Holdco Ecuador S.A. (76-3884082); Lan Cargo Inversiones S.A. (96-9696908); Lan Cargo Overseas Ltd. (85-7752959); Mas Investment Ltd. (85-7753009); Professional Airlines Services Inc. (65-0623014); Piquero Leasing Limited (N/A); TAM S.A. (N/A); TAM Linhas Aéreas S.A. (65-0773334); Aerolinhas Brasileiras S.A. (98-0177579); Prismah Fidelidade Ltda. (N/A); Fidelidade Viagens e Turismo S.A. (27-2563952); TP Franchising Ltda. (N/A); Holdco I S.A. (76-1530348) and Multiplus Corredora de Seguros Ltda. (N/A). For the purpose of these Chapter 11 Cases, the service address for the Debtors is: 6500 NW 22nd Street Miami, FL 33131.

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND ...................................................................................................... 3

ARGUMENT ............................................................................................................................... 3

I.      Plaintiff Fails to State a Claim Under the Montreal Convention ....................................... 4

II.     Plaintiff Fails to State a Claim for Unjust Enrichment ..................................................... 5

        A.      Plaintiff's Claim for Unjust Enrichment Fails as a Matter of Law ......................... 5

        B.      Plaintiff's Claim for Unjust Enrichment Is Preempted ............................................ 6

III.    Plaintiff Fails to State a Claim Under the Florida Deceptive and Unfair Trade Practices
        Act .................................................................................................................................. 7

        A.      Plaintiff's Claim Under the Florida Deceptive and Unfair Practices Act Is
                Preempted .................................................................................................................. 7

        B.      Plaintiff's FDUTPA Claim Fails on the Merits ....................................................... 8

IV.     Plaintiff Fails to State a Claim for a Declaratory Judgment ........................................... 10

        A.      Plaintiff Does Not Have a Claim Under the Federal Declaratory Judgment Act... 10

                1.      The Declaratory Judgment Claim Cannot Survive Alone ............................. 10

                2.      The Facts Alleged Do Not Warrant Issuance of a Declaratory Judgment ...... 11

                3.      In the Alternative, the Court Should Exercise Its Discretion to Dismiss
                        Plaintiff's Declaratory Judgment Claim ........................................................ 12

        B.      Plaintiff's Claim for Declaratory Relief is Preempted ........................................... 13

        C.      Plaintiff Has Failed to Plead Sufficient Facts to Show Unconscionability ............ 13

V.      Plaintiff's Adversary Proceeding Is Improper and Must Be Dismissed ......................... 14

        A.      Plaintiff's Claims Are Prepetition Claims and Cannot Be Brought Through an
                Adversary Proceeding .............................................................................................. 14

        B.      Plaintiff's Requests for Declaratory and Injunctive Relief Do Not Bring Its Claims
                Within the Ambit of Bankruptcy Rule 7001 ........................................................... 16

        C.      Plaintiff's Request for Class Relief Does Not Make Adjudication of Its Claims in
                an Adversary Proceeding Appropriate ..................................................................... 18

        D.      Allowing Plaintiff's Claims to Move Forward in an Adversary Proceeding Would
                Undermine the Automatic Stay and Circumvent the Claims Process .................... 23

VI.     Plaintiff Is Bound To Arbitrate Its Claims ..................................................................... 24

CONCLUSION ........................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

9 U.S.C. § 2 .................................................................................................................... 24

11 U.S.C. § 101(5)(A) .................................................................................................... 15

11 U.S.C. § 105(a) .......................................................................................................... 24

11 U.S.C. § 362(a)(1) ..................................................................................................... 24

28 U.S.C. § 2201(a) ........................................................................................................ 11

49 U.S.C. § 41713(b)(1) ................................................................................................... 6

Fed. R. Bankr. P. 7001 ......................................................................................... 14, 16, 17

Fed. R. Bankr. P. 7012 ...................................................................................................... 3

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 3

Fed. R. Civ. P. 23 ...................................................................................................... 19, 21

**Cases**

*Am. Airlines, Inc. v. Wolens,*
513 U.S. 219 (1995) .......................................................................................................... 8

*AT & T Techs., Inc. v. Commc'ns Workers of Am.,*
475 U.S. 643 (1986) ........................................................................................................ 24

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
493 F.3d 87 (2d Cir. 2007) ............................................................................................... 1

*Berni v. Barilla S.p.A.,*
964 F.3d 141 (2d Cir. 2020) ................................................................................... 16-17, 19

*Calzadillas v. Wonderful Co., LLC,*
No. 1:19-cv-00172-DAD-JLT, 2019 WL 5448308 (E.D. Cal. Oct. 24, 2019) .................. 25

*Carriuolo v. Gen. Motors Co.,*
823 F.3d 977 (11th Cir. 2016) ........................................................................................ 10

*Chelsea Grand, LLC v. N.Y. Hotel & Motel Trades Council, AFL-CIO*,
729 F. App'x 33 (2d Cir. 2018) ....................................................................... 11

*Chevron Corp. v. Naranjo*,
667 F.3d 232 (2d Cir. 2012)............................................................................ 10

*Chiste v. Hotels.com LP*,
786 F. Supp. 2d 382 (S.D.N.Y. 2010)............................................................... 13

*Cont'l Bldg. Prods. Operating Co., LLC v. Lafarge N. Am., Inc.*,
No. 17 Civ. 2599 (AJN), 2018 WL 1583309 (S.D.N.Y. Mar. 27, 2018) ........... 12

*Cox v. Spirit Airlines, Inc.*,
340 F. Supp. 3d 154 (E.D.N.Y. 2018) ............................................................... 7

*Crewe v. Rich Dad Educ., LLC*,
884 F. Supp. 2d 60 (S.D.N.Y. 2012)................................................................. 14

*Dade Cnty. Sch. Dist.v. Johns-Mansville Corp. (In re Johns-Manville Corp.)*,
53 B.R. 346 (Bankr. S.D.N.Y. 1985) ......................................................... 14-15, 23

*DBL Liquidating Trust v. P.T. Tirtamas Majutama (In re Drexel Burnham Lambert Grp., Inc.)*,
148 B.R. 993 (S.D.N.Y. 1992).......................................................................... 15

*Diamond "S" Dev. Corp. v. Mercantile Bank*,
989 So. 2d 696 (Fla. Dist. Ct. App. 2008) ......................................................... 6

*Dochak v. Polskie Linie Lotnicze LOT S.A.*,
No. 15 C 4344, 2017 WL 2362570 (N.D. Ill. May 30, 2017) ........................ 20-21

*Dolan v. JetBlue Airways Corp.*,
385 F. Supp. 3d 1338 (S.D. Fla. 2019) ............................................................. 22

*Donoff v. Delta Air Lines, Inc.*,
No. 18-81258-CV, 2020 WL 1226975 (S.D. Fla. Mar. 6, 2020)...................... 8, 9

*Evergreen Solar, Inc. v. Barclays PLC (In re Lehman Bros. Holdings, Inc.)*,
Bankr. Case No. 08-13555-JMP, Adv. No. 08-01633- JMP, 2011 WL 722582 (Bankr. S.D.N.Y. Feb. 22, 2011) ............................................................................ 4

*Gordon v. United Cont'l Holding, Inc.*,
73 F. Supp. 3d 472 (D.N.J. 2014) ..................................................................... 7

*Hanni v. Am. Airlines, Inc.*,
No. C 08-00732 CW, 2010 WL 289297 (N.D. Cal. Jan. 15, 2010)...................................20

*Harper v. Wausau Ins. Co.*,
56 Cal. App. 4th 1079 (Cal. Ct. App. 1997) .......................................................25

*Hekmat v. U.S. Transp. Sec. Admin.*,
247 F. Supp. 3d 427 (S.D.N.Y. 2017)..............................................................2, 9

*Howell v. Alaska Airlines, Inc.*,
994 P.2d 901 (Wash. Ct. App. 2000).................................................................13

*In re Aquadots Prods. Liab. Litig.*,
270 F.R.D. 377 (N.D. Ill. 2010).......................................................................22

*In re Ephedra Prods. Liab. Litig.*,
329 B.R. 1 (S.D.N.Y. 2005)......................................................................15-16, 21

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009)............................................................................19

*In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Practices & Liab. Litig.*,
903 F.3d 278 (3d Cir. 2018)..........................................................................17

*In re Musicland Holding Corp.*,
362 B.R. 644 (Bankr. S.D.N.Y. 2007)................................................................18

*In re Nigeria Charter Flights Contract Litig.*,
520 F. Supp. 2d 447 (E.D.N.Y. 2007) .................................................................5

*In re Woodward & Lothrop Holdings, Inc.*,
205 B.R. 365 (Bankr. S.D.N.Y. 1997)...............................................................18

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
62 F.3d 69 (2d Cir. 1995)..............................................................................2

*John Wiley & Sons, Inc. v. Visuals Unlimited, Inc.*,
No. 11-CV-5453-CM, 2011 WL 5245192 (S.D.N.Y. Nov. 2, 2011) .............................12, 18

*Kovtan v. Frederiksen*,
449 So. 2d 1 (Fla. Dist. Ct. App. 1984) ...............................................................6

*Latman v. Costa Cruise Lines, N.V.*,
758 So. 2d 699 (Fla. Dist. Ct. App. 2000) ............................................................9

*Lighthouse Bluffs, Corp. v. Atreus Enters., Ltd. (In re Atreus Enters., Ltd.)*,
120 B.R. 341 (Bankr. S.D.N.Y. 1990) ................................................................. 23-24

*Lisa Coppola, LLC v. Higbee*,
No. 1:19-cv-00678, 2020 WL 1154749 (W.D.N.Y. Mar. 10, 2020) ................................. 10

*Marshall v. N.Y. State Pub. High Sch. Athletic Ass'n, Inc.*,
374 F. Supp. 3d 276 (W.D.N.Y. 2019) ............................................................... 11

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) ........................................................................... 9

*Miller v. Delta Airlines, Inc.*,
No. 4:11-CV-10099-JLK, 2012 WL 1155138 (S.D. Fla. Apr. 5, 2012) ........................... 2, 7-8

*Mondragon v. Circuit City Stores, Inc. (In re Circuit City Stores, Inc.)*,
Bankr. Case No. 08-3563-KRH, Adv. No. 09-03073-KRH, 2010 WL 120014 (Bankr.
E.D. Va. Jan. 7, 2010) ........................................................................ 4, 18, 21

*Morales v. TransWorld Airlines, Inc.*,
504 U.S. 374 (1992) ................................................................................ 6-7, 8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ................................................................................... 24-25

*Mullaney v. Delta Air Lines, Inc.*,
No. 08 Civ. 7324(CM)(THK), 2009 WL 1584899 (S.D.N.Y. June 3, 2009) ...................... 5

*Myers v. Hertz Corp.*,
624 F.3d 537 (2d Cir. 2010) ...................................................................... 19-20

*Nemee v. Cnty. of Calaveras (In re Nemee)*,
Bankr. Case No. 09-93249-E-11, Adv. No. 09-9088, 2010 WL 9478898 (Bankr. E.D.
Cal. May 19, 2010) .................................................................................. 18

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) ..................................................................... 9, 16

*Nisselson v. Bank of the West (In re Cocoa Servs., LCC)*,
Bankr. Case No. 17-11936-JLG, Adv. No. 17-01182-JLG, 2018 WL 1801240 (Bankr.
S.D.N.Y. Apr. 13, 2018) .............................................................................. 4

*Pena v. British Airways, PLC (UK)*,
No. 18-cv-6278 (LDH) (RML), 2020 WL 3989055 (E.D.N.Y. Mar. 30, 2020) ............... 8

*Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla., N.A.*,
667 So. 2d 876 (Fla. Dist. Ct. App. 1996) ........................................................... 5-6

*Perret v. Wyndham Vacation Resorts, Inc.*,
889 F. Supp. 2d 1333 (S.D. Fla. 2012) ............................................................... 11

*Prewitt v. N. Coast Vill., Ltd. (In re N. Coast Vill., Ltd.)*,
135 B.R. 641 (B.A.P. 9th Cir. 1992) ................................................................... 24

*Rambarran v. Dynamic Airways, LLC*,
No. 14-cv-10138 (KBF), 2015 WL 4523222 (S.D.N.Y. July 27, 2015) ......................... 20, 21

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993) ............................................................................ 19

*Román v. Spirit Airlines, Inc.*,
No. 19-CIV-61461-RAR, 2020 WL 3303084 (S.D. Fla. Apr. 14, 2020) ......................... 8

*Saade v. Insel Air*,
No. 17-22003-CIV, 2018 WL 3110788 (S.D. Fla. Mar. 22, 2018) ................................. 6

*Sears, Roebuck and Co. v. Penney (In re Penney)*,
76 B.R. 160 (Bankr. N.D. Cal. 1987) ................................................................. 15, 24

*Shearson Lehman Hutton, Inc. v. Wagoner*,
944 F.2d 114 (2d Cir. 1991) ............................................................................ 25

*Statland v. Am. Airlines, Inc.*,
998 F.2d 539 (7th Cir. 1993) ............................................................................ 7

*Stevens v. JetBlue Airways Corp.*,
No. 09-CV-4464 (SJ), 2010 WL 11651621 (E.D.N.Y. Jan. 6, 2010) ............................ 12

*Stout v. Med-Trans Corp.*,
313 F. Supp. 3d 1289 (N.D. Fla. 2018) .............................................................. 7

*Vulcan Golf, LLC v. Google Inc.*,
254 F.R.D. 521 (N.D. Ill. 2008) ........................................................................ 22

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ....................................................................................... 19

*Washington v. LaSalle Bank Nat'l Ass'n*,
817 F. Supp. 2d 1345 (S.D. Fla. 2011) ............................................................... 9

*Weiss v. El Al Israel Airlines Ltd.*,
433 F. Supp. 2d 361 (S.D.N.Y. 2006)..................................................................... 5

*Wilensky v. Olympic Airways, S. A.*,
73 F.R.D. 473 (E.D. Pa. 1977)............................................................................... 20

*Wilton v. Seven Falls Co.*,
515 U.S. 277 (1995)............................................................................................... 12

*Woebse v. Health Care & Ret. Corp. of Am.*,
977 So. 2d 630 (Fla. Dist. Ct. App. 2008) ........................................................... 14

## Other Authorities

Article 19 of the Convention for Unification of Certain Rules of International Carriage by
Air, May 28, 1999, 2242 U.N.T.S. 309, S. Treaty Doc. No. 106 ...................................... 5

LATAM Airlines Group S.A. ("LATAM" or "Defendant") respectfully submits this

memorandum of law in support of its motion to dismiss the August 18, 2020 Class Action

Complaint (the "Complaint").

## PRELIMINARY STATEMENT

In this putative class action, TM Solutions USA LLC ("Plaintiff") asks this Court to void

an industry-standard LATAM policy pursuant to which, when a customer fails to board one leg

of a multi-leg flight itinerary, the airlines reserve the right to cancel the remaining legs of the

itinerary.  Plaintiff asserts that LATAM's policy violates the Montreal Convention, constitutes

unjust enrichment, and violates the Florida Deceptive and Unfair Trade Practices Act, and seeks

various damages as well as declaratory and injunctive relief on behalf of two proposed classes.

LATAM's obligations to customers are set forth in its Transport Agreement, which is

freely available on LATAM's website and notice of which is provided to customers upon ticket

purchase.  That Transport Agreement explains the policy in clear and straightforward language:

> The passenger must fly the flights or segments that make up the
> itinerary in consecutive order. . . .  The passenger understands that
> **by not flying any segments indicated in the itinerary, the entire
> Ticket will be canceled without any warning and the passenger
> will not have any right whatsoever to a refund** unless the fare
> conditions of the Ticket allow it.  As an example, and without this
> condition being limited to this specific case, **if the passenger does
> not fly on the first segment that is specified in the itinerary
> (understood as the outbound flight), this passenger may not
> travel on any other segment (understood as the stopover flight
> or the inbound flight)**.

LATAM Airlines, *Transport Agreement*, § 2.9 (emphasis added), Ex. A.[2]  Plaintiff here elected

---

[2]      "Ex." refers to exhibits to the Declaration of Jessica Roll in Support of Defendant LATAM Airlines Group
S.A.'s Motion to Dismiss the Class Action Complaint, dated September 21, 2020.  In ruling on a motion to dismiss,
a court "may consider any written instrument attached to the complaint, statements or documents incorporated into
the complaint by reference, legally required public disclosure documents filed with the SEC, and documents
possessed by or known to the plaintiff and upon which it relied in bringing the suit."  *ATSI Commc'ns, Inc. v. Shaar
Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  The No-Show Policy, contained in LATAM's Transport Agreement, is
central to Plaintiff's claims, and Plaintiff repeatedly refers to the No-Show Policy throughout the Complaint.  The

not to fly the outbound flights it had booked, and now complains that its inbound flights were cancelled. Nothing entitles Plaintiff to the relief it seeks—neither the Florida Deceptive and Unfair Trade Practices Act (given the clear policy language), nor the Montreal Convention (which has no application here), nor common law principles of unjust enrichment (which are also inapplicable). Moreover, Plaintiff brings claims that are preempted. Plaintiff consequently also fails to state a claim for declaratory judgment.

Plaintiff also fails to follow proper procedure, which independently supports dismissal of its adversary proceeding. Plaintiff asserts prepetition claims in a complaint that is substantially identical to the complaint that it filed on April 13, 2020 in the Southern District of Florida. Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") sets forth the circumstances in which claims may be brought in an adversary proceeding, none of which apply here. Apparently aware that its prepetition claims are properly asserted and objected to through the proof of claim process, Plaintiff in fact filed a claim against LATAM two weeks before initiating this adversary proceeding. Plaintiff's attempt to circumvent the automatic stay, which paused Plaintiff's Florida litigation, and circumvent the claims objection process by forcing LATAM to earlier respond to its Complaint, should not be countenanced, and its Complaint should be dismissed.

Finally, when purchasing its tickets from BudgetAir.com ("BudgetAir"), Plaintiff agreed to arbitrate all related disputes, and its claims should therefore be dismissed on that basis as well.

---

Transport Agreement is therefore incorporated by reference in the Complaint. *See Miller v. Delta Air Lines, Inc.*, No. 4:11-CV-10099-JLK, 2012 WL 1155138, at *1 n.2 (S.D. Fla. Apr. 5, 2012) (considering airline contract of carriage on motion to dismiss). Even if the Transport Agreement is not incorporated by reference, the court may consider it on a motion to dismiss where, as here, the complaint "relies heavily upon its terms and effect," which renders the agreement "integral" to the complaint." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995); *see also Hekmat v. U.S. Transp. Sec. Admin.*, 247 F. Supp. 3d 427, 434 (S.D.N.Y. 2017) ("We may consider the terms of plaintiffs' electronic tickets and JetBlue's Contract of Carriage because they are part of the contract that is at issue and therefore integral to the Amended Complaint.").

2

## FACTUAL BACKGROUND

Plaintiff alleges that, in February 2020, its employee purchased round-trip tickets on LATAM flights through BudgetAir, and in doing so, inadvertently booked the outbound flights for the wrong day.  Compl. ¶ 11.  After realizing the error, instead of changing or cancelling the outbound legs of the round-trip reservations through BudgetAir or through LATAM, the employee purchased cheaper one-way outbound flights on a different airline.  *Id.* ¶ 16.  When the original outbound legs of the round-trip flights were not used, LATAM cancelled the reservations pursuant to Section 2.9 of its Transport Agreement (the "No-Show Policy").  *See* Ex. A § 2.9.  About two months later, on April 13, 2020, Plaintiff sued LATAM in the U.S. District Court for the Southern District of Florida.  *See* Compl., *TM Sols. USA LLC v. LATAM Airlines Grp. S.A.*, No. 1:20-cv-21552 (S.D. Fla. Apr. 13, 2020), ECF No. 1 (the "Florida Complaint").  When LATAM and its related carriers commenced Chapter 11 proceedings in May 2020, Plaintiff's Florida action was automatically stayed pursuant to Section 362(a) of title 11 of the United States Code (the "Bankruptcy Code").[3]  On August 4, 2020, Plaintiff filed a proof of claim.  *See* Claim No. 589.  On August 18, 2020, Plaintiff repackaged its original Florida Complaint as an adversary proceeding, and filed it in nearly verbatim form as an adversary action.  *See* Ex. B.

## ARGUMENT

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable in adversary proceedings through Bankruptcy Rule 7012, a Bankruptcy Court may dismiss a complaint if it fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012.  "To survive a Rule 12(b)(6) motion to dismiss 'a complaint

---

[3]        *See* Suggestion of Bankruptcy, *TM Sols. USA LLC v. LATAM Airlines Grp. S.A.*, No. 1:20-cv-21552 (S.D. Fla. June 5, 2020), ECF No. 9.

must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Nisselson v. Bank of the West (In re Cocoa Servs., LCC)*, Bankr. Case No. 17-11936-JLG, Adv. No. 17-01182-JLG, 2018 WL 1801240, at *4 (Bankr. S.D.N.Y. Apr. 13, 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

When an adversary complaint fails to assert a proper basis to proceed via an adversary proceeding under Bankruptcy Rule 7001, it is properly dismissed pursuant to Federal Rule 12(b)(6). *See, e.g.*, *Evergreen Solar, Inc. v. Barclays PLC (In re Lehman Bros. Holdings, Inc.)*, Bankr. Case No. 08-13555-JMP, Adv. No. 08-01633- JMP, 2011 WL 722582, at *7 (Bankr. S.D.N.Y. Feb. 22, 2011) (dismissing breach of contract claim for failure to state a claim under Federal Rule 12(b)(6), where the Court found the claim improper in an adversary proceeding); *Mondragon v. Circuit City Stores, Inc. (In re Circuit City Stores, Inc.)*, Bankr. Case No. 08-3563-KRH, Adv. No. 09-03073-KRH, 2010 WL 120014, at *4-5 (Bankr. E.D. Va. Jan. 7, 2010) (dismissing proposed class action adversary proceeding pursuant to Federal Rule 12(b)(6) where the complaint asserted prepetition claims that the Court found were improper for an adversary proceeding and should be asserted through the claims process).

Plaintiff's Complaint both fails to state a claim upon which relief can be granted and is improperly brought as an adversary proceeding. Moreover, Plaintiff is bound by a mandatory arbitration clause that bars its claims.

## I.    Plaintiff Fails to State a Claim Under the Montreal Convention

Count II of the Complaint fails to state a claim under Article 19 of the Convention for Unification of Certain Rules of International Carriage by Air, May 28, 1999, 2242 U.N.T.S. 309, S. Treaty Doc. No. 106 (the "Montreal Convention"), which is inapplicable to the facts alleged. Plaintiff claims that LATAM violated Article 19 of the Montreal Convention when it cancelled the return legs of Plaintiff's round-trip flights. Compl. ¶ 51. Article 19 states that "[t]he carrier

4

is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo."
Montreal Convention, Art. 19.  Cancellation is not delay.  "The plain language of Article 19 of
the Montreal Convention indicates that it governs claims for delay, not nonperformance."  *In re
Nigeria Charter Flights Contract Litig.*, 520 F. Supp. 2d 447, 455 (E.D.N.Y. 2007).  Article 19
simply does not apply to claims based on an airline's refusal to transport a customer.  *See id.* at
454 (finding nonperformance rather than delay where "plaintiffs have shown that [airline] simply
refused to fly them, without offering alternate transportation"); *Mullaney v. Delta Air Lines, Inc.*,
No. 08 Civ. 7324(CM)(THK), 2009 WL 1584899, at *2 (S.D.N.Y. June 3, 2009) (flights
cancelled due to employee strike constituted nonperformance and not delay under Article 19);
*Weiss v. El Al Israel Airlines Ltd*., 433 F. Supp. 2d 361, 369 (S.D.N.Y. 2006) (claims related to
being "bumped" from a flight were claims for nonperformance and not delay under Article 19).

Because Plaintiff has not alleged delay by LATAM, but only that LATAM's cancellation
of certain of its flights was somehow improper, Plaintiff has no claim under Article 19 of the
Montreal Convention, and Count II of the Complaint should be dismissed with prejudice.

## II.    Plaintiff Fails to State a Claim for Unjust Enrichment

### A.    Plaintiff's Claim for Unjust Enrichment Fails as a Matter of Law

Under Florida law,[4] "[t]he elements of a cause of action for unjust enrichment are:  (1)
plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant
voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it
would be inequitable for the defendant to retain the benefit without paying the value thereof to
the plaintiff." *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla., N.A.*, 667 So.

---

[4]      The only named plaintiff in this putative class action is a Florida company.  *See* Compl. ¶ 1.  As Plaintiff
fails to state a claim under Florida law and therefore cannot represent any class, multistate or otherwise, this brief
does not analyze the unjust enrichment claims hypothetically available under the laws of states other than Florida
(which in any event LATAM does not believe would require any different conclusion).

2d 876, 879 (Fla. Dist. Ct. App. 1996).

In this case, it is not inequitable for LATAM to retain the fare paid for Plaintiff's flights. LATAM had a legitimate expectation of the fare paid by Plaintiff, which was bound by LATAM's Transport Agreement. When Plaintiff did not take the outbound flights with LATAM, Compl. ¶ 16, Plaintiff was subject to the airline's No-Show Policy, as clearly stated in the Transport Agreement, and LATAM was entitled to cancel Plaintiff's remaining itinerary. Regardless of whether LATAM was or was not able to resell the seats that Plaintiff reserved, it was entitled to enforce the policy under its contract with Plaintiff.

Moreover, Plaintiff cannot state a claim for unjust enrichment under Florida law because there was a contract between Plaintiff and Defendant. This is so even though Plaintiff purchased its tickets through BudgetAir, rather than directly from LATAM. *See Saade v. Insel Air*, No. 17-22003-CIV, 2018 WL 3110788, at *2 (S.D. Fla. Mar. 22, 2018) (rejecting argument that ticket bought through intermediary does not create a contract with airline). Under Florida law, an "unjust enrichment claim [is] precluded by the existence of an express contract between the parties concerning the same subject matter." *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. Dist. Ct. App. 2008). "It is well settled that the law will not imply a contract where an express contract exists concerning the same subject matter." *Kovtan v. Frederiksen*, 449 So. 2d 1, 1 (Fla. Dist. Ct. App. 1984). Here, as Plaintiff itself alleges, there is a contract between Plaintiff and LATAM governing the relationship between the parties, and, therefore, Plaintiff cannot state a valid claim for unjust enrichment. *See* Compl. ¶¶ 33(c), 37(c).

B.    Plaintiff's Claim for Unjust Enrichment Is Preempted

The Airline Deregulation Act ("ADA") contains an express preemption clause that bars states from enacting or enforcing "a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1); *see*

6

*also Morales v. TransWorld Airlines, Inc.*, 504 U.S. 374, 378-79 (1992).  "It is well settled that claims against airlines for unjust enrichment fall within the ADA's preemption clause."  *Gordon v. United Cont'l Holding, Inc.*, 73 F. Supp. 3d 472, 480 (D.N.J. 2014).  And claims related to airline refunds self-evidently fall within the scope of ADA preemption.  *See, e.g.*, *Statland v. Am. Airlines, Inc.*, 998 F.2d 539, 542 (7th Cir. 1993) ("We think it obvious that canceled ticket refunds relate to rates.").

Plaintiff's unjust enrichment claim is also preempted because such a claim is based on state law obligations.  "An unjust enrichment claim is permissible only where there is no express agreement between the parties, and no express undertaking stipulated by the defendant. . . .  A claim for unjust enrichment is thus the antithesis of enforcing 'a term the airline itself stipulated,' and rather an example of a state 'imposing [its] own substantive standards.'"  *Cox v. Spirit Airlines, Inc.*, 340 F. Supp. 3d 154, 159-60 (E.D.N.Y. 2018) (alteration in original) (quoting *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 232-33 (1995)), *vacated in part on other grounds*, 786 F. App'x 283 (2d Cir. 2019) (summary order); *see also Stout v. Med-Trans Corp.*, 313 F. Supp. 3d 1289, 1296 (N.D. Fla. 2018) ("Under Florida law, a claim for unjust enrichment is not based on the parties' agreement but rather an agreement created by law. . . .  Since a claim for unjust enrichment is not based on the parties' 'self-imposed obligations,' it constitutes a state-imposed obligation and is therefore preempted.").

III.    **Plaintiff Fails to State a Claim Under the Florida Deceptive and Unfair Trade Practices Act**

A.    Plaintiff's Claim Under the Florida Deceptive and Unfair Practices Act Is Preempted

The ADA preempts claims for alleged violations of consumer protection laws, including the FDUTPA, where plaintiffs attempt to use those laws to go beyond the terms of the contracts between them and an airline.  *See Miller v. Delta Airlines, Inc.*, No. 4:11-CV-10099-JLK, 2012

WL 1155138, at *2 (S.D. Fla. Apr. 5, 2012) (finding claims for violation of state consumer

protection laws, including the FDUTPA, preempted with respect to a "service" provided by the

airline); *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995) (finding claims under state

consumer protection law preempted); *Morales*, 504 U.S. at 388 (same); *Pena v. British Airways,

PLC (UK)*, No. 18-cv-6278 (LDH) (RML), 2020 WL 3989055, at *4 (E.D.N.Y. Mar. 30, 2020)

(same).  Nor does the ADA permit plaintiffs to use consumer protection statutes, including the

FDUTPA, to regulate airline prices.  *See Román v. Spirit Airlines, Inc.*, No. 19-CIV-61461-RAR,

2020 WL 3303084, at *3-4 (S.D. Fla. Apr. 14, 2020).  Because LATAM's No-Show Policy

directly concerns the rates that an airline charges, Plaintiff's FDUTPA claim is preempted and

must be dismissed.

      B.      <u>Plaintiff's FDUTPA Claim Fails on the Merits</u>

      Even if the Court were to find Plaintiff's FDUTPA claim not preempted, this claim fails

on the merits as pled and must be dismissed.  A "claim for damages under FDUTPA has three

elements:  (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Donoff

v. Delta Air Lines, Inc.*, No. 18-81258-CV, 2020 WL 1226975, at *7 (S.D. Fla. Mar. 6, 2020).

"A plaintiff must show that 'the alleged practice was likely to deceive a consumer acting

reasonably in the same circumstances.'" *Id.* (quoting *Carriuolo v. Gen. Motors Co.*, 823 F.3d

977, 983 (11th Cir. 2016)).  "An unfair trade practice requires that the injury to the consumer:

(1) must be substantial; (2) must not be outweighed by any countervailing benefits to consumers

or competition that the practice produces; and (3) must be an injury that consumers themselves

could not reasonably have avoided." *Id.* (citing *Porsche Cars N. Am., Inc. v. Diamond*, 140 So.

3d 1090, 1096 ((Fla. Dist. Ct. App. 2014)).

      Here, LATAM's No-Show Policy cannot be a deceptive act or unfair practice under the

FDUPTA.  Critically, the policy is not likely to mislead.  It is clearly disclosed in LATAM's

Transport Agreement, which customers receive notice of upon purchase of the ticket, and which is readily available on LATAM's website, and Plaintiff has not pleaded that the Transport Agreement was not available when it purchased the tickets through BudgetAir.[5] *See Washington v. LaSalle Bank Nat'l Ass'n*, 817 F. Supp. 2d 1345, 1350 (S.D. Fla. 2011) (finding no FDUTPA violation where alleged "excessive fee" was actually disclosed); *cf. Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699, 703 (Fla. Dist. Ct. App. 2000) (finding a deceptive practice where cruise line failed to disclose that it received a portion of "port charges" and that the charges were not "pass-through" charges paid by the cruise line to the relevant port authorities). Additionally, Plaintiff has failed to plead that the No-Show Policy is not outweighed by countervailing benefits to consumers or competition, or that consumers themselves could not have avoided any injury due to the policy. Consumers can avoid any injury caused by the No-Show Policy by simply flying each of the segments in the itinerary, or else modifying the itinerary as necessary. And in this case in particular, Plaintiff would have avoided any alleged injury by initially purchasing tickets for the correct date, a matter that was within Plaintiff's control and not LATAM's.

Further, Plaintiff has not suffered actual damages under the FDUTPA. "Actual damages occur where the misleading conduct allows the defendant 'to command a price premium and to overcharge customers.'" *Donoff*, 2020 WL 1226975, at *10. "FDUTPA damages are measured

---

[5]    In fact, the BudgetAir terms and conditions expressly state: "When you reserve or purchase Travel Products via our Services, additional terms and conditions from the Suppliers ('Supplier Terms') may apply. Please read those Suppliers Terms carefully as they govern your use of the Travel Products that you purchase and you agree to abide by Supplier Terms, including all cancellation rules, imposed by any Supplier with whom you elect to deal." Ex. C at 3. LATAM is a Supplier, which is defined as "the air carriers, hotels and other suppliers providing Travel Products through our Services." *Id.* at 1. Plaintiff was therefore on notice of LATAM's terms and conditions based on its purchase through BudgetAir, even if it did not actually review the Transport Agreement, and is bound by that agreement. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74–75 (2d Cir. 2017) ("Where there is no evidence that the offeree had actual notice of the terms of the agreement, the offeree will still be bound by the agreement if a reasonably prudent user would be on inquiry notice of the terms."); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 232 (2d Cir. 2016) ("As with paper contracts . . . to be bound, an internet user need not actually read the terms and conditions or click on a hyperlink that makes them available as long as she has notice of their existence."); *Hekmat*, 247 F. Supp. 3d at 434. For the reasons stated *supra* at 1-2 n.2, the Court may consider BudgetAir's terms and conditions in connection with LATAM's motion to dismiss.

according to 'the difference in the market value of the product or service in the condition in

which it was delivered and its market value in the condition in which it should have been

delivered according to the contract of the parties.'" *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977,

986 (11th Cir. 2016) (quoting *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. Dist. Ct. App.

1984)).  Plaintiff received the value of its bargained-for exchange.  Plaintiff purchased tickets

subject to the No-Show Policy, and when its employees failed to board their outbound flight, the

return flights were cancelled under the policy.  Because the tickets were delivered "according to

the contract of the parties," even if Plaintiff had stated a cognizable claim, there can be no

damages under the FDUTPA.

**IV.    Plaintiff Fails to State a Claim for a Declaratory Judgment**

> **A.    Plaintiff Does Not Have a Claim Under the Federal Declaratory Judgment Act**

>> **1.    The Declaratory Judgment Claim Cannot Survive Alone**

For the reasons set forth above, Counts II, III and IV of the Complaint fail as a matter of

law.  "The Declaratory Judgment Act is procedural only and does not create an independent

cause of action."  *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012).  Plaintiff's claim

for declaratory judgment therefore requires some independent, viable cause of action in order to

be maintained.  *See Lisa Coppola, LLC v. Higbee*, No. 1:19-cv-00678, 2020 WL 1154749, at *10

(W.D.N.Y. Mar. 10, 2020) ("[A] request for a declaratory judgment is not a cause of action; it is

a request for a remedy that does not exist independent of a plausible underlying claim for

relief.").  Plaintiff alleges that LATAM's No-Show Policy is "void and unenforceable as a matter

of law," but does not explain what that "law" is.  Compl. ¶ 43.  Likewise, Plaintiff states that the

No-Show Policy is "unconscionable," yet fails to specify under what law it is asking the Court to

find unconscionability.  As Plaintiff fails to ground its request for declaratory relief in any law, it

has failed to adequately plead that it is entitled to such relief, and Count I should be dismissed.

10

2.    The Facts Alleged Do Not Warrant Issuance of a Declaratory Judgment

The Federal Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  "To bring an action under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), 'the facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between [the] parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *Chelsea Grand, LLC v. N.Y. Hotel & Motel Trades Council, AFL-CIO*, 729 F. App'x 33, 40 (2d Cir. 2018) (summary order) (alterations in original) (quoting *Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 17 (2d Cir. 1993)).

Plaintiff's declaratory judgment claim fails under this standard because the facts alleged do not demonstrate that there is such a controversy, of any immediacy, warranting the issuance of a declaratory judgment.  This is particularly true in light of the fact that Plaintiff is now fully aware of LATAM's No-Show Policy, and will not again be in a position where it is ignorant of the risk that missing an outbound flight will result in the cancellation of a return flight.  As a result, there would be no benefit to Plaintiff in obtaining a declaratory judgment.  *See Perret v. Wyndham Vacation Resorts, Inc.*, 889 F. Supp. 2d 1333, 1346 (S.D. Fla. 2012) (dismissing declaratory judgment claim where "Plaintiffs are not seeking a declaration of their 'rights' under the contracts; they are seeking a declaration that Defendants' actions were fraudulent, unconscionable and inequitable"); *see also Marshall v. N.Y. State Pub. High Sch. Athletic Ass'n, Inc.*, 374 F. Supp. 3d 276, 285-86 (W.D.N.Y. 2019) (declining to issue declaratory judgment where it could benefit future plaintiffs but not the plaintiffs in that case).

Further, the relief that Plaintiff is seeking, fairly construed, constitutes redress for past

11

alleged harm, rather than a safeguard against potential future harm.  Monetary damages are a

sufficient remedy for any past harm, and a declaratory judgment would be superfluous.  *See John

Wiley & Sons, Inc. v. Visuals Unlimited, Inc.*, No. 11-CV-5453-CM, 2011 WL 5245192, at *4

(S.D.N.Y. Nov. 2, 2011) ("When the traditional remedy provides the parties with the procedural

safeguards required by the law to insure the availability of a proper remedy, the courts, in

exercising their discretion, may properly dismiss the declaratory judgment action.") (quoting

*Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165, 1169 (7th Cir. 1969)).

        3.      <u>In the Alternative, the Court Should Exercise Its Discretion to Dismiss
Plaintiff's Declaratory Judgment Claim</u>

Even if the Court were to find that it could issue a declaratory judgment here, it should

decline to do so.  Courts have "unique and substantial discretion" with respect to declaratory

relief actions, including discretion whether to entertain, stay, or dismiss the action.  *Wilton v.

Seven Falls Co.*, 515 U.S. 277, 286 (1995); *Cont'l Bldg. Prod. Operating Co., LLC v. Lafarge N.

Am., Inc.*, No. 17 Civ. 2599 (AJN), 2018 WL 1583309, at *5 (S.D.N.Y. Mar. 27, 2018) ("Even

where an actual controversy has been established, a court must still decide whether it will

exercise its discretion to entertain a request for declaratory judgment.").  Plaintiff's request for

declaratory judgment specifically seeks to have the Court rewrite LATAM's Transport

Agreement.  *See* Compl. ¶ 47.  This is not the intended purpose of the Declaratory Judgment Act.

"[T]he fundamental purpose of the [Declaratory Judgment Act] is to avoid accrual of avoidable

damages to one not certain of his rights and to afford him an early adjudication without waiting

until his adversary should see fit to begin suit, after damage has accrued."  *Stevens v. JetBlue

Airways Corp.*, No. 09-CV-4464 (SJ), 2010 WL 11651621, at *2 (E.D.N.Y. Jan. 6, 2010), *report

and recommendation adopted*, No. 09 CV 4464 (SJ), 2010 WL 11651622 (E.D.N.Y. Feb. 8,

2010).  Here, Plaintiff is not attempting to avoid the accrual of damages.  The alleged damages

have already occurred, and "[t]here is no basis for declaratory relief where only past acts are

involved." *Chiste v. Hotels.com LP*, 786 F. Supp. 2d 382, 407 (S.D.N.Y. 2010).

      B.     <u>Plaintiff's Claim for Declaratory Relief is Preempted</u>

      Even if Plaintiff could assert a valid claim for declaratory judgment, Plaintiff's (bare)

assertion that the No-Show Policy is unconscionable is preempted by the ADA.  As discussed

above, the ADA preempts state laws affecting airline rates, routes, and services.  *See supra* at 6.

As such, litigants cannot use state laws, including common law principles of unconscionability,

as a way to impose additional burdens on airlines beyond existing contractual terms.  *See Howell*

*v. Alaska Airlines, Inc.*, 994 P.2d 901, 905 (Wash. Ct. App. 2000).  In *Howell*, plaintiffs claimed

the airline improperly refused to refund unused nonrefundable tickets on grounds including

procedural and substantive unconscionability, but the Washington Court of Appeals ruled that

the "appellants [were] attempting to enlarge or enhance their agreements with [the airline] based

on the laws or policies of this state that are external to the agreements" and the claims were

therefore preempted under the ADA.  *Id.*  This case is no different, and any attempt by Plaintiffs

to rewrite LATAM's Transport Agreement is preempted.

      C.     <u>Plaintiff Has Failed to Plead Sufficient Facts to Show Unconscionability</u>

      Even if the Court were to find that Plaintiff's request for declaratory relief could be

maintained and is not preempted, this claim also fails on the merits because Plaintiff has failed to

plead sufficient facts to prevail on a claim that LATAM's No-Show Policy is unconscionable

and, therefore, void and unenforceable.

      Under Florida law,[6] to prevail on a claim that a contract term is unconscionable,[7] "a party

---

[6]      For the reasons stated *supra* at 5 n.4, this brief limits its analysis to Florida law.

[7]      As noted *supra* at 10, Plaintiff alleges that the No-Show Policy is unconscionable, but fails to specify under what law it is asking the Court to find unconscionability.  As the No-Show Policy is contained in a contract between LATAM and Plaintiff, LATAM has analyzed this claim under principles of Florida contract law.

13

must show both procedural and substantive unconscionability." *Crewe v. Rich Dad Educ., LLC*, 884 F. Supp. 2d 60, 83 (S.D.N.Y. 2012) (citing *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1134 (11th Cir. 2010)).  In determining procedural unconscionability, "[c]ourts examine the totality of the circumstances, including factors such as the manner in which the agreement was made, the ability of the parties to understand the terms in dispute, the relative bargaining power of the parties, and the absence of a meaningful choice about whether to accept the contract." *Id.* at 81.  Plaintiff has not alleged that it was forced into buying tickets with LATAM. On the contrary:  as Plaintiff itself described, it freely elected to take a substitute outbound flight on a different airline. *See* Compl. ¶ 16.  And, as discussed above, the No-Show Policy was clearly disclosed in LATAM's Transport Agreement, which was readily available to Plaintiff.

Substantive unconscionability arises only when contract terms are "so outrageously unfair as to shock the judicial conscience," and the agreement is one that "no man in his senses and not under delusion would make . . . and . . . no honest and fair man would accept." *Crewe*, 884 F. Supp. 2d at 83 (S.D.N.Y. 2012).  The No-Show Policy does not meet this standard.  *Cf. Woebse v. Health Care & Ret. Corp. of Am.*, 977 So. 2d 630, 634 (Fla. Dist. Ct. App. 2008) (finding unconscionability where an agreement never fully shown or provided to plaintiff attempted to deprive plaintiff of any ability to recover statutorily prescribed punitive damages for gross or flagrant conduct or conscious indifference to the rights of nursing home residents).

**V.      Plaintiff's Adversary Proceeding Is Improper and Must Be Dismissed**

> A.      Plaintiff's Claims Are Prepetition Claims and Cannot Be Brought Through an Adversary Proceeding

Bankruptcy Rule 7001 provides a list of ten exclusive types of claims that may be brought through an adversary proceeding. *See* Fed. R. Bankr. P. 7001(1)-(10); *Dade Cnty. Sch. Dist. v. Johns-Mansville Corp. (In re Johns-Manville Corp.)*, 53 B.R. 346, 352 (Bankr. S.D.N.Y.

1985) ("Bankruptcy Rule 7001 . . . contains the *exclusive* list of matters which are classified as adversary proceedings.") (emphasis added); *Sears, Roebuck and Co. v. Penney (In re Penney)*, 76 B.R. 160, 161 (Bankr. N.D. Cal. 1987) (Rule 7001 is not an "open invitation to commence any sort of adversary proceeding against the debtor."). Importantly, that list does not include proceedings to recover prepetition damages from the debtor. *See DBL Liquidating Trust v. P.T. Tirtamas Majutama (In re Drexel Burnham Lambert Grp., Inc.)*, 148 B.R. 993, 998 (S.D.N.Y. 1992) ("A claim for damages arising from prepetition conduct is not one of [the] categories [enumerated in Rule 7001]."). Because the Complaint simply reasserts the allegations in a prepetition action to assert claims for prepetition damages against LATAM, its claims are not within the scope of Bankruptcy Rule 7001, are improper in an adversary proceeding, and must be dismissed. *See also* Order Granting Mot. to Dismiss First Am. Compl. at 4-7, *Herndon v. PG&E Corp. (In re PG&E Corp.)*, Bankr. Case No. 19-30088, Adv. No. 19-03005 (Bankr. N.D. Cal. July 10, 2019), ECF No. 35 ("*Herndon* Order") (dismissing adversary complaint asserting claims for prepetition damages).

Section 101(5) of the Bankruptcy Code defines a prepetition "claim" to include, among other things, a right to payment, whether or not such right to payment is "reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A). Plaintiff's claims against LATAM unquestionably arose prior to the petition date. Plaintiff purchased tickets on or around February 14, 2020 for flights on February 18 and 21, 2020. Compl. ¶ 11. In fact, Plaintiff asserted *the same* claims in a prepetition class action complaint filed in the Southern District of Florida on April 13, 2020. *See* Florida Complaint; *see also* Ex. B. Claims for damages arising from prepetition conduct must be asserted only through the proof of claim process. *See In re Ephedra*

15

*Prods. Liab. Litig.*, 329 B.R. 1, 7 (S.D.N.Y. 2005) ("In bankruptcy, 'the only appropriate way to

assert a claim against a debtor's estate is through the timely filing of a properly executed proof of

claim' and not through an adversary proceeding.") (quoting *Johns-Manville*, 53 B.R. at 354).

Presumably, it is for this reason that Plaintiff also filed a claim against LATAM in the Chapter

11 proceedings on August 4, 2020.  *See* Claim No. 589.

> B.   Plaintiff's Requests for Declaratory and Injunctive Relief Do Not Bring Its
>      Claims Within the Ambit of Bankruptcy Rule 7001

Although Bankruptcy Rule 7001(7) provides that an adversary proceeding can include "a

proceeding to obtain an injunction or other equitable relief," Fed. R. Bankr. P. 7001(7), to have

standing to seek prospective injunctive relief, "a plaintiff cannot rely on past injury . . . but must

show a likelihood that he . . . will be injured in the future.  Moreover, such a threat of future

injury must be actual and imminent, not conjectural or hypothetical."  *Berni v. Barilla S.p.A.*, 964

F.3d 141, 147 (2d Cir. 2020); *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir.

2016) ("Although past injuries may provide a basis for standing to seek money damages, they do

not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely

to be harmed again in the future in a similar way.").

For similar reasons dooming its claim for declaratory relief, *see supra* at 11-12, Plaintiff

does not have standing to seek injunctive relief.  Here, Plaintiff cannot show a likelihood that it

will be harmed again in a similar way as alleged in the Complaint, much less that any

hypothetical future harm is "actual and imminent."  Plaintiff makes no allegations that it has

purchased other multi-segment tickets on LATAM and is unable to avoid missing any of those

segments.  And, critically, any potential future injury is entirely within Plaintiff's control, given

that Plaintiff is aware of LATAM's No-Show Policy and can choose whether to purchase

LATAM tickets and, if purchased, board its outgoing flights.  *See Berni*, 964 F.3d at 147 ("[P]ast

purchasers of a product . . . are not likely to encounter future harm of the kind that makes

injunctive relief appropriate.  In the first place, past purchasers are not bound to purchase a

product again—meaning that once they become aware they have been deceived, that will often

be the last time they will buy that item."); *In re Johnson & Johnson Talcum Powder Prod. Mktg.,*

*Sales Practices & Liab. Litig.*, 903 F.3d 278, 292-93 (3d Cir. 2018) ("[Plaintiff] has sued

[defendant] for failing to warn her of certain health risks.  To state the obvious, then, she is

presently aware of those risks. . . .  [W]e wonder how [plaintiff] could possibly be deceived

again into buying [the product at issue] without being aware of those same risks.").  Plaintiff thus

lacks standing to bring a claim for injunctive relief.

Bankruptcy Rule 7001(9) provides that an adversary proceeding can include a proceeding

"to obtain a declaratory judgment relating to any of the foregoing."  Fed. R. Bankr. P. 7001(9).

Although "the foregoing" includes proceedings to obtain an injunction or other equitable relief,

because Plaintiff does not have standing to pursue injunctive relief for the reasons stated above,

it cannot sustain an adversary proceeding to obtain declaratory judgment "related to" a

proceeding for injunctive relief.  Additionally, as stated *supra* at 10-14, Plaintiff fails to state a

claim for declaratory judgment, and therefore Count I should be dismissed.  As a result, even if

other claims survive, there can be no dispute that this adversary proceeding would no longer be

one to obtain declaratory relief and thus would not fit into Bankruptcy Rule 7001(9).

Even if the Court were to find that an adversary proceeding seeking declaratory relief

were permissible in this case, the Court should still exercise its discretion to dismiss the

Complaint.  *See supra* at 12-13.  The proper procedure for resolving TM's claim—which is

really about the money damages it wants for its cancelled flight and replacement tickets—is the

claims process.  Because that process is a more effective and efficient means for addressing

17

Plaintiff's claims, the Court should dismiss the adversary complaint requesting declaratory relief. *See John Wiley & Sons*, 2011 WL 5245192, at *9 ("A court 'properly may refuse declaratory relief if the alternative remedy is better or more effective.'") (quoting 10B Wright & Miller § 2758); *see also Nemee v. Cty. of Calaveras (In re Nemee)*, Bankr. Case No. 09-93249-E-11, Adv. No. 09-9088, 2010 WL 9478898, at *4 (Bankr. E.D. Cal. May 19, 2010) (stating that the tests for whether a court should entertain a request for declaratory relief are whether the "issuance of a declaratory judgment will effectively solve the problem, whether it will serve a useful purpose, and whether or not the other remedy is more effective or efficient").

C.    Plaintiff's Request for Class Relief Does Not Make Adjudication of Its Claims in an Adversary Proceeding Appropriate

That the Complaint is styled as a class action does not mean that it can properly be brought as an adversary proceeding.  The appropriate procedure for Plaintiff to seek class-wide relief remains the proof of claim process.  Bankruptcy Rule 9014 authorizes class proofs of claim.  *See In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 369 (Bankr. S.D.N.Y. 1997) (stating that class proofs of claim are permissible in a Bankruptcy Court's discretion because Bankruptcy Rule 9014 permits the application of Bankruptcy Rule 7023, and thus Federal Rule 23, to contested matters); *In re Musicland Holding Corp.*, 362 B.R. 644, 650-51 (Bankr. S.D.N.Y. 2007).  "[T]he proponent of a class claim must . . . make a motion to extend the application of Rule 23 to some contested matter." *Musicland*, 362 B.R. at 651.  Plaintiff's attempt to circumvent the proof of claim process is improper and should be rejected.  *See Circuit City*, 2010 WL 120014, at *1 (dismissing proposed class action adversary proceeding in favor of the claims process).  Dismissing the adversary proceeding would not prejudice Plaintiff's ability to seek an order pursuant to Bankruptcy Rule 9014 permitting a class proof of claim, as the claims bar date has not passed.  Indeed, Plaintiff already filed a proof of claim against LATAM

18

for $5,000,001,[8] so it cannot conceivably be prejudiced by dismissal here.

Further, the proposed class action would not be certifiable under Bankruptcy Rule 7023 and Federal Rule 23, and therefore the Court should reject Plaintiff's attempt to bring its claims through a purported class action adversary proceeding. *See Herndon* Order at 9-11. Federal Rule 23(a) requires a showing of numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23(a). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Typicality "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). To prove adequacy, a plaintiff must demonstrate that (1) the proposed class counsel is "qualified, experienced and able to conduct the litigation," and (2) the proposed class representatives have no interests that are "antagonistic to the interest of other members of the class." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). In addition, a party seeking certification must meet one of the criteria of Federal Rule 23(b), which may be satisfied if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).[9] Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010)

---

[8]     The Debtors lack knowledge of how Plaintiff arrived at this asserted damages number, particularly given that the Complaint does not specify the damages sought, but alleges that Plaintiff paid $2,280 for its round-trip tickets on LATAM and $1,526 for its replacement inbound flights. *See* Compl. ¶¶ 12, 23. The Debtors reserve all of their rights with respect to the asserted proof of claim.

[9]     For the same reasons that Plaintiff does not have standing to pursue declaratory or injunctive relief, the criteria of Federal Rule 23(b)(2) cannot be satisfied. *See Berni*, 964 F.3d at 149 ("[S]ince injunctive relief is not proper for the group of past purchasers . . . that group cannot be certified as a Rule 23(b)(2) class.").

(quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

There are a number of reasons why the proposed class members are unlikely to be similarly situated to one another or to Plaintiff.  At a minimum, putative class members will have purchased different kinds of tickets (for example, different fare classes, refundable versus non-refundable), from different sellers (for example, directly from LATAM or, as Plaintiff did, through a third party), for trips with different numbers of segments, and different operators. Other variances would include the reason for the flight cancellation (as Plaintiff has not limited the proposed class to customers whose flights were cancelled under the No-Show Policy),[10] whether the customer bought a replacement flight and how much it cost, whether the customer has received any refund, and whether the customer has previously had tickets cancelled pursuant to LATAM's No-Show Policy or an equivalent policy of one of several other airlines.

All of these intra-class distinctions destroy commonality and predominance.  *See, e.g.*, *Rambarran v. Dynamic Airways, LLC*, No. 14-cv-10138 (KBF), 2015 WL 4523222, at *8 (S.D.N.Y. July 27, 2015) (finding a proposed class to lack commonality when it referred to any delayed flight over the course of a month and had no limits for the "nature of those delays"); *Hanni v. Am. Airlines, Inc.*, No. C 08-00732 CW, 2010 WL 289297, at *10 (N.D. Cal. Jan. 15, 2010) (finding delays caused on a single day at a single airport not to be sufficiently common due to different lengths of delay and different circumstances during the delay); *Wilensky v. Olympic Airways, S. A.*, 73 F.R.D. 473, 477 (E.D. Pa. 1977) (declining to find predominance in regards to a potential class action related to "bumping" passengers due to individualized circumstances); *Dochak v. Polskie Linie Lotnicze LOT S.A.*, No. 15 C 4344, 2017 WL 2362570, at *5 (N.D. Ill. May 30, 2017) (collecting cases and noting that courts often decline to certify

---

[10]    In light of the fact that Plaintiff's proposed class and sub-class definitions include customers other than those whose flights were cancelled due to the No-Show Policy, the proposed class and sub-class are also overbroad.

20

classes under the Montreal Convention due to individualized nature of claims, "especially when the putative class consists of individuals of different flights").

Similarly, Plaintiff will be unable to show typicality, in that the class members' claims will not have arisen from the same course of events. For example, Plaintiff alleges that it purchased two-segment tickets through a third party, as well as that it informed the airline that it was not planning on taking its outbound flights, and that it purchased replacement flights on another airline. Compl. ¶¶ 12-13, 17. There is no basis to infer that Plaintiff's claims will be typical of the class on these issues. *Cf. Rambarran*, 2015 WL 4523222, at *8 (noting named plaintiff's claim was not typical because he booked an alternative flight whereas others had their flights rebooked by the airline).

Nor has Plaintiff demonstrated superiority. This is particularly so given that the bankruptcy claims process is available to Plaintiff (including for its purported class claims) and is superior to a class action adversary proceeding for all of the reasons stated above. *See In re Ephedra*, 329 B.R. at 9 ("[S]uperiority of the class action vanishes when the 'other available method' is bankruptcy, which consolidates all claims in one forum and allows claimants to file proofs of claim without counsel and at virtually no cost."); *cf. Circuit City*, 2010 WL 120014, at *1 (dismissing proposed class action adversary proceeding in favor of the claims process). Additionally, a court may find the superiority requirement not satisfied where there are serious concerns about the manageability of a class action. *See* Fed. R. Civ. P. 23(b)(3)(D) ("The matters pertinent to these finding include . . . the likely difficulties in managing a class action"). Here, as in *Rambarran*, given all the potential intra-class differences, any class action would "disintegrate into a series of mini-trials regarding . . . each passenger's individual damages." 2015 WL 4523222, at *11.

Additionally, Plaintiff has asserted claims for unjust enrichment and under the FDUTPA on behalf of multistate classes. Even if the Court were to find that Plaintiff could state a claim for unjust enrichment under one state's law, this claim is inappropriate to bring on behalf of the entire multistate class. *See, e.g.*, *In re Aquadots Prods. Liab. Litig.*, 270 F.R.D. 377, 386 (N.D. Ill. 2010) ("[T]he law of unjust enrichment varies too much from state to state to be amenable to national or even to multistate class treatment."); *Yarger v. ING Bank, fsb*, 285 F.R.D. 308, 324 & n.23 (D. Del. 2012) (declining to certify multistate class including California, Florida, Massachusetts, and New York in action bringing unjust enrichment claims). In the Complaint, Plaintiff fails to sufficiently plead that the standards of the various states' unjust enrichment causes of action are similar enough that multistate class treatment would be appropriate. *See Vulcan Golf, LLC v. Google Inc.*, 254 F.R.D. 521, 532 (N.D. Ill. 2008) (rejecting nationwide class treatment where plaintiffs had "provid[ed] excerpts of the elements of the 50 states' unjust enrichment" laws but "fail[ed] to discuss the states' laws in detail"); *Yarger*, 285 F.R.D. at 324 (same with respect to multistate class treatment). Here, Plaintiff merely cites to the Restatement (Third) of Restitution and Unjust Enrichment and lists the elements required under the relevant states' unjust enrichment law. *See* Compl. at Appendix A. This is insufficient to state a claim for unjust enrichment across a multistate class.

Finally, even if the Court finds that the Plaintiff's complaint has stated a FDUTPA claim, the claim cannot be brought on behalf of the multistate class, and must be restricted to a Florida subclass. "FDUTPA applies only to actions that occur within the state of Florida." *Dolan v. JetBlue Airways Corp.*, 385 F. Supp. 3d 1338, 1355 (S.D. Fla. 2019). Plaintiff cannot assert its FDUTPA claim on behalf of individuals across five states covering conduct that occurred outside the state of Florida.

22

D.      Allowing Plaintiff's Claims to Move Forward in an Adversary Proceeding Would
        Undermine the Automatic Stay and Circumvent the Claims Process

As discussed *supra* at 14-16, claims (as here) for damages from prepetition conduct must

be asserted through the proof of claim process.  It would be unfair to other claimants to allow

Plaintiff's claims to proceed in an adversary proceeding.  Moreover, doing so would threaten to

open the floodgates to other potential plaintiffs, prejudicing the Debtors' ability to focus on their

reorganization efforts, as well as rendering unmanageable this Court's docket.  Plaintiff should

not be permitted to leapfrog the proof of claim process. *See Johns-Manville*, 53 B.R. at 354 ("To

permit persons who fail to file proofs of claim to maintain an adversary proceeding to assert their

claims against the debtor would be fundamentally unfair to those creditors who have complied

with the filing requirements of the Code and the Rules").  Indeed, as noted above, Plaintiff filed a

proof of claim against LATAM on August 4, 2020, and then rather than waiting for its claim to

be adjudicated, took the additional step of initiating this adversary proceeding.  Further, allowing

this adversary proceeding to continue would invite other prepetition claim holders to initiate

adversary proceedings rather than follow the appropriate claims process, which could lead to an

unmanageable flood of improper adversary proceedings.

Section 362 of the Bankruptcy Code stays "the commencement or continuation, including

the issuance or employment of process, of a judicial, administrative, or other action or

proceeding against the debtor that was or could have been commenced before the

commencement of the case under this title, or to recover a claim against the debtor that arose

before the commencement of the case under this title."  11 U.S.C. § 362(a)(1).  There is an

exception to the automatic stay if an action that would otherwise be enjoined by Section 362(a) is

commenced in the bankruptcy court where the debtor's bankruptcy is pending. *See Lighthouse*

*Bluffs, Corp. v. Atreus Enters., Ltd. (In re Atreus Enters., Ltd.)* , 120 B.R. 341, 346 (Bankr.

23

S.D.N.Y. 1990).  Although the instant case does not technically violate the "home" Bankruptcy

Court exception, allowing it to proceed would circumvent the protections afforded LATAM

under the automatic stay.  *See Prewitt v. N. Coast Vill., Ltd. (In re N. Coast Vill., Ltd.)*, 135 B.R.

641, 643 (B.A.P. 9th Cir. 1992) (stating that the "home" Court exception does not "grant[]

creditors permission to commence and continue with impunity any proceedings against the

debtor so long as the proceeding is commenced in the home bankruptcy court" and holding that

even if an adversary proceeding does not violate the automatic stay, it may be dismissed as

procedurally improper where the claims should have been asserted through the claims process);

*Penney*, 76 B.R. at 161 (holding that a prepetition state law cause of action brought as an

adversary proceeding was "exactly the same action [the creditor] would file in state court had

there been no bankruptcy," and it "is sheer nonsense" for the creditor to believe it could

circumvent the stay simply because "the suit [was] filed in the bankruptcy court").  This is

especially so given that Plaintiff commenced this adversary proceeding to assert prepetition

claims that were already asserted prior to the petition date in the Southern District of Florida, and

which were stayed pursuant to the automatic stay.[11]

## VI.   <u>Plaintiff Is Bound To Arbitrate Its Claims</u>

The Federal Arbitration Act expressly provides that "an agreement in writing to submit to

arbitration an existing controversy . . . shall be valid, irrevocable and enforceable."  9 U.S.C. § 2.

Where a contract contains an arbitration clause, there is a "presumption of arbitrability."  *AT & T*

*Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).  "[A]ny doubts concerning

the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l*

---

[11]      Alternatively, if the Court does not dismiss the Complaint, LATAM respectfully requests that the Court
exercise its discretion to stay the adversary proceeding pursuant to its authority under section 105 of the Bankruptcy
Code, 11 U.S.C. § 105(a), given that the Chapter 11 proceedings are still at an early stage.

*Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).  Where, as here, "the contract contains a 'broad' arbitration clause . . . the strong presumption in favor of arbitrability applies with even greater force."  *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 121 (2d Cir. 1991).  Under the BudgetAir terms and conditions, Plaintiff agreed to arbitrate all disputes and waived its right to serve as a class member in any purported class action.  *See* Ex. C at 7-8.  As a third party beneficiary of that agreement, LATAM is entitled to enforce that provision.  *See Calzadillas v. Wonderful Co., LLC*, No. 1:19-cv-00172-DAD-JLT, 2019 WL 5448308, at \*2 (E.D. Cal. Oct. 24, 2019).  Plaintiff's claims should therefore be dismissed on this basis.

As part of BudgetAir's terms and conditions, customers "agree that any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement, interpretation or validity thereof or the use of the Services or Content (collectively, 'Disputes') will be settled by binding arbitration."  Ex. C at 7.  Under California law, which expressly governs, "[a] third party may qualify as a beneficiary under a contract where the contracting parties must have intended to benefit that individual and such intent appears on the terms of the agreement."  *Harper v. Wausau Ins. Co.*, 56 Cal. App. 4th 1079, 1087 (Cal. Ct. App. 1997). LATAM was an intended beneficiary of the contract.  Among the "sole purposes" of BudgetAir's services is to "make reservations or enter into other transactions with Suppliers." Ex. C at 1.  LATAM is such a "Supplier," making LATAM an intended third-party beneficiary of the terms and conditions.  Additionally, the terms of the arbitration clause expressly require arbitration for any dispute "arising out of or relating to . . . the use of the Services," which are to help travelers make reservations with Suppliers like LATAM.

## CONCLUSION

For the foregoing reasons, LATAM respectfully requests that the Court dismiss the Complaint in its entirety.

25

Dated:  September 21, 2020
            New York, New York

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: */s/ Luke A. Barefoot*

Luke A. Barefoot
Lina Bensman
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel for LATAM Airlines Group S.A.*