**Defendant's Motion to Dismiss [ECF 7]**
**Hearing Date and Time: November 18, 2020; 11:00 a.m. EST**
**Reply Deadline: October 27, 2020**

Eduardo A. Maura, Esq.
Luis F. Quesada, Esq.
**Ayala Law, P.A.**
1390 Brickell Ave, Ste 335
Miami, FL 33131
Telephone: (305) 570-2208
Email: eayala@ayalalawpa.com

*Counsel for TM Solutions USA LLC*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------x
In re:                                     :        Case No. 20-11254-JLG
                                           :
LATAM Airlines Group S.A., et al.,         :        Chapter 11
                                           :
        Debtors.                           :        Jointly Administered
-------------------------------------------------------------x
TM Solutions USA LLC,                      :
                                           :
        Plaintiff,                         :
                                           :
v.                                         :        Adv. Pro. No. 20-01207-JLG
                                           :
LATAM Airlines Group S.A.,                 :
                                           :
        Defendant.                         :
-------------------------------------------------------------x
```

## PLAINTIFF'S RESPONSE TO DEFENDANT LATAM AIRLINES GROUP S.A.'S <u>MOTION TO DISMISS THE CLASS ACTION COMPLAINT</u>

# TABLE OF CONTENTS

TABLE OF CONTENTS ..............................................................................................................I

TABLE OF AUTHORITIES .......................................................................................................II

INTRODUCTION .........................................................................................................................1

FACTUAL BACKGROUND ........................................................................................................2

LEGAL STANDARD ....................................................................................................................3

ARGUMENT .................................................................................................................................4

I.   PLAINTIFF'S CLAIM UNDER THE MONTREAL CONVENTION................................................4
II.  PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT ...............................................................4
     A.  Plaintiff Sufficiently States a Claim for Unjust Enrichment.............................................4
     B.  Plaintiff's Claim for Unjust Enrichment Is Not Preempted ............................................7
III. PLAINTIFF'S CLAIM UNDER THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES
     ACT ............................................................................................................................................8
     A.  Plaintiff's Claim Under FDUTPA Is Not Preempted.....................................................8
     B.  Plaintiff Sufficiently States a Claim Under FDUTPA ....................................................9
IV.  PLAINTIFF'S CLAIM FOR DECLARATORY JUDGMENT .......................................................11
     A.  Plaintiff Has a Claim Under the Federal Declaratory Judgment Act...........................11
         1.  Declaratory judgment is an available remedy in this case ....................................11
         2.  The facts alleged warrant issuance of a declaratory judgment...............................12
         3.  The Court should exercise its discretion to grant declaratory relief....................13
     B.  Plaintiff's Claim for Declaratory Relief Is Not Preempted..........................................13
     C.  Plaintiff Has Pleaded Sufficient Facts to Show Unconscionability ..............................14
V.   PLAINTIFF'S ADVERSARY PROCEEDING IS PROPER ..........................................................16
     A.  Plaintiff's Claims Can Be Brought as Adversary Proceeding .....................................16
     B.  Plaintiff's Claims for Equitable Relief Under Rule 7001.............................................17
     C.  Plaintiff's Request for Class Relief..............................................................................18
         1.  Commonality and Predominance.........................................................................19
         2.  Typicality ............................................................................................................20
         3.  Superiority...........................................................................................................21
         4.  TM Solutions' state law claims ...........................................................................22
     D.  Plaintiff's Adversary Proceeding Does Not Undermine the Automatic Stay................23
VI.  PLAINTIFF IS NOT BOUND TO ARBITRATE ITS CLAIMS.....................................................24

CONCLUSION ...........................................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Am. Airlines, Inc. v. Wolens*,
513 U.S. 219 (1995) -------------------------------------------------------------------------------7

*Bailey v. Rocky Mountain Holdings, LLC*,
889 F.3d 1259 (11th Cir. 2018) -----------------------------------------------------------------8

*Basulto v. Hialeah Auto.*,
141 So. 3d 1145 (Fla. 2014) ------------------------------------------------------------------- 14

*Bishop v. New York City Dep't of Hous. Pres. & Dev.*,
141 F.R.D. 229 (S.D.N.Y. 1992)-------------------------------------------------------------- 21

*Branche v. AirTran Airways, Inc.*,
342 F.3d 1248 (11th Cir. 2003) --------------------------------------------------------------- 13

*Britton v. Co-op Banking Grp.*,
4 F.3d 742 (9th Cir. 1993) --------------------------------------------------------------------- 24

*Brown v. United Air Lines, Inc.*,
656 F. Supp. 2d 244 (D. Mass. 2009) ----------------------------------------------------------7

*Catullo v. Air France*,
2009 WL 1054150 (Conn. Super. Ct. Mar. 19, 2009)-------------------------------------- 5, 16

*City of Miami v. Bank of Am. Corp.*,
800 F.3d 1262 (11th Cir. 2015) ----------------------------------------------------------------5

*Davis v. Powertel, Inc.*,
776 So. 2d 971 (Fla. Dist. Ct. App. 2000) --------------------------------------------------- 17

*Dolan v. JetBlue Airways Corp.*,
385 F. Supp. 3d 1338 (S.D. Fla. 2019)--------------------------------------------------------6, 9

*Donoff v. Delta Air Lines, Inc.*,
2019 WL 9091763 (S.D. Fla. July 9, 2019) ----------------------------------------------------6

*Ehrlich v. Am. Airlines, Inc.*,
360 F.3d 366 (2d Cir. 2004) --------------------------------------------------------------------4

*Enomoto v. Space Adventures, Ltd.*,
624 F. Supp. 2d 443 (E.D. Va. 2009)-----------------------------------------------------------6

*FI-Pompano Rehab, LLC v. Irving*,
221 So. 3d 781 (Fla. Dist. Ct. App. 2017) ---------------------------------------------------- 14

*Garcia v. Truck Ins. Exch.*,
36 Cal. 3d 426, 682 P.2d 1100 (1984)--------------------------------------------------------- 24

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)------------------------------------------------------------------- 23

*Harrison v. Lee Auto Holdings, Inc.*,
295 So. 3d 857 (Fla. Dist. Ct. App. 2020) ------------------------------------------------------9

*Hobby Lobby Stores, Inc. v. Cole*,
287 So. 3d 1272 (Fla. Dist. Ct. App. 2020)-------------------------------------------------- 14

*In re Abbott Labs. Norvir Anti-Tr. Litig.*,
2007 WL 1689899 (N.D. Cal. June 11, 2007)----------------------------------------------- 23

*In re Allied Artists Pictures Corp.*,
71 B.R. 445 (S.D.N.Y. 1987)-------------------------------------------------------------------- 13

*In re Amla Litig.*,
282 F. Supp. 3d 751 (S.D.N.Y. 2017) --------------------------------------------------------- 18

*In re Briggs*,
143 B.R. 438 (Bankr. E.D. Mich. 1992) ------------------------------------------------------ 18

*In re Cole Assocs., Inc.*,
7 B.R. 154 (Bankr. D. Utah 1980) ---------------------------------------------------------------3

*In re Dewey & LeBoeuf LLP*,
487 B.R. 169 (Bankr. S.D.N.Y. 2013) -------------------------------------------------------- 19

*In re Initial Pub. Offering Sec. Litig.*,
243 F.R.D. 79 (S.D.N.Y. 2007) ----------------------------------------------------------------- 19

*In re Managed Care Litig.*,
185 F. Supp. 2d 1310 (S.D. Fla. 2002)---------------------------------------------------------6

*In re Maxwell Newspapers, Inc.*,
189 B.R. 282 (Bankr. S.D.N.Y. 1995) ----------------------------------------------------------3

*In re N. Coast Vill., Ltd.*,
135 B.R. 641 (B.A.P. 9th Cir. 1992) ----------------------------------------------------------- 24

*In re Takata Airbag Prod. Liab. Litig.*,
193 F. Supp. 3d 1324 (S.D. Fla. 2016) ----------------------------------------------------------------- 7

*In re Taylor Bean & Whitaker Mortg. Corp.*,
2010 WL 4025873 (Bankr. M.D. Fla. Sept. 27, 2010) --------------------------------------------- 21

*In re TSC Glob., LLC*,
2013 WL 6502168 (Bankr. D. Del. June 26, 2013) ----------------------------------------------- 16

*In re WorldCom, Inc. Sec. Litig.*,
219 F.R.D. 267 (S.D.N.Y. 2003)----------------------------------------------------------------------- 19

*Jones v. Jacobson*,
195 Cal. App. 4th 1, 125 Cal. Rptr. 3d 522 (2011) ----------------------------------------------- 25

*Lemire v. Wolpoff & Abramson, LLP*,
256 F.R.D. 321 (D. Conn. 2009) ---------------------------------------------------------------------- 21

*McTigue v. Regal Cruises, Inc.*,
1998 WL 191430 (S.D.N.Y. Apr. 22, 1998) -------------------------------------------------------- 10

*Nw., Inc. v. Ginsberg*,
572 U.S. 273 (2014) ----------------------------------------------------------------------------------------8

*Pendergast v. Sprint Nextel Corp.*,
592 F.3d 1119 (11th Cir. 2010) ------------------------------------------------------------------------ 15

*Powertel, Inc. v. Bexley*,
743 So. 2d 570 (Fla. Dist. Ct. App. 1999) ---------------------------------------------------------- 15

*Seijas v. Republic of Argentina*,
606 F.3d 53 (2d Cir. 2010)------------------------------------------------------------------------------- 20

*Solo v. United Parcel Serv. Co.*,
819 F.3d 788 (6th Cir. 2016) --------------------------------------------------------------------------- 8

*Specht v. Netscape Commc'ns Corp.*,
306 F.3d 17 (2d Cir. 2002)-------------------------------------------------------------------------------9

*Trautz v. Weisman*,
846 F. Supp. 1160 (S.D.N.Y. 1994) ------------------------------------------------------------------ 19

*Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*,
73 F.3d 1423 (7th Cir. 1996) --------------------------------------------------------------------------- 13

*Velez v. Novartis Pharm. Corp.*,
244 F.R.D. 243 (S.D.N.Y. 2007)------------------------------------------------------------------- 20

*Vulcan Golf, LLC v. Google Inc.*,
254 F.R.D. 521 (N.D. Ill. 2008)------------------------------------------------------------------- 23

*Webber v. Bactes Imaging Sols., Inc.*,
295 So. 3d 841 (Fla. Dist. Ct. App. 2020) --------------------------------------------------------- 10

*Williams v. Mohawk Indus., Inc.*,
568 F.3d 1350 (11th Cir. 2009) ------------------------------------------------------------------- 22

*Yarger v. ING Bank*,
285 F.R.D. 308 (D. Del. 2012) ------------------------------------------------------------------- 23

*Zamber v. Am. Airlines, Inc.*,
282 F. Supp. 3d 1289 (S.D. Fla. 2017)-----------------------------------------------------------6, 9

## STATUTES

28 U.S.C. § 2201 ----------------------------------------------------------------------------------- 11
49 U.S.C. § 41713-----------------------------------------------------------------------------------7
Fla. Stat. § 501.211 ------------------------------------------------------------------------------- 17

## RULES

Fed. R. Bankr. P. 7001 -------------------------------------------------------------------- 16, 17, 18
Fed. R. Bankr. P. 7012 -----------------------------------------------------------------------------3
Fed. R. Bankr. P. 9014 ------------------------------------------------------------------------- 18
Fed. R. Civ. P. 12 ---------------------------------------------------------------------------------3

Plaintiff TM Solutions USA LLC ("TM Solutions") respectfully submits this Response in opposition to Defendant LATAM Airlines Group S.A.'s ("LATAM") Motion to Dismiss the Class Action Complaint, and states the following:

## **INTRODUCTION**

In this class action adversary proceeding, TM Solutions asks the Court to enjoin LATAM from enforcing its No-Show Policy, under which LATAM intentionally and as a matter of policy cancels tickets for flights that consumers already paid for, without their consent, in order to resell them and enrich itself—all at the expense of consumers left stranded at airports, scrambling to buy last-minute, high-priced flights in other airlines.

LATAM's "no-show" scheme is plainly unjust. It is difficult to argue otherwise. LATAM gets to collect twice; consumers receive nothing: not the flight out, not the flight back. The plaintiff in this action is not asking for something difficult or extraordinary. TM Solutions requests that LATAM meet its part of the bargain and fly consumers who have paid for flights; that before re-selling a seat a consumer intends to use, LATAM seek consent from that consumer who paid for that seat. It would be very easy to obtain a consumer's consent. In the digital era, large institutions routinely request consumers' consent by simply sending a text message: "If you are going to use your inbound flight, reply 1" or "If you are not going to use your inbound flight, reply 2."

This case reflects, however, that LATAM has no interest in obtaining consent. Even when a TM Solutions agent took the time to let LATAM know that it was not going to use the outbound flights, LATAM still cancelled its return flights. LATAM would rather have consumers pay more expensive flights with itself or else cancel the entire route. All in all, TM Solutions paid $2,280 to LATAM (for which it received nothing) and an additional $2,366 to other airlines to get its agents to and from their destination. On these facts, LATAM alleges that TM Solutions "received the

1

value of its bargained-for exchange."

LATAM justifies this unjust scheme by claiming it is an "industry standard." However, being the standard does not equate to being just or lawful. Segregation in schools was the standard before *Brown v. Board of Education*. The ERISA financial abuse litigation landscape changed with *Tibble v. Edison Int'l*. Put simply, the unfair standard of cancelling flights a consumer intends to use should not be the norm. This is especially true when airlines do not lose any money by not cancelling flights but rather save in fuel costs. Not being able to make double on a seat should not be a good enough reason to leave consumers stranded in airports.

TM Solutions' Class Action Complaint asserts counts against LATAM for declaratory judgment, violation of the Montreal Convention, unjust enrichment, and violation of the Florida Deceptive and Unfair Trade Practices Act. LATAM moves to dismiss TM Solutions' Complaint, arguing that TM Solutions has failed to state a claim. However, the facts alleged in the Complaint easily state a claim under any of the theories advanced by TM Solutions. TM Solutions' claims are also not preempted by federal law, as posited by LATAM.

Despite LATAM's insinuations of impropriety, TM Solutions has brought this class action as a proper adversary proceeding seeking equitable relief to protect future customers from harm. In a last-ditch effort to avoid liability, LATAM also attempts to enforce an arbitration agreement to which it is neither a party nor an intended beneficiary and that does not apply to this dispute. In short, LATAM has failed to carry its burden in seeking dismissal of TM Solutions' Complaint.

## **FACTUAL BACKGROUND**

In February 2020, TM Solutions purchased two roundtrip tickets with LATAM on the route LIM-MIA-LIM for Pedro Egusquiza ("Egusquiza") and Andres Guerrero ("Guerrero"). Compl., ¶11. TM Solutions paid $2,280 for Egusquiza and Guerrero's tickets. *Id.*, ¶12. Realizing that the

2

outbound flights had been inadvertently purchased for the wrong date, a TM Solutions employee attempted to change their itinerary, but was told by BudgetAir that replacement tickets were around $1,800 and that she should call LATAM directly to solve the problem. *Id.*, ¶13. LATAM, in turn, told her to call BudgetAir back, saying it was BudgetAir the one that had to solve the problem. *Id.*, ¶14. Because of the useless back-and-forth between LATAM and BudgetAir and the high price of replacement flights (about 2.5 times what American Airlines charged), TM Solutions purchased alternate flights for Egusquiza and Guerrero in American Airlines for $420 each. *Id.*, ¶16.

Although LATAM was aware of Egusquiza and Guerrero's plans, LATAM still cancelled their return tickets. *Id.*, ¶17. When Egusquiza and Guerrero attempted to check in for their return flight, they were not able to do so because LATAM had cancelled their entire roundtrip due to its No-Show Policy. *Id.*, ¶21. TM Solutions was then forced to buy return flights for Egusquiza and Guerrero, who were stranded in Miami, in another airline for $1,526. *Id.*, ¶23. TM Solutions' situation is similar to hundreds, if not thousands, of customers whose return flights are cancelled every day by LATAM because of its No-Show Policy.

## **LEGAL STANDARD**

A motion to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), made applicable to adversary proceedings by Fed. R. Bankr. P. 7012(b), can only be granted if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *In re Cole Assocs., Inc.*, 7 B.R. 154, 156 (Bankr. D. Utah 1980). When ruling on a motion to dismiss, the bankruptcy court "must not only accept all factual allegations as true but [it] must draw all reasonable inferences in the plaintiff's favor as well." *In re Maxwell Newspapers, Inc.*, 189 B.R. 282, 290 (Bankr. S.D.N.Y. 1995).

## ARGUMENT

### I.   Plaintiff's Claim Under the Montreal Convention

The Convention for the Unification of Certain Rules for International Carriage by Air (the "Montreal Convention") updated and replaced the uniform system of liability for international air carriers previously established by the Warsaw Convention. *See Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 371 n.4 (2d Cir. 2004). Article 19 of the Montreal Convention governs claims arising from delay in international air transportation. LATAM claims that TM Solutions fails to state a claim under Article 19 of the Montreal Convention. Mem.[1], p.4. LATAM argues that "Article 19 simply does not apply to claims based on an airline's refusal to transport a customer." *Id.*, p.5.

LATAM characterizes the claims of TM Solutions and all other putative class members as sounding in non-performance, rather than delay. LATAM argues such claims fall outside the scope of Article 19. Undersigned counsel has not found any precedent on point regarding the application of the Montreal Convention to the scenario where an airline cancels flights for which it has already been paid due to a "no-show" policy, which results in customers having to secure other flights to arrive at their destinations late. It seems, however, to be a case more akin to non-performance than delay. Therefore, TM Solutions withdraws Count II against LATAM.

### II.   Plaintiff's Claim for Unjust Enrichment

#### A.  Plaintiff Sufficiently States a Claim for Unjust Enrichment

Under Florida law,[2] an unjust enrichment claim has three elements: "first, the plaintiff has conferred a benefit on the defendant; second, the defendant voluntarily accepted and retained that benefit; and, finally, the circumstances are such that it would be inequitable for the defendants to

---

[1] "Mem." refers to LATAM's Memorandum of Law in support of its Motion to Dismiss [ECF 8].

[2] LATAM's memorandum claims to discuss only Florida law. TM Solutions' position is that "there are no true conflicts (i.e., case-dispositive differences) among the various states' unjust enrichment laws." Compl., ¶58.

4

retain the benefit without paying for it." *City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1287

(11th Cir. 2015). TM Solutions has sufficiently alleged all three elements. LATAM only disputes

the third element. LATAM argues "it is not inequitable for LATAM to retain the fare paid for

Plaintiff's flights." Mem., p.6. LATAM's sole basis for this argument is its No-Show Policy, which

LATAM claims allows it to retain the money it obtained from TM Solutions and other putative

class members, even though it did not provide the services paid for by that fare. LATAM's attempt

to shield itself from liability by means of an unfair—and likely illegal—contract provision must

not be entertained by the Court.

The decision in *Catullo v. Air France*, 2009 WL 1054150 (Conn. Super. Ct. Mar. 19, 2009),

is instructive. In *Catullo*, the plaintiffs purchased four roundtrip business class tickets to fly on Air

France. *Id.*, at *1. When they attempted to check in, they were turned away by Air France because

they had not arrived two hours before the scheduled departure, as required by Air France's rules.

*Id.* The plaintiffs' tickets were cancelled, not only for the departure flights but also for the return

flights. *Id.* When Air France cancelled the tickets, those seats became available for purchase again.

*Id.* Rather than allow the plaintiffs to board on the flight that they had already paid for—which had

not departed—Air France forced them to buy new tickets on a later flight, while at the same time

making their seats on the original flight available for sale to others. *Id.* The court found that Air

France was unjustly enriched at the plaintiffs' expense because it had sold to them four additional

tickets, while still having the first four tickets available for purchase. *Id.* at *2.

Here, similarly, TM Solutions purchased two roundtrip tickets to fly on LATAM. Compl.,

¶11. When Egusquiza and Guerrero attempted to check in, they were not able to do so because

LATAM had cancelled their entire roundtrip due to its No-Show Policy. *Id.*, ¶21. TM Solutions

was then required to purchase additional roundtrip tickets on another airline. *Id.*, ¶23. Rather than

allowing Egusquiza and Guerrero to board on a flight that had already been paid for and that had not departed, LATAM forced them to find alternate arrangements while at the same time making their seats available for sale to others.

Just as in *Catullo*, this Court should find that LATAM was unjustly enriched by its actions, notwithstanding its No-Show Policy. *See also Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 459 (E.D. Va. 2009) (allegation that company accepted and retained payments for tourist's participation in extra-vehicular activity in space and that company failed to provide such service was sufficient to state a claim for unjust enrichment).

It should also be noted that TM Solutions is challenging LATAM's No-Show Policy under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). Plaintiffs in Florida have been allowed to plead an unjust enrichment claim against airlines when the airfare was obtained through deceptive and unfair practices. *See*, *e.g.*, *Donoff v. Delta Air Lines, Inc.*, 2019 WL 9091763, at *9 (S.D. Fla. July 9, 2019) ("Plaintiffs' allegations that Delta has created and maintained a deceptive 'pass-through' scheme suffices to show unjust enrichment at the pleading stage"); *Dolan v. JetBlue Airways Corp.*, 385 F. Supp. 3d 1338, 1352 (S.D. Fla. 2019) ("it would be inequitable for [JetBlue] to retain the money because it obtained the money through alleged deceptive acts"); *Zamber v. Am. Airlines, Inc.*, 282 F. Supp. 3d 1289, 1301 (S.D. Fla. 2017) (same).

LATAM also argues that "Plaintiff cannot state a claim for unjust enrichment under Florida law because there was a contract between Plaintiff and Defendant." Mem., p.6. Under Florida law, an unjust enrichment claim can exist "only if the subject matter of that claim is not covered by a valid and enforceable contract." *In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1337 (S.D. Fla. 2002). However, TM Solutions has alleged that LATAM's No-Show Policy is unconscionable and unenforceable. Compl., ¶43. Since an unenforceable contract cannot preclude a claim for unjust

6

enrichment and LATAM has not shown that its contract with TM Solutions and the putative class members is enforceable, TM Solutions has sufficiently stated a claim for unjust enrichment. *See In re Takata Airbag Prod. Liab. Litig.*, 193 F. Supp. 3d 1324, 1344-45 (S.D. Fla. 2016) (consumer sufficiently asserted unjust enrichment claim, even though written warranties existed that covered subject of litigation, where consumer alleged warranties were unconscionable and unenforceable).

B.   Plaintiff's Claim for Unjust Enrichment Is Not Preempted

LATAM also asserts that TM Solutions' claim for unjust enrichment is preempted by the Airline Deregulation Act ("ADA"). Under the ADA, a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. §41713(b)(1). LATAM alleges that "claims related to airline refunds self-evidently fall within the scope of ADA preemption." Mem., p.7. However, TM Solutions' claim is not about refunds, nor is TM Solutions challenging LATAM's right to charge a particular fare for a particular route. TM Solutions' claim is about LATAM's unjust enrichment under a deceptive and unconscionable No-Show Policy. Such a claim is not preempted by the ADA. *See Brown v. United Air Lines, Inc.*, 656 F. Supp. 2d 244, 249 (D. Mass. 2009) (state law class action claim for unjust enrichment was not preempted since plaintiffs did not challenge airline's right to charge fees or amount of fees but only deceptive manner of charging fee).

LATAM also argues that TM Solutions' claim for unjust enrichment is preempted "because such a claim is based on state law obligations." Mem., p.7. In the case *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995), the Supreme Court determined that the ADA's preemption provision does not foreclose suits alleging a breach of the carrier's "own self-imposed undertakings" as these do not constitute a "violation of state-imposed obligations." *Id.* at 228. Further defining what may constitute a "state-imposed obligation," the Supreme Court later explained that "the reasoning of

*Wolens* neither dooms nor spares" all claims based in state common law. *Nw., Inc. v. Ginsberg*, 572 U.S. 273, 285 (2014).

In *Ginsberg*, the Court concluded that a cause of action for breach of the covenant of good faith and fair dealing was preempted by the ADA. *Id.* at 276. The Court found it determinative that the duty of good faith and fair dealing applied to "every contract" under the governing state law. *Id.* at 287-8. On the other hand, "[t]he doctrine of unjust enrichment does not synonymously apply to all contracts as a matter of state policy." *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 798 (6th Cir. 2016). Rather, it serves to "effectuate the intentions of parties or to protect their reasonable expectations," and thus looks to the particular parties to a transaction rather than a universal, state-imposed obligation. *Id.*

Here, TM Solutions and other putative class members had a reasonable expectation that LATAM would provide flights for which they had already paid. When LATAM fails to provide such flights while retaining the money, a claim for unjust enrichment arises. As the claim alleges a breach of LATAM's "own self-imposed undertakings" rather than a "violation of state-imposed obligations," TM Solutions' unjust enrichment claim is not preempted by the ADA.

### III. Plaintiff's Claim Under the Florida Deceptive and Unfair Trade Practices Act

#### A. Plaintiff's Claim Under FDUTPA Is Not Preempted

LATAM contends that TM Solutions' claim under FDUTPA is also preempted by the ADA because "LATAM's No-Show Policy directly concerns the rates that an airline charges." Mem., p.8. "While the rates of air carriers are currently free from regulation, their practices are not." *Bailey v. Rocky Mountain Holdings, LLC*, 889 F.3d 1259, 1268 (11th Cir. 2018). As mentioned above, TM Solutions is not challenging LATAM's right to charge any particular rate. What TM Solutions is challenging is LATAM's deceptive and unfair scheme of cancelling flights for which

8

it already has received full payment under an unconscionable and unenforceable No-Show Policy and then reselling cancelled tickets to enrich themselves at the expense of unsuspecting consumers.

It is not entirely clear—and LATAM does not explain—how requiring LATAM to honor the tickets it issues would affect, if at all, the rates it charges. In any case, "[d]etermining whether Plaintiff's claims have an impermissible effect on [LATAM's] prices or services is an inherently factual question; evidence is required to determine whether and how Plaintiff's claim would have such an effect." *Zamber*, 282 F. Supp. 3d at 1302. Therefore, such a determination is premature at the motion to dismiss stage. *Id.*

## B. Plaintiff Sufficiently States a Claim Under FDUTPA

To state a claim under FDUTPA, TM Solutions "must allege (1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolan*, 385 F. Supp. 3d at 1350-51. Here, TM Solutions has properly alleged all three elements.

A practice is deceptive under FDUTPA if "there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Harrison v. Lee Auto Holdings, Inc.*, 295 So.3d 857, 862 (Fla. Dist. Ct. App. 2020). LATAM states its No-Show Policy is not deceptive because it is allegedly "clearly disclosed in LATAM's Transport Agreement, which customers receive notice of upon purchase of the ticket." Mem., pp.8-9. As LATAM concedes, consumers are not aware of the terms and conditions of the Transport Agreement imposed on them, including the No-Show Policy, until after they purchase a flight.[3] As one court put it, "[i]t is not reasonable . . . to permit a carrier to accept payment and

---

[3] LATAM claims that TM Solutions was "on notice of LATAM's terms and conditions based on its purchase through BudgetAir, even if it did not actually review the Transport Agreement." Mem., p.9 n.5. However, a passing reference within a hyperlink in BudgetAir's website to the possible existence of "additional terms and conditions" does not put a reasonably prudent consumer on notice of the actual terms contained in LATAM's Transport Agreement. *See Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 32 (2d Cir. 2002) ("a reference to the existence of license terms on a submerged screen is not sufficient to place consumers on inquiry or constructive notice of those terms").

9

thereafter issue a ticket severely limiting passenger's legal rights while at the same time advising the passenger that the monies paid will not be returned under any circumstances." *McTigue v. Regal Cruises, Inc.*, 1998 WL 191430, at *2 (S.D.N.Y. Apr. 22, 1998). In such situations, "there is no amount of legal fiction that can support the conclusion that the passenger voluntarily agreed to accept the conditions set forth in the ticket when he entered the contract." *Id.*

Even if the Court finds LATAM's practices are not deceptive, there is no question they are unfair to consumers. An unfair practice is one that "offends established public policy" and one that is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Webber v. Bactes Imaging Sols., Inc.*, 295 So.3d 841, 844 (Fla. Dist. Ct. App. 2020). LATAM argues that TM Solutions has "failed to plead that the No-Show Policy is not outweighed by countervailing benefits to consumers." Mem., p.9. However, the Complaint is clear that LATAM's practices offer no benefits to consumers. LATAM gouges the price for changing flights in such a way that forces consumers to purchase flights with other airlines when they cannot make one leg of their roundtrip reservation. Compl., ¶68. When consumers miss one leg of their roundtrip reservation, LATAM cancels the entire reservation. *Id.*, ¶71. LATAM then resells flights that were already paid for by the class members and that the class members intended to use. *Id.*, ¶69. The only party that benefits from the No-Show Policy is LATAM.

LATAM also claims that consumers "can avoid any injury caused by the No-Show Policy by simply flying each of the segments in the itinerary, or else modifying the itinerary as necessary." Mem., p.9. LATAM ignores the realities of life; that sometimes consumers cannot "simply fly" as originally planned. For example, if a consumer were involved in a car accident on his way to the airport, which caused him to miss his outbound flight, LATAM's position is that this consumer is bound by the No-Show Policy and it will cancel his return flight. LATAM's argument that this

10

hypothetical consumer could have avoided his injury (i.e., the loss of his return flight) by "simply flying each of the segments in the itinerary" is clearly untenable. As the Complaint makes clear, "modifying the itinerary as necessary" is also not an option to many passengers because LATAM charges exorbitant prices for replacement flights. *See* Compl., ¶¶13, 68.

Finally, LATAM argues that TM Solutions "has not suffered actual damages under the FDUTPA." Mem., p.9. LATAM claims that TM Solutions "received the value of its bargained-for exchange." *Id.*, p.10. This is certainly not the case. TM Solutions paid $2,280 for Egusquiza and Guerrero's roundtrip tickets. Compl., ¶12. When LATAM cancelled these tickets due to its unfair No-Show Policy, TM Solutions received less than what it expected. TM Solutions also had to pay $1,526 for flights from Miami to Lima when it realized that LATAM had cancelled the tickets. *Id.*, ¶23. When TM Solutions was forced to pay again to secure a service which LATAM was already bound to provide, TM Solutions did not receive the value of its bargained-for exchange. LATAM, on the other hand, always receives its side of the bargain: either by flying with an already-paid-for empty seat (and saving in fuel costs), or by reselling such a seat and making double the income at the expense of its customers.

## IV.   Plaintiff's Claim for Declaratory Judgment

### A.   Plaintiff Has a Claim Under the Federal Declaratory Judgment Act

#### 1.   *Declaratory judgment is an available remedy in this case*

Under the Declaratory Judgment Act, a court may, "[i]n a case of actual controversy within its jurisdiction, . . . declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. §2201(a). LATAM asserts that "Counts II, III and IV of the Complaint fail as a matter of law," precluding a declaratory relief on the basis of these claims. Mem., p.10. However, the opposite is also true. If any of TM

Solutions' substantive claims survive this motion to dismiss, so does the declaratory relief claim.

LATAM challenges TM Solutions' claim for declaratory relief, claiming that TM Solutions "does not explain" what laws make its No-Show Policy void, unenforceable, and unconscionable. *Id.* The Complaint, however, is clear as to what laws LATAM has violated by its enforcement of its No-Show Policy. *See* Counts II-IV. As TM Solutions has sufficiently pleaded substantial causes of action, declaratory judgment is available as a remedy in this case.

### 2.  *The facts alleged warrant issuance of a declaratory judgment*

LATAM argues "there would be no benefit to Plaintiff in obtaining a declaratory judgment" because it "is now fully aware of LATAM's No-Show Policy, and will not again be in a position where it is ignorant of the risk that missing an outbound flight will result in the cancellation of a return flight." Mem., p.11. TM Solutions' awareness of the No-Show Policy, however, does not foreclose the possibility that it will be harmed by it again. As exemplified above, a consumer— through no fault of his own—may miss his outbound flight due to a traffic accident and have his return flight cancelled, regardless of his "awareness" of the policy.

LATAM also claims that the relief TM Solutions seeks "constitutes redress for past alleged harm, rather than a safeguard against potential future harm." *Id.*, pp.11-12. That is patently not the case. TM Solutions has brought this lawsuit as a class action. LATAM did not stop enforcing its No-Show Policy when TM Solutions was harmed. This very moment, there are consumers being harmed by LATAM's unfair practices. Absent a declaration from the Court that LATAM's No-Show Policy is unenforceable, consumers will continue being harmed. Clearly, monetary damages alone are not sufficient to prevent these injuries. Nor would declaratory judgment be "superfluous," as argued by LATAM, but crucial to "remove uncertainty and insecurity from legal relationships without awaiting violation of rights or disturbance of relationships." *In re Allied Artists Pictures*

*Corp.*, 71 B.R. 445, 448 (S.D.N.Y. 1987).

### 3. *The Court should exercise its discretion to grant declaratory relief*

LATAM asks that the Court, in its discretion, dismiss TM Solutions' declaratory judgment

action. Mem., p.12. LATAM claims that "Plaintiff's request for declaratory judgment specifically

seeks to have the Court rewrite LATAM's Transport Agreement." *Id.* TM Solutions is not asking

the Court to rewrite the Transport Agreement, but to declare what the rights of TM Solutions and

other class members are in the face of an arguably illegal provision in the Transport Agreement.

Compl., ¶43. LATAM again argues that TM Solutions "is not attempting to avoid the accrual of

damages" because "[t]he alleged damages have already occurred." Mem., pp.12-13. However, as

stated above, TM Solutions has brought this case as a putative class action and is seeking redress

not only for its own damages but to prevent future damages to consumers. The Court, then, should

exercise its discretion and allow TM Solutions to maintain its claim for declaratory judgment.

### B.  Plaintiff's Claim for Declaratory Relief Is Not Preempted

LATAM asserts that "litigants cannot use state laws, including common law principles of

unconscionability, as a way to impose additional burdens on airlines beyond existing contractual

terms." Mem., p.13. However, for a law to be preempted by the ADA, it must relate to an airline's

rates, routes, or services, "either by expressly referring to them or by having a significant economic

effect upon them." *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423,

1432 (7th Cir. 1996). Here, it is clear that the law of unconscionability does not explicitly address

LATAM's rates or services.

Consequently, "the only possible basis for preemption is if [the law] has a sufficient—i.e.,

significant—impact on those [rates or] services." *Branche v. AirTran Airways, Inc.*, 342 F.3d 1248,

1255 (11th Cir. 2003). As mentioned above, LATAM does not elucidate how requiring it to honor

13

the tickets it issues would affect, if at all, the rates it charges or the services it provides. In fact, not only would LATAM not lose money if it honored the tickets for which it was already paid, but LATAM actually would save money in fuel costs if a consumer paid but did not fly.

This fact is well known in the aviation industry. For example, in 1987, American Airlines "removed a single olive from each of its in-flight salads," reducing costs by a remarkable $40,000 a year.[4] In 2008, Northwest Airlines saved $500,000 a year "by slicing its limes . . . into 16 slices instead of 10," thereby carrying less citrus. *Id.* When United Airlines started printing its in-flight magazine on lighter paper, cutting 28 grams per copy, it saved $300,000 a year. *Id.* Undoubtedly, not carrying the weight of a human being would result in significant savings and could not possibly adversely affect LATAM's fares.

C.  Plaintiff Has Pleaded Sufficient Facts to Show Unconscionability

Unconscionability is a doctrine that courts use to "prevent the enforcement of contractual provisions that are overreaches by one party to gain an unjust and undeserved advantage." *Basulto v. Hialeah Auto.*, 141 So.3d 1145, 1157 (Fla. 2014). Unconscionability has been said to include "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Id.* While both procedural and substantive unconscionability must be present in order for a court to decline to enforce a contract provision, "they need not be present to the same degree." *FI-Pompano Rehab, LLC v. Irving*, 221 So.3d 781, 784 (Fla. Dist. Ct. App. 2017).

Procedural unconscionability relates to "the manner in which a contract is entered, and courts determine whether it exists based on a totality of the circumstances." *Hobby Lobby Stores, Inc. v. Cole*, 287 So.3d 1272, 1275 (Fla. Dist. Ct. App. 2020). The central question is "whether the

---

[4] Hugh Morris, *Airline Weight Reduction to Save Fuel*, Traveller (Sept. 4, 2018), https://www.traveller.com.au/airline-weight-reduction-to-save-fuel-the-crazy-ways-airlines-save-weight-on-planes-h14vlh.

complaining party lacked a meaningful choice when entering into the contract." *Id.* In answering

this, courts usually consider: "(1) the manner in which the contract was entered into; (2) the relative

bargaining power of the parties and whether the complaining party had a meaningful choice at the

time the contract was entered into; (3) whether the terms were merely presented on a 'take-it-or-

leave-it' basis; and (4) the complaining party's ability and opportunity to understand the disputed

terms of the contract." *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1135 (11th Cir. 2010).

LATAM argues its No-Show Policy was not procedurally unconscionable because it was

allegedly "clearly disclosed in LATAM's Transport Agreement." Mem., p.14. This is contradicted

by LATAM itself. *Id.*, pp.8-9 ("It is clearly disclosed in LATAM's Transport Agreement, which

customers receive notice of <u>upon purchase of the ticket</u>"). LATAM's own admission reveals that

it does not give notice to its customers of the terms of the Transport Agreement, including the No-

Show Policy, until *after* customers have paid for their flights. There is no dispute about the disparity

in bargaining power between LATAM and its customers. There is also no dispute that LATAM's

Transport Agreement is presented on a "take-it-or-leave-it" basis. Because customers are not given

notice of the terms of the Transport Agreement until after they are bound by said terms, customers

are not afforded an opportunity to understand the No-Show Policy before paying for their flights.

All these facts favor a finding that the No-Show Policy is procedurally unconscionable.

Substantive unconscionability, on the other hand, can generally be established by showing

that "the terms of the contract are unreasonable and unfair." *Powertel, Inc. v. Bexley*, 743 So.2d

570, 574 (Fla. Dist. Ct. App. 1999). As mentioned above, LATAM gouges the price for changing

flights in such a way that forces consumers to purchase flights with other airlines when they cannot

make one leg of their roundtrip reservation. Compl., ¶68. When consumers miss one segment of

their roundtrip reservation, LATAM cancels the entire reservation. *Id.*, ¶71. LATAM then resells

15

flights that were already paid for by the class members and that the class members intended to use. *Id.*, ¶69. The only party that benefits from the No-Show Policy is LATAM.

LATAM claims that TM Solutions was not "forced into buying tickets with LATAM." Mem., p.14. However, LATAM puts customers in the unfair position of choosing between paying thousands of dollars to modify their itineraries or else lose the tickets they have already paid for under the No-Show Policy. Compl., ¶¶13, 21. LATAM claims this is not "so outrageously unfair as to shock the judicial conscience." Mem., p.14. At least one judge disagrees. *See Catullo*, 2009 WL 1054150, at *1 ("Their tickets were cancelled not only for the departure to Italy but also for the return flight, the logic of which the court finds to be incomprehensible.").

## V.   Plaintiff's Adversary Proceeding Is Proper

### A.   <u>Plaintiff's Claims Can Be Brought as Adversary Proceeding</u>

The bankruptcy rules classify ten types of disputes as adversary proceedings. *See* Fed. R. Bankr. P. 7001. "Where a dispute fits into one of these ten categories, an adversary proceeding is both the appropriate and preferred manner to proceed." *In re TSC Glob., LLC*, 2013 WL 6502168, at *3 (Bankr. D. Del. June 26, 2013).

LATAM argues that TM Solutions' adversary proceeding must be dismissed because it "simply reasserts the allegations in a prepetition action to assert claims for prepetition damages against LATAM." Mem., p.15. However, TM Solutions' claims for relief are not only for monetary damages, nor are they based solely on LATAM's past conduct.TM Solutions also seeks equitable relief. Such claims are proper under Rule 7001(7), allowing "a proceeding to obtain an injunction or other equitable relief," and Rule 7001(9), which allows "a proceeding to obtain a declaratory judgment." Fed. R. Bankr. P. 7001(7), (9).

LATAM alleges that TM Solutions' claims against it "unquestionably arose prior to the

petition date." Mem., p.15. However, TM Solutions has brought this proceeding as a class action seeking to protect the legal rights not only of customers that have been harmed in the past, but also of those who are being presently harmed and will continue to be harmed by LATAM absent an injunction from the Court. LATAM did not stop enforcing its No-Show Policy when TM Solutions was harmed, nor when TM Solutions first brought these claims in the Southern District of Florida, nor when it filed a proof of claim. Indeed, LATAM's failure to stop harming consumers even after TM Solutions filed a proof of claim demonstrates the inadequacy of the process in this particular case and the necessity to maintain this adversary proceeding.

### B.  Plaintiff's Claims for Equitable Relief Under Rule 7001

Under Rule 7001(7), TM Solutions may maintain "a proceeding to obtain an injunction or other equitable relief." Fed. R. Bankr. P. 7001(7). LATAM contends that TM Solutions "does not have standing to seek injunctive relief" because it is "aware of LATAM's No-Show Policy and can choose whether to purchase LATAM tickets and, if purchased, board its outgoing flights." Mem., p.16. However, as mentioned before, a consumer may miss his outbound flight and have his return flight cancelled, regardless of his "awareness" of the No-Show Policy. LATAM's position would force consumers to choose between never buying tickets with LATAM again or buy them at their own peril. This only reinforces the need for injunctive relief.

Moreover, LATAM's argument is contradicted by the plain language of FDUTPA, which states that "anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part." Fla. Stat. §501.211(1). "Nothing in the statute requires proof that the declaratory or injunctive relief would benefit the consumer filing the suit." *Davis v. Powertel, Inc.*, 776 So.2d 971, 975 (Fla. Dist. Ct. App. 2000). Therefore, "an aggrieved

party may pursue a claim for declaratory or injunctive relief under the Act, even if the effect of those remedies would be limited to the protection of consumers who have not yet been harmed by the unlawful trade practice." *Id.* Adopting LATAM's position "would remove these important consumer protection tools while providing none of the benefits the standing doctrine is meant to protect." *In re Amla Litig.*, 282 F. Supp. 3d 751, 770 (S.D.N.Y. 2017).

Under Rule 7001(9), TM Solutions may also maintain "a proceeding to obtain a declaratory judgment relating to [a proceeding to obtain an injunction or other equitable relief]." Fed. R. Bankr. P. 7001(9). Since TM Solutions has standing to pursue injunctive relief under Rule 7001(7) for the reasons stated above, it can also sustain an adversary proceeding under Rule 7001(9).

LATAM contends that the "proper procedure" for resolving TM Solutions' claims is the proof of claim process, alleging it is a "more effective and efficient means for addressing Plaintiff's claims." Mem., pp.17-18. However, this is contradicted by the fact LATAM continues to enforce its No-Show Policy, even after TM Solutions filed a proof of claim. A declaratory judgment that the No-Show Policy is unenforceable and an injunction stopping LATAM from enforcing the same are the only effective means of preventing LATAM from harming consumers.

C.  Plaintiff's Request for Class Relief

LATAM argues that "[t]he appropriate procedure for Plaintiff to seek class-wide relief remains the proof of claim process." Mem., p.18. LATAM asserts that Rule 9014, which governs contested matters, "authorizes class proofs of claim." *Id.* However, the availability of class relief in contested matters is irrelevant when TM Solutions appropriately brought its claims through an adversary proceeding.[5] *Cf. In re Briggs*, 143 B.R. 438, 462 (Bankr. E.D. Mich. 1992) ("A request

---

[5] Moreover, class relief in contested matters is not automatic but in the court's discretion. While Rule 9014 expressly incorporates many of the individual rules comprising Part VII of the Federal Bankruptcy Rules, it omits Rule 7023, which governs class actions. *See* Fed. R. Bankr. P. 9014(c).

for an injunction must be made in an adversary proceeding. Thus, it was inappropriate for the Debtor to seek that relief in a contested matter such as this.").

LATAM alleges that "the proposed class action would not be certifiable under Bankruptcy Rule 7023 and Federal Rule 23." Mem., p.19. LATAM "has not cited to any authority suggesting the motion to dismiss stage is the proper point for the Court to consider whether a plaintiff class should be certified in an adversary proceeding." *In re Dewey & LeBoeuf LLP*, 487 B.R. 169, 179 (Bankr. S.D.N.Y. 2013). Nonetheless, we will discuss the issues raised by LATAM in this regard.

### 1. *Commonality and Predominance*

To satisfy the commonality requirement, "plaintiffs need to establish that there are common questions of law and fact to the class." *Trautz v. Weisman*, 846 F. Supp. 1160, 1166 (S.D.N.Y. 1994). "A single common question may be sufficient to satisfy the commonality requirement." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 84-85 (S.D.N.Y. 2007). "The critical inquiry is whether the common questions are at the core of the cause of action alleged." *Id.* Predominance will be established if "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 287-88 (S.D.N.Y. 2003).

TM Solutions has identified several questions common to all class members, including: whether LATAM's No-Show Policy unjustly enriches it; whether LATAM breached its contracts with the class members when it did not provide flights for which it had already received payment; whether LATAM's No-Show Policy is unconscionable; whether LATAM should be required to obtain consent before cancelling the class members' already-purchased flights; and whether LATAM's No-Show Policy is unfair and/or deceptive. Compl., ¶33.

19

LATAM raises several hypothetical variants to "destroy commonality and predominance." Mem., p.20. In reality, these so-called factual differences have no bearing on the case. For example, whether putative class members "purchased different kinds of tickets," "from different sellers," "for trips with different numbers of segments" is irrelevant. *Id.* If a customer misses his outbound flight, LATAM will cancel his return flight whether he has a non-refundable economy-class ticket or a refundable first-class ticket; whether he bought the tickets directly from LATAM or through a third party; or whether his trip included two or twenty segments—LATAM will cancel them all.

LATAM's other "variances" also do not destroy commonality and predominance. First, "the reason for the flight cancellation" is always the same, LATAM's No-Show Policy. Whether a customer "bought a replacement flight and how much it cost" and whether he "has received any refund" may be relevant to a determination of individual damages. However, "it is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification." *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010). Finally, "whether the customer has previously had tickets cancelled pursuant to LATAM's No-Show Policy or an equivalent policy of one of several other airlines" is an unnecessary inquiry because all customers are subject to the No-Show Policy, regardless of their awareness of it.

### 2. *Typicality*

LATAM argues that TM Solutions "will be unable to show typicality, in that the class members' claims will not have arisen from the same course of events." Mem., p.21. However, typicality "does not require that the factual background of each named plaintiff's case be identical to that of all class members; rather it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Velez v. Novartis Pharm. Corp.*, 244 F.R.D. 243, 267 (S.D.N.Y. 2007).

Thus, "the typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members." *Bishop v. New York City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (S.D.N.Y. 1992).

LATAM asserts that TM Solutions' claims will not be typical of the class members claims because it "purchased two-segment tickets through a third party, as well as that it informed the airline that it was not planning on taking its outbound flights, and that it purchased replacement flights on another airline." Mem., p.21. As mentioned above, if a customer misses his outbound flight, LATAM will cancel his return flight whether he purchased two-segment or twenty-segment tickets and whether he bought the tickets directly from LATAM or through a third party. Similarly, LATAM will enforce its No-Show Policy whether or not the customer informs LATAM of his inability to board the outbound flight. Whether the customer purchased replacement flights on another airline may be relevant to a determination of damages. However, "a difference in damages arising from a disparity in injuries among the plaintiff class does not preclude typicality." *Lemire v. Wolpoff & Abramson, LLP*, 256 F.R.D. 321, 327 (D. Conn. 2009).

### 3.  *Superiority*

LATAM argues that superiority is not found because "the bankruptcy claims process is available to Plaintiff (including for its purported class claims)." Mem., p.21. However, the ability to file a proof of claim against LATAM does not make that process preferable to an adversary proceeding for resolving the class claims in this case, especially when LATAM will likely object to a class proof of claim. *See In re Taylor Bean & Whitaker Mortg. Corp.*, 2010 WL 4025873, at *3 (Bankr. M.D. Fla. Sept. 27, 2010) ("TBW has expressed opposition to the WARN Act claims and likely will defend against them whether in the claims process or through this adversary

21

proceeding. Given the size of the class involved, the Court finds that resolving the WARN Act claims collectively through a class action adversary proceeding will be more efficient than handling them in a piece-meal fashion through the claims process."). Other factors favoring the resolution of class claims in this case in an adversary proceeding are the "relatively small nature of [the] individual claims" and the fact that the "class members are spread out in several states and would likely suffer geographical hardship if required to defend their claims individually." *Id.* at *4.

LATAM also argues that the Court "may find the superiority requirement not satisfied where there are serious concerns about the manageability of a class action." Mem., p.21. LATAM contends this is the case here "given all the potential intra-class differences." *Id.* However, as discussed above, these "differences" are in reality not relevant to the class certification inquiry. When considering manageability issues, the Court is "not assessing whether this class action will create significant management problems, but instead determining whether it will create relatively more management problems than any of the alternatives." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1358 (11th Cir. 2009). LATAM has not shown—and cannot show—how litigating hundreds, if not thousands, of contested matters in the claims process would be more manageable than litigating a single class action adversary proceeding.

### 4. *TM Solutions' state law claims*

LATAM argues that TM Solutions "fails to sufficiently plead that the standards of the various states' unjust enrichment cause of action are similar enough that multistate class treatment would be appropriate." Mem., p.22. However, TM Solutions does allege that "there are no true conflicts (i.e., case-dispositive differences) among the various states' unjust enrichment laws." Compl., ¶58. Contrary to LATAM's argument, there is no requirement that TM Solutions must include a detailed legal analysis of the differences between the relevant states' unjust enrichment

laws in its Complaint. The cases cited by LATAM all dealt with deficiencies in papers filed in connection to motions for class certification. *See Vulcan Golf, LLC v. Google Inc.*, 254 F.R.D. 521, 532 (N.D. Ill. 2008) (insufficient discussion in reply brief); *Yarger v. ING Bank*, 285 F.R.D. 308, 324 (D. Del. 2012) (no analysis in brief requested by the court).

In this case, "the variations among some States' unjust enrichment laws do not significantly alter the central issue or the manner of proof." *In re Abbott Labs. Norvir Anti-Tr. Litig.*, 2007 WL 1689899, at *9 (N.D. Cal. June 11, 2007). Therefore, the "idiosyncratic differences" between state unjust enrichment laws "are not sufficiently substantive to predominate over the shared claims." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022-23 (9th Cir. 1998).

With regard to TM Solutions' FDUTPA claim, LATAM states that "the claim cannot be brought on behalf of the multistate class and must be restricted to a Florida subclass." Mem., p.22. TM Solution agrees that its FDUTPA claim should be certified on behalf of a Florida subclass.

D.  Plaintiff's Adversary Proceeding Does Not Undermine the Automatic Stay

LATAM argues that allowing TM Solutions' claims to move forward with this adversary proceeding would undermine the automatic stay. LATAM claims "[i]t would be unfair to other claimants to allow Plaintiff's claims to proceed in an adversary proceeding." Mem., p.23. LATAM does not explain how allowing TM Solutions to maintain an adversary proceeding that is proper under the rules (for the reasons set forth above) would prejudice other creditors. LATAM also claims it would "open the floodgates to other potential plaintiffs." However, LATAM has not identified who these hypothetical potential plaintiffs are. Moreover, a decision in this case would not stop other potential plaintiffs from bringing their own adversary proceedings if they are permissible under the rules. LATAM's position that TM Solutions should not be allowed to assert its rights in an adversary proceeding because it would invite other parties harmed by LATAM to

23

do the same is clearly indefensible.

"The automatic stay does not prevent adversary proceedings against the debtor in the bankruptcy court where the debtor's bankruptcy is pending." *In re N. Coast Vill., Ltd.*, 135 B.R. 641, 644 (B.A.P. 9th Cir. 1992). LATAM argues that the adversary proceeding must be dismissed as procedurally improper, as "Plaintiff commenced this adversary proceeding to assert prepetition claims." Mem., p.24. However, as mentioned above, TM Solutions seeks equitable relief and its claims are not based solely on LATAM's past conduct. TM Solutions' claims are thus proper under Rule 7001 and not in violation of the automatic stay.

**VI.   Plaintiff Is Not Bound to Arbitrate Its Claims**

Because the right to compel arbitration is contractual in nature, "[a]n entity that is neither a party to nor agent for nor beneficiary of the contract lacks standing to compel arbitration." *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 744 (9th Cir. 1993). LATAM claims that as a "third-party beneficiary" of BudgetAir's Terms and Conditions, it is entitled to enforce an arbitration provision found therein. However, "[a] putative third party's rights under a contract are predicated upon the contracting parties' intent to benefit him." *Garcia v. Truck Ins. Exch.*, 36 Cal. 3d 426, 436, 682 P.2d 1100, 1104 (1984).

Here, there is no evidence that LATAM was an intended beneficiary of the contract. Indeed, the contract is clear that BudgetAir's liability does not extend to suppliers such as LATAM. *See* Ex. C,[6] p.4 ("Budgetair.com and Budgetair.com's affiliates and partners have no liability and will make no refund in the event of any delay or cancellation of the Travel Product purchased through the Services, and they have no responsibility for any additional expenses incurred by you associated with the delay or cancellation.").

---

[6] Exhibit C to the Declaration of Jessica Roll in support of LATAM's Motion to Dismiss [ECF 9-3].

24

Moreover, "[f]or a nonsignatory to invoke an arbitration provision in an agreement based on a third-party beneficiary theory, the nonsignatory beneficiary first must establish the agreement was applicable to the controversy." *Jones v. Jacobson*, 195 Cal. App. 4th 1, 22, 125 Cal. Rptr. 3d 522, 539-40 (2011). Here, the arbitration clause at issue simply does not apply.

Under BudgetAir's Terms and Conditions, customers agree to arbitrate "any dispute, claim or controversy arising out of or relating to . . . the breach, termination, enforcement, interpretation or validity thereof or the use of the Services." Ex. C, p.7. "Services," for purposed of this contract, does not mean the services provided by suppliers like LATAM, but the "services accessible via [BudgetAir's] Site or [BudgetAir's] call center." *Id.*, p.1. LATAM's cancellation of return flights is simply outside the scope of this agreement. Because LATAM is not an intended beneficiary of the contract, and in any case the contract would not be applicable to this dispute, LATAM cannot compel TM Solutions to arbitrate its claims against LATAM.

## **CONCLUSION**

WHEREFORE, Plaintiff TM Solutions USA LLC respectfully requests this Court to enter an Order denying Defendant LATAM Airlines Group S.A.'s Motion to Dismiss the Class Action Complaint in its entirety.

Dated: October 6, 2020

<div style="margin-left:40%">

Respectfully submitted,

By: */s/ Eduardo A. Maura*
Eduardo A. Maura, Esq.
Luis F. Quesada, Esq.
**Ayala Law, P.A.**
1390 Brickell Ave, Ste 335
Miami, FL 33131
Telephone: (305) 570-2208
Email: eayala@ayalalawpa.com

*Counsel for TM Solutions USA LLC*

</div>