Luke A. Barefoot
Lina Bensman
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel for LATAM Airlines Group S.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| LATAM Airlines Group S.A., *et al.*, | : | Case No. 20-11254 (JLG) |
| Debtors.[1] | : | Jointly Administered |
| TM Solutions USA LLC, | : | |
| Plaintiff, | : | |
| v. | : | Adv. Pro. No. 20-01207 (JLG) |
| LATAM Airlines Group S.A., | : | |
| Defendant. | : | |

# DEFENDANT LATAM AIRLINES GROUP S.A.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE CLASS ACTION COMPLAINT

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's U.S. or local tax identification number (as applicable), are: LATAM Airlines Group S.A. (59-2605885); Lan Cargo S.A. (98-0058786); Transporte Aéreo S.A. (96-9512807); Inversiones Lan S.A. (96-5758100); Technical Training LATAM S.A. (96-847880K); LATAM Travel Chile II S.A. (76-2628945); Lan Pax Group S.A. (96-9696800); Fast Air Almacenes de Carga S.A. (96-6315202); Línea Aérea Carguera de Colombia S.A. (26-4065780); Aerovías de Integración Regional S.A. (98-0640393); LATAM Finance Ltd. (N/A); LATAM Airlines Ecuador S.A. (98-0383677); Professional Airline Cargo Services, LLC (35-2639894); Cargo Handling Airport Services, LLC (30-1133972); Maintenance Service Experts, LLC (30-1130248); Lan Cargo Repair Station LLC (83-0460010); Prime Airport Services Inc. (59-1934486); Professional Airline Maintenance Services LLC (37-1910216); Connecta Corporation (20-5157324); Peuco Finance Ltd. (N/A); Latam Airlines Perú S.A. (52-2195500); Inversiones Aéreas S.A. (N/A); Holdco Colombia II SpA (76-9310053); Holdco Colombia I SpA (76-9336885); Holdco Ecuador S.A. (76-3884082); Lan Cargo Inversiones S.A. (96-9696908); Lan Cargo Overseas Ltd. (85-7752959); Mas Investment Ltd. (85-7753009); Professional Airlines Services Inc. (65-0623014); Piquero Leasing Limited (N/A); TAM S.A. (N/A); TAM Linhas Aéreas S.A. (65-0773334); Aerolinhas Brasileiras S.A. (98-0177579); Prismah Fidelidade Ltda. (N/A); Fidelidade Viagens e Turismo S.A. (27-2563952); TP Franchising Ltda. (N/A); Holdco I S.A. (76-1530348) and Multiplus Corredora de Seguros Ltda. (N/A). For the purpose of these Chapter 11 Cases, the service address for the Debtors is: 6500 NW 22nd Street Miami, FL 33131.

# TABLE OF CONTENTS

                              **Page**

TABLE OF AUTHORITIES ................................................................................................... iii
PRELIMINARY STATEMENT ............................................................................................ 1
ARGUMENT ........................................................................................................................... 2
I.     Plaintiff Fails to State a Claim for Unjust Enrichment ....................................... 2
        A.    Plaintiff's Claim for Unjust Enrichment Fails as a Matter of Law .......... 2
        B.    Plaintiff's Claim for Unjust Enrichment Is Preempted ............................ 3
II.    Plaintiff Fails to State a Claim Under the FDUTPA............................................ 5
        A.    Plaintiff's Claim Under the FDUTPA Is Preempted ................................ 5
        B.    Plaintiff's FDUTPA Claim Fails on the Merits ........................................ 6
III.   Plaintiff Fails to State a Claim for a Declaratory Judgment ................................ 8
        A.    The Facts Alleged Do Not Warrant Issuance of a Declaratory Judgment ............... 8
        B.    Plaintiff Has Failed to Plead Sufficient Facts to Show Unconscionability ............. 9
IV.   Plaintiff's Adversary Proceeding Is Improper and Must Be Dismissed .......................... 10
        A.    Plaintiff's Requests for Declaratory and Injunctive Relief Do Not Make This a Proper Adversary Proceeding .................................................... 10
        B.    Plaintiff's Request for Class Relief Does Not Make This a Proper Adversary Proceeding ............................................................................. 11
        C.    Allowing Plaintiff's Claims to Move Forward in an Adversary Proceeding Would Undermine the Automatic Stay and Circumvent the Claims Process ........ 13
V.    Plaintiff Is Bound to Arbitrate Its Claims ........................................................... 14
CONCLUSION ....................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**                                                                                                                    Page(s)

*Branche v. Airtran Airways, Inc.*,
342 F.3d 1248 (11th Cir. 2003) ..................................................................................... 4

*Brown v. United Air Lines, Inc.*,
656 F. Supp. 2d 244 (D. Mass. 2009) ........................................................................... 4

*Buck v. Am. Airlines, Inc.*,
476 F.3d 29 (1st Cir. 2007) ............................................................................................ 4

*Calzadillas v. Wonderful Co., LLC*,
No. 1:19-cv-00172-DAD-JLT, 2019 WL 5448308 (E.D. Cal. Oct. 24, 2019) ................... 14

*Carriuolo v. Gen. Motors Co.*,
823 F.3d 977 (11th Cir. 2016) ....................................................................................... 8

*Catullo v. Air France*,
No. CV065007671, 2009 WL 1054150 (Conn. Super. Ct. Mar. 19, 2009) ...................... 2

*Chelsea Grand, LLC v. N.Y. Hotel & Motel Trades Council, AFL-CIO*,
729 F. App'x 33 (2d Cir. 2018) ..................................................................................... 8

*Dennis v. Delta Air Lines, Inc.*,
No. 10-CV-973 (DLI) (LB), 2011 WL 4543487 (E.D.N.Y. Sept. 29, 2011) ...................... 6

*Dolan v. JetBlue Airways Corp.*,
385 F. Supp. 3d 1338 (S.D. Fla. 2019) .......................................................................... 3

*Donoff v. Delta Air Lines, Inc.*,
No. 18-81258-CV, 2019 WL 9091763 (S.D. Fla. July 9, 2019) ...................................... 3

*Enomoto v. Space Adventures, Ltd.*,
624 F. Supp. 2d 443 (E.D. Va. 2009) ............................................................................ 2-3

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ...................................................................................................... 9

*Gordon v. United Cont'l Holding, Inc.*,
73 F. Supp. 3d 472 (D.N.J. 2014) .................................................................................. 3

*Harper v. Wausau Ins. Co.*,
56 Cal. App. 4th 1079 (Cal. Ct. App. 1997) ................................................................ 14

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
299 F. Supp. 3d 430 (S.D.N.Y. 2018) .......................................................................... 12

*In re Monat Hair Care Prods. Mktg., Sales Practices & Prods. Liab. Litig.*,
No. 18-MD-02841, 2019 WL 5423457 (S.D. Fla. Oct. 23, 2019) ................................ 10-11

*Martin v. United Airlines, Inc.*,
727 F. App'x 459 (10th Cir. 2018) ............................................................................... 9

*McIntosh v. Royal Caribbean Cruises, Ltd.*,
No. 17-cv-23575, 2018 WL 1732177 (S.D. Fla. Apr. 10, 2018) .................................. 9

*McLaughlin v. Am. Tobacco Co.*,
522 F.3d 215 (2d Cir. 2008), *abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639 (2008) ................................................................................ 12

*McTigue v. Regal Cruises, Inc.*,
No. 97 Civ. 7444(JSM), 1998 WL 191430 (S.D.N.Y. Apr. 22, 1998) .......................... 6

*Miller v. Delta Air Lines, Inc.*
No. 4:11-CV-10099-JLK, 2012 WL 1155138 (S.D. Fla. Apr. 5, 2012) ........................ 5

*O'Shea v. Littleton*,
414 U.S. 488 (1974) ..................................................................................................... 9

*Parziale v. HP, Inc.*,
445 F. Supp. 3d 435 (N.D. Cal. 2020) .......................................................................... 7

*Pumputiena v. Deutsche Lufthansa, AG*,
No. 16 C 4868, 2017 WL 66823 (N.D. Ill. Jan. 6, 2017) ............................................. 12

*Reed v. Delta Airlines, Inc.*,
No. 10 Civ. 1053(JGK), 2011 WL 1085338 (S.D.N.Y. Mar. 23, 2011) ...................... 4

*Solo v. United Parcel Serv. Co.*
819 F.3d 788 (6th Cir. 2016) ........................................................................................ 5

*Sol. Z v. Alma Lasers, Inc.*,
No. 11-cv-21396-CIV, 2013 WL 12246356 (S.D. Fla. Jan. 22, 2013) ......................... 7

*Specht v. Netscape Commc'ns Corp.*
306 F.3d 17 (2d Cir. 2002)................................................................................... 6

*Weiss v. El Al Israel Airlines, Ltd.*,
471 F. Supp. 2d 356 (S.D.N.Y. 2006)................................................................... 4

*Wilensky v. Olympic Airways, S. A.*,
73 F.R.D. 473 (E.D. Pa. 1977)............................................................................. 12

*Zamber v. Am. Airlines, Inc.*,
282 F. Supp. 3d 1289 (S.D. Fla. 2017) ................................................................ 3

**Other Authorities**

Order Granting Mot. to Dismiss First Am. Compl., *Herndon v. PG&E Corp. (In re PG&E Corp.)*, Bankr. Case No. 19-30088, Adv. No. 19-03005 (Bankr. N.D. Cal. July 10, 2019), ECF No. 35 ................................................................................ 12

# PRELIMINARY STATEMENT[2]

The Opposition makes clear that, at bottom, by seeking to void LATAM's No-Show Policy, Plaintiff is asking this Court to rewrite LATAM's Transport Agreement – a contract between the airline and its customers – and to tell LATAM how it should run its business. Plaintiff admits that the source of its outrage is that LATAM "forces" customers to choose between flying LATAM, subject to the No-Show Policy, and not flying LATAM. Its absurd arguments even go so far as to compare the No-Show Policy to racial segregation. Because Plaintiff has no right to fly on LATAM and can instead fly on another airline, its attempt to have the Court force LATAM to run its business in the way Plaintiff would dictate should be rejected. Plaintiff's claims for unjust enrichment and violation of the FDUTPA both fail on the merits and are both preempted under the ADA. Moreover, a declaratory judgment is not an appropriate remedy in this case, and in any event Plaintiff fails to plead that the No-Show Policy is unconscionable.

The Opposition further confirms that an adversary proceeding is not the proper procedure for Plaintiff to bring its claims, and the Complaint should also be dismissed on this basis. Plaintiff concedes that an action for prepetition damages is not a proper adversary proceeding. That Plaintiff cannot pursue declaratory or injunctive relief on behalf of itself or a class thus necessarily means that its claims fall outside the scope of Bankruptcy Rule 7001. Finally, Plaintiff's argument that it is not bound to arbitrate its claims fails.

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in Defendant LATAM Airlines Group S.A.'s Memorandum of Law in Support of Its Motion to Dismiss the Class Action Complaint (ECF No. 8, the "Motion" or "MTD"). "Opposition" or "Opp." refers to Plaintiff's Response to Defendant LATAM Airlines Group S.A.'s Motion to Dismiss the Class Action Complaint (ECF No. 12). "Ex." refers to exhibits to the Declaration of Jessica Roll in Support of Defendant LATAM Airlines Group S.A.'s Motion to Dismiss the Class Action Complaint (ECF No. 9).

# ARGUMENT[3]

## I. Plaintiff Fails to State a Claim for Unjust Enrichment

### A. Plaintiff's Claim for Unjust Enrichment Fails as a Matter of Law

Plaintiff fails to state a claim for unjust enrichment because (i) it is not inequitable for LATAM to retain the bargained-for fare for Plaintiff's flights; and (ii) there is an express contract between LATAM and Plaintiff. *See* MTD at 5-6.

In response to the first argument, Plaintiff relies principally on an inapposite, unreported Connecticut case from more than a decade ago, which has never been cited by another court. In that case, which highlights that the inquiry depends on the "given set of circumstances," the defendant travel agency negligently failed to inform the plaintiffs that they were required to check in two hours before their flight. *See Catullo v. Air France*, No. CV065007671, 2009 WL 1054150, at *1 (Conn. Super. Ct. Mar. 19, 2009). Then, an employee of defendant Air France told the plaintiffs that they could not board because they failed to check in the required two hours before their flight, which was "obviously not [the] rule" because he then sold them tickets for another flight that was leaving within two hours. *Id.* at *2. There is no allegation that LATAM lied to Plaintiff about its policies, or that LATAM does not in fact have a No-Show Policy. Additionally, *Catullo* involved an unjust enrichment claim under Connecticut law, which Plaintiff does not assert applies, and Plaintiff has not shown that Connecticut law on unjust enrichment is the same as that of Florida or any other state. Otherwise, Plaintiff relies on an inapposite out-of-Circuit case, *Enomoto v. Space Adventures, Ltd.*, in which the defendant, which did not itself control spacecraft, sold the plaintiff a spacewalk and lied that required approval had been obtained. 624 F. Supp. 2d 443, 447 (E.D. Va. 2009). When it became impossible to

---

[3] Plaintiff has withdrawn its claim under the Montreal Convention, *see* Opp. at 4, and LATAM therefore does not address the Montreal Convention in this brief.

2

conceal that it could not deliver the promised spacewalk, the defendant then refused to refund the plaintiff.[4] *Id*. Here, LATAM did not make any promises to Plaintiff that it could not keep.[5]

In response to the second argument, Plaintiff agrees that "[u]nder Florida law, an unjust enrichment claim can exist 'only if the subject matter of that claim is not covered by a valid and enforceable contract.'" Opp. at 6 (quoting *In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1337 (S.D. Fla. 2002)). Thus, Plaintiff concedes that if the Transport Agreement is valid and enforceable, the unjust enrichment claim must fail. And as LATAM has demonstrated, Plaintiff has not carried its burden to adequately allege the No-Show Policy is unconscionable or unenforceable. *See* MTD at 13-14; *infra* at 9.

B. Plaintiff's Claim for Unjust Enrichment Is Preempted

As LATAM argued in the Motion, "[i]t is well settled that claims against airlines for unjust enrichment fall within the ADA's preemption clause." *Gordon v. United Cont'l Holding, Inc.*, 73 F. Supp. 3d 472, 480 (D.N.J. 2014); *see* MTD at 7. To avoid this, Plaintiff attempts to recast its unjust enrichment claim as "not about refunds," Opp. at 7, yet argues repeatedly that it is unfair that LATAM can retain the price of its tickets when customers cannot take their inbound flights and that the cost to change a flight on LATAM is too high. *See* Opp. at 2-3, 10, 15-16. The Opposition thus confirms that Plaintiff's lawsuit is about how much money LATAM charges its customers, and how much of their money it retains pursuant to the challenged policy.

---

[4] Additionally, the court allowed the unjust enrichment claim to proceed only in the alternative to the plaintiff's breach of contract claim, because the plaintiff could not recover on the basis of unjust enrichment if there was a contract between the parties. *See Enomoto*, 624 F. Supp. 2d at 459.

[5] Plaintiff's citation to cases where courts have found an unjust enrichment claim pled on the basis of a deceptive practice is irrelevant. The mere inclusion of a FDUTPA claim here is insufficient to plead unjust enrichment on this basis, and the Complaint nowhere describes any alleged deception as the basis for Plaintiff's unjust enrichment claim. *See* Compl. ¶¶ 57-63. Those cases involved claims that it was deceptive or unfair for airlines to retain a percentage of the fee for third-party trip insurance sold through their websites without so disclosing, and thus do not advance Plaintiff's argument. *See Donoff v. Delta Air Lines, Inc.*, No. 18-81258-CV, 2019 WL 9091763, at *9-10 (S.D. Fla. July 9, 2019); *Dolan v. JetBlue Airways Corp.*, 385 F. Supp. 3d 1338, 1351-52 (S.D. Fla. 2019); *Zamber v. Am. Airlines, Inc.*, 282 F. Supp. 3d 1289, 1300-01 (S.D. Fla. 2017). Here, the contract between LATAM and Plaintiff expressly includes the No-Show Policy.

3

Such claims are indisputably preempted. *See* MTD at 7; *Buck v. Am. Airlines, Inc.*, 476 F.3d 29 (1st Cir. 2007) (dismissing as preempted plaintiffs' claims that airline did not provide adequate notice that it would retain fees associated with a nonrefundable ticket when that ticket was not used).[6]

Even if Plaintiff's claims do not relate to "rates" within the meaning of the ADA, they relate to "services" and are still preempted. Services "include items such as ticketing [and] boarding procedures, . . . in addition to the transportation itself." *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1257 (11th Cir. 2003) (quoting *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995)). Plaintiff claims that it wants to "requir[e] LATAM to honor the tickets it issues" (albeit only on terms more favorable to Plaintiff than those actually found in the Transport Agreement). Opp. at 9. Asking the Court to order LATAM to fly customers who miss the first leg of their itinerary clearly implicates a "service" within the meaning of the ADA. Courts have found similar claims related to an airline's refusal to fly customers to be preempted because they relate to ticketing or boarding procedures. *See Reed v. Delta Airlines, Inc.*, No. 10 Civ. 1053(JGK), 2011 WL 1085338, at *4 (S.D.N.Y. Mar. 23, 2011); *Weiss v. El Al Israel Airlines, Ltd.*, 471 F. Supp. 2d 356, 362 (S.D.N.Y. 2006).

In a last ditch effort to salvage its claim, Plaintiff incorrectly argues that its claim fits within the narrow *Wolens* exception to ADA preemption. Although the ADA "does not foreclose suits alleging a breach of the carrier's 'own self-imposed undertakings,'" Opp. at 7 (quoting *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995)), Plaintiff is not alleging that LATAM breached the Transport Agreement. Instead, Plaintiff asks the Court to *prevent LATAM from enforcing* its "self-imposed undertakings," which is the inverse of the *Wolens* exception.

---

[6] Plaintiff appears to misunderstand *Brown v. United Air Lines, Inc.*, in which claims concerning the airline's bag fees related to a "service" and *were* preempted by the ADA. *See* 656 F. Supp. 2d 244, 250-51 (D. Mass. 2009).

4

*See* MTD at 7. In *Miller v. Delta Air Lines, Inc.*, the court disagreed that the plaintiff's claims did not relate to "services" because they arose from the airline's failure to inform customers of their rights to reimbursement for delayed baggage, concluding that "[p]ermitting this claim to move forward . . . would thus impermissibly sanction regulation of the manner in which the airline advertise their reimbursement services and . . . thereby offend[] the stated purpose of the [ADA]." No. 4:11-CV-10099-JLK, 2012 WL 1155138, at *3 (S.D. Fla. Apr. 5, 2012). Moreover, in *Solo v. United Parcel Service Co.*, on which Plaintiff relies, the claim was "based in fraud" and the defendant "allegedly made an explicit representation to customers . . . and then failed to follow through." 819 F.3d 788, 798 (6th Cir. 2016). The court found that "[t]his scenario may resemble that of *Wolens*, where the plaintiff sought the aid of the court to 'hold[ ] parties to their agreements.'" *Id.* (second alteration in original) (citation omitted). Here, there is no similar resemblance to *Wolens*, as Plaintiff is seeking to *void* the agreement that LATAM has indeed upheld.[7]

## II.  **Plaintiff Fails to State a Claim Under the FDUTPA**

### A.  Plaintiff's Claim Under the FDUTPA Is Preempted

Plaintiff repeats its assertion that it "is not challenging LATAM's right to charge any particular rate," Opp. at 8, which is contradicted by Plaintiff's actual arguments and emphasis on the high price LATAM would have charged Plaintiff for replacement flights. For the same reasons described above, Plaintiff's FDUTPA claim relates to rates and is therefore preempted, or is otherwise preempted as relating to services. *See supra* at 3-4. Courts routinely find claims for violation of state consumer protection laws, including the FDUTPA, preempted. *See* MTD at 7-8.

---

[7]  *Solo* also allowed the unjust enrichment claim in the alternative where it was conceivable that the defendant would deny the existence of a contract. 819 F.3d at 797. That is clearly not the case here.

5

B.     Plaintiff's FDUTPA Claim Fails on the Merits

Plaintiff fails to state claim under the FDUTPA because (i) the No-Show Policy is not deceptive; and (ii) Plaintiff has not pled actual damages. Plaintiff ignores that the Transport Agreement is readily available on LATAM's website, *see* MTD at 8-9; Ex. A, and cannot seriously argue that LATAM is trying to hide the No-Show Policy from customers. Otherwise, Plaintiff relies on one non-binding, unreported case from 1998 that describes its own holding as out of step with the majority of courts to have considered the issue. *See McTigue v. Regal Cruises, Inc.*, No. 97 Civ. 7444(JSM), 1998 WL 191430, at * 1 (S.D.N.Y. Apr. 22, 1998).[8] BudgetAir, through which Plaintiff purchased its tickets, explicitly informs customers that Suppliers, such as LATAM, may have "additional terms and conditions" and require passengers to "agree to certain condition of carriage . . . prior to participating in certain Travel Products they offer." Ex. C at 3; *see also Dennis v. Delta Air Lines, Inc.*, No. 10-CV-973 (DLI) (LB), 2011 WL 4543487, at *2 (E.D.N.Y. Sept. 29, 2011) (noting applicability of airline's General Rules Tariff, when plaintiff booked ticket through Orbitz.com and received notice that air transportation was "subject to the individual terms of the transporting air carriers").[9] Given the availability of the Transport Agreement and notice thereof, Plaintiff cannot show that customers are likely to be misled, and therefore fails to plead that the No-Show Policy is deceptive.

Plaintiff argues that even if the No-Show Policy is not deceptive, it is "unfair to

---

[8]     There, the Court ruled that it was unreasonable not to give a cruise ship passenger an opportunity to review limitations related to forum selection before a ticket became final, "while at the same time advising the passenger the monies paid will not be returned under any circumstances." *McTigue*, 1998 WL 191430, at *2.

[9]     Plaintiff attempts to argue that it was not on notice of LATAM's Transport Agreement when it purchased tickets through BudgetAir, *see* Opp. at 9 n.3, relying on a case about internet contract formation from nearly two decades ago. The holding of *Specht v. Netscape Communications Corp.*, relied on the fact that the license terms were contained on a "submerged screen" and therefore the plaintiff did not have notice of the terms when downloading the relevant product. *See* 306 F.3d 17, 32 (2d Cir. 2002). Here, plaintiff has admitted that the BudgetAir terms and conditions reference the existence of "additional terms and conditions" from Suppliers such as LATAM. Plaintiff has not alleged that it did not have notice of the BudgetAir terms and conditions when it purchased its tickets or that these were contained only "within a hyperlink on BudgetAir's website" that Plaintiff would not have seen.

consumers," yet cites no authority demonstrating that it "offends established public policy" or is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Opp. at 10. But "[c]ourts routinely dismiss FDUTPA claims where those claims are directly and fully rebutted by express evidence in a governing written contract." *Sol. Z v. Alma Lasers, Inc.*, No. 11-cv-21396-CIV, 2013 WL 12246356, at *7 (S.D. Fla. Jan. 22, 2013) (citation omitted). Plaintiff's complaint that the policy "forces customers to purchase flights with other airlines," Opp. at 10, merely confirms that there is a free and competitive market in which other airlines may win customers from LATAM when its prices are too high, and the availability of other airline tickets on more favorable terms is not "substantially injurious" to Plaintiff or to any other consumer.[10] While Plaintiff asserts that LATAM's policy "ignores the realities of life," hypothesizing about a customer who might miss his outbound flight after a car accident on the way to the airport, Opp. at 10-11, there are no such allegations in the Complaint. Instead, this further illustrates that Plaintiff is asking the Court to redraft LATAM's Transport Agreement to change the economic terms on which the parties contracted. Unsurprisingly, Plaintiff does not cite a single case in support of its argument that this Court should order LATAM to stop "gouging" potential customers and driving them to other airlines.

Finally, Plaintiff must plead actual damages under the FDUTPA, which "are measured according to 'the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.'" *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 986 (11th Cir. 2016) (quoting *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. Dist. Ct. App.

---

[10] *Cf. Parziale v. HP, Inc.*, 445 F. Supp. 3d 435, 446-47 (N.D. Cal. 2020) (plaintiff alleged that defendant misled purchasers by intentionally omitting that they would not be able to use third-party products in its printers, but plaintiff failed to allege that there were no countervailing benefits to consumers and that consumers could not have avoided the alleged injury, including by purchasing a different printer in the first place).

7

1984)). "[A]ccording to the contract of the parties," LATAM was entitled to cancel Plaintiff's inbound flights pursuant to the No-Show Policy, and thus Plaintiff has not suffered any actual damages as a result of LATAM following the contract.

## III. Plaintiff Fails to State a Claim for a Declaratory Judgment

Plaintiff concedes that the declaratory judgment claim cannot stand on its own. *See* Opp. at 11-12. Therefore, as Plaintiff has withdrawn Count II, if the Court finds that Counts III and IV fail, then Count I must necessarily fail as well. Even if the Court finds that it could issue a declaratory judgment here, it should decline to do so and dismiss the claim. *See* MTD at 12-13.

### A. The Facts Alleged Do Not Warrant Issuance of a Declaratory Judgment

Plaintiff has not shown that "there is a substantial controversy, between [the] parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Chelsea Grand, LLC v. N.Y. Hotel & Motel Trades Council, AFL-CIO*, 729 F. App'x 33, 40 (2d Cir. 2018) (summary order) (alteration in original) (quoting *Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 17 (2d Cir. 1993)). Instead, Plaintiff attempts to distract from the issue by arguing that it could hypothetically be harmed again through no fault of its own. Plaintiff offers no response to the fundamental point that, now being indisputably aware of the No-Show Policy, it need never fly LATAM again. Instead, Plaintiff's true goal in this litigation is laid bare: it wants the Court to force LATAM to change the way it runs its business so that Plaintiff can use LATAM's services at the prices and on the terms that Plaintiff prefers.

Plaintiff's argument that a declaratory judgment is appropriate because this lawsuit is a class action fails. "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). In any event, "a plaintiff must demonstrate standing separately for each form of relief sought."

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).[11]

  B. <u>Plaintiff Has Failed to Plead Sufficient Facts to Show Unconscionability</u>

  Plaintiff has not pled sufficient facts to show that the No-Show Policy is unconscionable. Its argument that the No-Show Policy is procedurally unconscionable because customers receive notice of it "upon purchase of the ticket" fails. Case law in the parallel context of cruise line tickets supports LATAM's position. *See McIntosh v. Royal Caribbean Cruises, Ltd.*, No. 17-cv-23575, 2018 WL 1732177, at *3 (S.D. Fla. Apr. 10, 2018) ("Regarding the procedural unconscionability aspect of ticket contract formation, the Supreme Court has already rejected this argument. . . . Plaintiff's contention that the ticket contract is a 'contract of adhesion' is not enough to find the ticket contract procedurally unconscionable." (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991)); *see also supra* at 6-7.

  Nor has Plaintiff shown that the No-Show Policy is substantively unconscionable. As the Tenth Circuit has stated:

> Every day, thousands of travelers have a choice between purchasing a refundable ticket or a significantly cheaper nonrefundable ticket from a variety of airlines. Few are out of their senses or delusional. Contracts made on competitive markets are seldom unconscionable. . . . Airlines can compete against each other, and an airline could certainly obtain a competitive advantage in obtaining customers by making all tickets fully refundable or, as some do, by reducing the burden of exchanging the ticket, but the cost to an airline of doing so may constrain such an effort.

*Martin v. United Airlines, Inc.*, 727 F. App'x 459, 463 (10th Cir. 2018).

  Finally, for the reasons stated above and in the Motion, Plaintiff's unconscionability argument is preempted. *See supra* at 3-4; MTD at 13.

---

[11]  Plaintiff also fails to respond to the fact that under the BudgetAir terms and conditions, Plaintiff waived its right to serve as a class member in any purported class action. *See* MTD at 25; Ex. C at 8.

**IV.     Plaintiff's Adversary Proceeding Is Improper and Must Be Dismissed**

Plaintiff concedes that an action to recover prepetition damages is not a proper adversary proceeding. *See* Opp. at 16. Therefore, because Plaintiff's claims for declaratory and equitable relief must fail, this adversary proceeding is procedurally improper and must be dismissed.

A.     <u>Plaintiff's Requests for Declaratory and Injunctive Relief Do Not Make This a Proper Adversary Proceeding</u>

As explained in the Motion and above, Plaintiff does not have standing to bring a claim for declaratory or injunctive relief. Plaintiff argues that it can pursue declaratory and injunctive relief regardless because it is doing so on behalf of a class. But simply styling the Complaint as a class action does not bring its claims within Bankruptcy Rule 7001. That Plaintiff lacks standing to bring claims for declaratory and injunctive relief on its own necessarily means that it cannot do so on behalf of a class. *See supra* at 8-9; *see also* MTD at 16-17. In any event, the proposed classes would not be certifiable. *See* MTD at 19-21; *infra* at 11-13. Plaintiff therefore cannot bring class claims for declaratory and injunctive relief, and its claims fall outside the scope of Bankruptcy Rule 7001. To hold otherwise would permit a plaintiff to burden this Court with pursuit of an adversary proceeding for declaratory or injunctive relief that it could not pursue individually, on behalf of a class, and circumvent the proof of claim process. Although Plaintiff argues that the language of the FDUTPA permits Plaintiff to seek an injunction even if such relief would only benefit others in the class, *see* Opp. at 17-18, courts have rejected similar arguments. *See In re Monat Hair Care Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, No. 18-MD-02841, 2019 WL 5423457, at *5 (S.D. Fla. Oct. 23, 2019) ("Although the FDUTPA allows a plaintiff to pursue injunctive relief even where the individual plaintiff will not benefit from an injunction, it cannot supplant Constitutional standing requirements. Article III of the Constitution requires that a plaintiff seeking injunctive relief allege a threat of future harm.")

(quoting *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373 (S.D. Fla. 2015)).

Plaintiff tries to argue around the standing issue by stating that a "consumer may miss his outbound flight and have his return flight cancelled, regardless of his 'awareness' of the No-Show Policy" and so "LATAM's position would force consumers to choose between never buying tickets with LATAM again or buy them at their own peril." Opp. at 17. But nothing in this choice necessitates injunctive relief. Consumers, including Plaintiff, are free never to buy tickets with LATAM and fly any number of other airlines. If they do choose to buy LATAM tickets, they do so understanding the bargained-for exchange and paying a price that incorporates the allocation of risk and other economically significant terms that apply to the ticket.

Finally, Plaintiff makes the absurd argument that the proof of claim process is not the proper procedure for resolving Plaintiff's claim because "LATAM continues to enforce its No-Show Policy, even after TM Solutions filed a proof of claim." Opp. at 18. Plaintiff cites to no authority (nor could it) for its argument that unadjudicated proofs of claim are an inadequate recourse to litigants when their filing does not immediately result in the voluntary restructuring of a defendant's business practices. Indeed, it would be unworkable for the management of this Court's docket if every claimant with a prepetition damages claim could circumvent the proof of claim process by bringing an adversary proceeding for declaratory or injunctive relief.

B. <u>Plaintiff's Request for Class Relief Does Not Make This a Proper Adversary Proceeding</u>

That this lawsuit is brought on behalf of a class also does not make it a proper adversary proceeding because the proposed classes would not be certifiable. Contrary to Plaintiff's assertion that LATAM has not cited to any authority for its arguments that the Court should consider at the motion to dismiss stage whether a class could be certified, other courts have determined in dismissing an adversary proceeding that a class would not be certifiable. *See*

11

Order Granting Mot. to Dismiss First Am. Compl. at 9-11, *Herndon v. PG&E Corp. (In re PG&E Corp.)*, Bankr. Case No. 19-30088, Adv. No. 19-03005 (Bankr. N.D. Cal. July 10, 2019), ECF No. 35; *see also* MTD at 19.[12]

Plaintiff is incorrect that the variances identified by LATAM do not destroy commonality and predominance. Plaintiff argues that the need to ascertain damages on an individual basis is not sufficient to defeat class certification, but omits that this is only one relevant factor. *See McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008), *abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639 (2008) ("[T]he fact that damages may have to be ascertained on an individual basis is . . . a factor that we must consider in deciding whether issues susceptible to generalized proof 'outweigh' individual issues."). In *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, the court declined to find predominance when "each class member 'will need to present evidence that varies from member to member' . . . in order to determine whether it has suffered any damages." 299 F. Supp. 3d 430, 544 (S.D.N.Y. 2018) (citation omitted); *see also Pumputiena v. Deutsche Lufthansa, AG*, No. 16 C 4868, 2017 WL 66823, at *9 (N.D. Ill. Jan. 6, 2017) ("Predominance is not satisfied where liability determinations are individual and fact-intensive."). Courts have found a lack of predominance in similar cases involving airlines. *See, e.g.*, *Wilensky v. Olympic Airways, S. A.*, 73 F.R.D. 473, 477 (E.D. Pa. 1977) (declining to find predominance in action related to "bumping" passengers due to individualized circumstances).[13]

---

[12] In the event that any of Plaintiff's claims survive the motion to dismiss and Plaintiff files a motion for class certification, LATAM reserves its rights to further brief class certification arguments.

[13] Plaintiff also ignores that it defined the proposed class and sub-class to include all customers whose flights were cancelled without their consent, *see* Compl. ¶¶ 29-30, and therefore "the reason for the flight cancellation" is not "always the same." Opp. at 20.

With respect to typicality, Plaintiff has acknowledged throughout its brief that it may not be similarly situated to other class members, for example those whose inbound flights could have been cancelled after missing their outbound flights due to an unfortunate and unpredictable event like a car accident. Plaintiff does not persuasively argue that its claims will be typical of the class. With respect to superiority, Plaintiff entirely ignores that class proofs of claim are available, and does not explain why that is not superior to a class action adversary proceeding. Plaintiff has conceded that the proof of claim it filed against LATAM was in connection with its claims in this lawsuit, and must have anticipated that this would be a class claim given that it is seeking $5 million, far more than its own damages could be worth. *See* Opp. at 17-18.

As to the possibility of certifying a multistate class for an unjust enrichment claim, Plaintiff argues that it need not at this stage "include a detailed legal analysis of the differences between the relevant states' unjust enrichment laws." Opp. at 22-23. But without such detail, Plaintiff cannot show that there are only "idiosyncratic differences" between state unjust enrichment laws, which "are not sufficiently substantive to predominate over the shared claims." Opp. at 23 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022-23 (9th Cir. 1998)).

    C.    <u>Allowing Plaintiff's Claims to Move Forward in an Adversary Proceeding Would Undermine the Automatic Stay and Circumvent the Claims Process</u>

Plaintiff's position that allowing this adversary proceeding to go forward would not undermine the automatic stay is predicated on the argument that the adversary proceeding is proper. As LATAM has demonstrated, it is not. LATAM does not dispute that "a decision in this case would not stop other plaintiffs from bringing their own adversary proceedings *if they are permissible under the rules*." Opp. at 23 (emphasis added). Neither this Plaintiff nor other putative plaintiffs should be able to burden the Court by forcing it to decide Plaintiff's claim ahead of other claimants who have followed the proper procedure in the proof of claim process.

## V. Plaintiff Is Bound to Arbitrate Its Claims

Plaintiff's claims should be dismissed because Plaintiff agreed to arbitrate all disputes and waived its rights to serve as a class member in any purported class action. *See* MTD at 24-25. Plaintiff's quotation of a statement in BudgetAir's terms and conditions that an airline is responsible for liabilities relating to delay or cancellation of "Travel Products" does not mean that LATAM is not an intended third party beneficiary of the contract, and specifically the agreement to arbitrate. "A third party may qualify as a beneficiary under a contract where the contracting parties must have intended to benefit that individual and such intent appears on the terms of the agreement." *Harper v. Wausau Ins. Co.*, 56 Cal. App. 4th 1079, 1087 (Cal. Ct. App. 1997). "It is well established that a nonsignatory beneficiary of an arbitration clause is entitled to require arbitration. . . . If the terms of the contract necessarily require the promisor to confer a benefit on a third person, then the contract, and hence the parties thereto, contemplate a benefit to the third person." *Calzadillas v. Wonderful Co., LLC*, No. 1:19-cv-00172-DAD-JLT, 2019 WL 5448308, at *2-3 (E.D. Cal. Oct. 24, 2019) (citations omitted). BudgetAir's terms and conditions state that the purposes of its services is to "make reservations or enter into other transactions with Suppliers." Ex. C at 1. LATAM is thus an intended beneficiary of the agreement. Additionally, the arbitration agreement requires parties to arbitrate any dispute "arising out of or relating to" the use of the Services. *Id.* at 7. Here, the dispute relates to Plaintiff's use of the services, which includes "entering into . . . transactions with Suppliers." As such, this dispute is one that should be dismissed in favor of arbitration.

## CONCLUSION

For the foregoing reasons, and those contained in the Motion, LATAM respectfully requests that the Court dismiss the Complaint in its entirety.

Dated: October 27, 2020
New York, New York

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: */s/ Luke A. Barefoot*

Luke A. Barefoot
Lina Bensman
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel for LATAM Airlines Group S.A.*