**UNITED STATES BANKRUPTCY COURT**　　　**NOT FOR PUBLICATION**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x

In re:　　　　　　　　　　　　　　　　　:　　Case No. 20-11254 (JLG)

　　　　　　　　　　　　　　　　　　　　:

LATAM Airlines Group S.A., et al.,　　　:　　Chapter 11

　　　　　　　　　　　　　　　　　　　　:

　　　　Debtors.[1]　　　　　　　　　　　:　　(Jointly Administered)

------------------------------------------------------- x

TM Solutions USA LLC,　　　　　　　　:

　　　　　　　　　　　　　　　　　　　　:

　　　　Plaintiff　　　　　　　　　　　　:

　　　　　　　　　　　　　　　　　　　　:

v.　　　　　　　　　　　　　　　　　　　:　　Adv. Pro. No. 20-01207-JLG

　　　　　　　　　　　　　　　　　　　　:

LATAM Airlines Group S.A. Inc.,　　　　:

　　　　　　　　　　　　　　　　　　　　:

　　　　Defendant.　　　　　　　　　　　:

-------------------------------------------------------- x

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE COMPLAINT AND DENYING PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

---

[1]　　The Debtors in these chapter 11 cases, along with each Debtor's tax identification number (as applicable), are: LATAM Airlines Group S.A. (59-2605885); Lan Cargo S.A. (98-0058786); Transporte Aéreo S.A. (96-9512807); Inversiones Lan S.A. (96-5758100); Technical Training LATAM S.A. (96-847880K); LATAM Travel Chile II S.A. (76-2628945); Lan Pax Group S.A. (96-9696800); Fast Air Almacenes de Carga S.A. (96-6315202); Línea Aérea Carguera de Colombia S.A. (26-4065780); Aerovías de Integración Regional S.A. (98-0640393); LATAM Finance Ltd. (N/A); LATAM Airlines Ecuador S.A. (98-0383677); Professional Airline Cargo Services, LLC (35-2639894); Cargo Handling Airport Services, LLC (30-1133972); Maintenance Service Experts, LLC (30-1130248); Lan Cargo Repair Station LLC (83-0460010); Prime Airport Services Inc. (59-1934486); Professional Airline Maintenance Services LLC (37-1910216); Connecta Corporation (20-5157324); Peuco Finance Ltd. (N/A); Latam Airlines Perú S.A. (52-2195500); Inversiones Aéreas S.A. (N/A); Holdco Colombia II SpA (76-9310053); Holdco Colombia I SpA (76-9336885); Holdco Ecuador S.A. (76-3884082); Lan Cargo Inversiones S.A. (96-9696908); Lan Cargo Overseas Ltd. (85-7752959); Mas Investment Ltd. (85-7753009); Professional Airlines Services Inc. (65-0623014); Piquero Leasing Limited (N/A); TAM S.A. (N/A); TAM Linhas Aéreas S.A. (65-0773334); Aerolinhas Brasileiras S.A. (98-0177579); Prismah Fidelidade Ltda. (N/A); Fidelidade Viagens e Turismo S.A. (27-2563952); TP Franchising Ltda. (N/A); Holdco I S.A. (76-1530348) and Multiplus Corredora de Seguros Ltda. (N/A). For the purpose of these chapter 11 cases, the service address for the Debtors is: 6500 NW 22nd Street Miami, FL 33131.

**A P P E A R A N C E S :**

AYALA LAW, P.A.
*Counsel for Plaintiff TM Solutions USA LLC*
2490 Coral Way, Suite 401
Miami, Florida 33145
By:    Eduardo A. Maura, Esq.
       Luis F. Quesada, Esq.

CLEARY GOTTLIEB STEEN &
HAMILTON LLP
*Counsel for the Debtors and Debtors
in Possession*
One Liberty Plaza
New York, New York 10006
By:    Luke A. Barefoot, Esq.
       Lina Bensman, Esq.
       Jessica M. Roll, Esq.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION

LATAM Airlines Group S.A. ("**LATAM**" or "**Defendant**") is a chapter 11 debtor herein

and the defendant in this adversary proceeding.[2] Before the Court are two motions filed in this

adversary proceeding. In the first motion (the "**Motion**" or the "**Motion to Dismiss**"),[3] LATAM

seeks dismissal of the complaint (the "**Complaint**"),[4] and each of the claims therein asserted by

plaintiff TM Solutions USA LLC (the "**Plaintiff**" or "**TM Solutions**") for failure to state a claim

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("**Rule 12(b)(6)**")

---

[2]    LATAM and its debtor and non-debtor affiliates are collectively referred to herein as "LATAM" and the
debtors as the "Debtors."

[3]    *Defendant LATAM Airlines Group S.A.'s Motion to Dismiss the Class Action Complaint* [ECF No. 7] and
*Defendant LATAM Airlines Group S.A.'s Memorandum of Law in Support of Its Motion to Dismiss the Class Action
Complaint* [ECF No. 8]. Citations to "ECF No. ___" refer to documents filed on the Court's electronic docket of
this Adversary Proceeding.  References to documents filed in the Debtors' main Chapter 11 Cases will be designated
with the applicable "Case No. ___" preceding the "ECF No. ___."

[4]    *Class Action Complaint* [ECF No. 1].

2

(the "**Federal Rules**"), made applicable to this proceeding by Rule 7012 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**").[5]   The Plaintiff opposes the Motion (the

"**Opposition**"),[6] and LATAM has filed a reply to the Opposition (the "**Reply**").[7] The Court

heard oral argument on the Motion.[8]

The second motion is TM Solutions' motion to amend and supplement the Complaint

(the "**Motion to Amend**"),[9] which seeks leave to amend TM Solutions' allegations and

supplement the Complaint (the "**Proposed AC**") with allegations from an additional putative

class representative, Jazmin Torres ("**Torres**"). LATAM opposes the Motion to Amend ("**Opp.**

**Am.**" or "**Opposition to Amendment**"),[10] and the Plaintiff has filed a reply to the Opposition to

Amendment ("**Rep. Am.**" or "**Reply to Amendment**").[11] The Court did not hear argument on

the Motion to Amend.

In support of the Motion to Dismiss, LATAM contends there are multiple grounds under

which the Court should dismiss each count of the Complaint. As discussed below, in granting the

---

[5]    In support of the Motion, the Defendant filed the *Declaration of Jessica Roll in Support of Defendant LATAM Airlines Group S.A.'s Motion to Dismiss the Class Action Complaint* [ECF No. 9] (the "**Roll Decl**." or "**Roll Declaration**").

[6]    *Plaintiff's Response to Defendant LATAM Airlines Group S.A.'s Motion to Dismiss the Class Action Complaint* [ECF No. 12].

[7]    *Defendant LATAM Airlines Group S.A.'s Reply Memorandum of Law in Further Support of its Motion to Dismiss the Class Action Complaint* [ECF No. 14].

[8]    Transcript of November 18, 2020 Oral Argument [ECF No. 16].

[9]    *Plaintiff's Motion for Leave to File First Amended and Supplemental Class Action Complaint* [ECF No. 17]. As discussed below, the Motion to Amend seeks both to amend the Complaint concerning TM Solutions' allegations, as well as to supplement the Complaint with allegations from a new putative class representative, Jazmin Torres. Unless otherwise specified, this opinion refers to both sets of new allegations collectively as the "Motion to Amend."

[10]    *Defendant LATAM Airlines Group S.A.'s Opposition to Plaintiff's Motion for Leave to File First Amended and Supplemental Class Action Complaint* [ECF No. 20].

[11]    *Plaintiffs' Reply in Support of Motion for Leave to File First Amended and Supplemental Class Action Complaint* [ECF No. 22].

Motion, the Court focuses primarily on LATAM's arguments that: (a) the Complaint is not properly brought as an adversary proceeding under Bankruptcy Rule 7001, *see* Motion at 14-24; and (b) the claims in the Complaint are preempted by the Airline Deregulation Act, 49 U.S.C. § 41713 (the "**ADA**"), *see* Motion at 6-8, 13. Accordingly, the Court need not (and does not) address LATAM's arguments that, *inter alia*: (a) Plaintiff is bound to arbitrate its claims, *id*. at 24-25; (b) the putative class action fails to satisfy Bankruptcy Rule 7023, *see id*. at 19-22; and (c) the adversary proceeding undermines the automatic stay under section 362 of the Bankruptcy Code, *see id*. at 23-24.

LATAM contends that the Court should deny the Motion to Amend because, as amended, the Proposed AC fails to state claims for relief against it. As discussed below, in denying the Motion to Amend, with prejudice, the Court finds that it would be futile to authorize the Plaintiff to file the Proposed AC because it fails to state claims for relief against LATAM.

## JURISDICTION

The Court has jurisdiction over these matters pursuant to 28 U.S.C §§ 1334(a) and 157(a) and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O).

## FACTS[12]

---

[12]   As explained below, the purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the complaint. Accordingly, the facts recited herein are those alleged in the Complaint, which the Court presumes to be true in resolving this Motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("In any event, a ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact."). The same holds true for the facts alleged in support of the Proposed AC. As discussed below, a motion to amend may be denied if the proposed amendment would be futile. *Asset Value Fund Ltd. P'ship v. The Care Grp., Inc*., 179 F.R.D. 117, 118 (S.D.N.Y. 1998). It is settled that an amendment to a complaint is futile if, as amended, the complaint will not withstand a Rule 12(b)(6) motion to dismiss. *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (citing *Ricciuti v. N.Y.C. Transit Auth*., 941 F.2d 119, 123 (2d Cir. 1991)) ("An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."); *Martin v. Dickson*, 100 F. App'x 14, 16 (2d Cir. 2004) (summary order) ("A proposed amendment to a pleading would be futile if it could not withstand a motion to

Background

On May 26, 2020 (the "**Initial Petition Date**"), LATAM and certain of its affiliated debtors (together the "**Initial Debtors**") commenced voluntary petitions under chapter 11 of the Bankruptcy Code (the "**Initial Chapter 11 Cases**") before this Court.  On July 7, 2020 and July 9, 2020 (together with the Initial Petition Date, as applicable to each Debtor, the "**Petition Date**"), nine additional LATAM affiliates (together with the Initial Debtors, the "**Debtors**") also filed voluntary petitions under chapter 11 of the Bankruptcy Code (together with the Initial Chapter 11 Cases, the "**Chapter 11 Cases**").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).[13]

On June 18, 2022, the Court confirmed the Debtors' Plan[14] over the objections of various creditors.[15] Under the Plan, the Debtors maintain the right to make and file objections to claims, including the claim asserted by TM Solutions (*see infra*) up to sixty days after the effective date of the Plan. Plan § 9.1. The Debtors anticipate the Plan Effective Date will occur in late 2022.

The Adversary Proceeding

---

dismiss pursuant to Rule 12(b)(6).") (citation omitted). Thus, the Court applies Rule 12(b)(6) standards in reviewing the Proposed AC.

[13]   Case No. 20-11254, ECF Nos. 34, 511.

[14]   *Notice of Filing of Seventh Revised Joint Plan of Reorganization of LATAM Airlines Group S.A. Et al. under Chapter 11 of the Bankruptcy Code*, Case No. 20-11254 [ECF No. 5330] (the "**Plan**").

[15]   *Memorandum Decision signed on 6/18/2022 on Confirmation of the Joint Plan of Reorganization of LATAM Airlines Group, S.A. et al. under Chapter 11 of the Bankruptcy Code*, Case No. 20-11254 [ECF No. 5752]; *Order signed on 6/18/2022 Confirming Chapter 11 Plan*, Case No. 20-11254 [ECF No. 5754]; *see also Errata Order Signed on 7/7//2022 Re: Order Signed on 6/18/2022 Confirming Chapter 11 Plan, Ex. A (Corrected Memorandum Decision on Confirmation of the Joint Plan of Reorganization of LATAM Airlines Group, S.A. et al. Under Chapter 11 of the Bankruptcy Code)*, Case No. 20-11254 [ECF No. 5900].

On August 18, 2020, the Plaintiff commenced this adversary proceeding. Plaintiff is a limited liability company formed under the laws of Florida and does business in Miami, Florida. Complaint ¶ 1. In February 2020, Pedro Egusquiza ("**Egusquiza**"), as the owner and managing member of Plaintiff, had to travel from Lima, Peru to Miami, Florida for business meetings. *Id.* ¶ 9. Andres Guerrero ("**Guerrero**"), a food industry professional working for an affiliate of the Plaintiff in Lima, was to accompany Egusquiza on this trip. *Id.* ¶ 10. On February 14, 2020, Egusquiza's assistant (the "**Assistant**") purchased round-trip passenger air tickets through BudgetAir.com ("**BudgetAir**"), an online retailer LATAM uses to sell flights, for Egusquiza and Guerrero on this route—*i.e.*, round trip from Lima to Miami ("**LIM-MIA-LIM**"). *Id.* ¶¶ 10-11. The Assistant was supposed to purchase flights departing from Lima in the early hours of February 19, 2020 and returning from Miami in the early hours of February 21, 2020. However, after Plaintiff paid $2,280 for Egusquiza's and Guerrero's roundtrip tickets, the Assistant realized that she inadvertently and mistakenly purchased the Miami-bound flights for February 18, 2020 at 12:15 a.m. *Id.* ¶¶ 11-12.

Thereafter, in an effort to correct the mistake, the Assistant contacted the customer service center of BudgetAir. *Id.* ¶ 13. Plaintiff says that BudgetAir advised the Assistant that replacement tickets for the incorrect Lima to Miami flight cost approximately $1,800, and that she should contact LATAM directly to solve the problem. *Id.* However, when the Assistant contacted LATAM, it advised her to resolve the issue through BudgetAir. *Id.* ¶ 14. The Assistant found substitute Lima to Miami flights for Egusquiza and Guerrero on American Airlines for $420 each on the correct travel date—February 19, 2020—and purchased those tickets. *Id.* ¶ 16.

Plaintiff contends that the Assistant advised both BudgetAir's and LATAM's customer service agents that she had located replacement tickets in the open market for Egusquiza's and Guerrero's flights at a lower price for the Lima to Miami leg of their trip, and that Egusquiza and Guerrero would not board the purchased LATAM Lima to Miami flight.  The Assistant maintains that neither LATAM nor BudgetAir told her that such arrangement would have an impact on the existing LATAM reservation (*i.e.*, Equsquiza's and Guerrero's return flights).  *See id*. ¶¶ 17-19.

On February 20, 2020, upon trying to check-in for their return flight from Miami, Egusquiza and Guerrero were unable to locate their LATAM reservation. *Id*. ¶ 20. When the Assistant contacted BudgetAir and LATAM, they told her that pursuant to LATAM's so-called "No-Show" policy (defined below), once a passenger fails to board the first leg of a trip, the entire reservation (*i.e.*, all flights under the reservation) is cancelled. *Id.* ¶ 21.

On February 21, 2020, Egusquiza and Guerrero procured replacement Miami to Lima flights through Avianca Airlines at a total cost of $1,526.  *See id.* ¶¶ 22-23.  According to the Plaintiff, LATAM did not seek or obtain consent from Plaintiff or any of its agents (*i.e.*, the Assistant, Egusquiza, or Guerrero), to cancel the purchased Miami to Lima flights, or advise Plaintiff or any of its agents that it could resell those tickets.  *Id.* ¶¶ 24-25.

LATAM's policy is to cancel a passenger's entire itinerary if he or she fails to fly any segment in the itinerary (the "**No-Show Policy**"). Complaint ¶ 21. The LATAM Airlines Transport Agreement (the "**Transport Agreement**") sets forth the airline's obligations to its customers.[16] The No-Show Policy is set forth in section 2.9 of the agreement. It states:

> The passenger must fly the flights or segments that make up the itinerary in consecutive order. Based on the terms and conditions

---

[16]   A copy of the Transport Agreement is attached as Exhibit A to the Roll Declaration.

> established in the applicable legislation, the Carrier may deny
> boarding to a passenger who does not follow the order of the
> previously mentioned itinerary or if the passenger has not flown any
> of the segments indicated in the itinerary. ***The passenger
> understands that by not flying any segments indicated in the
> itinerary, the entire Ticket will be canceled without any warning***
> and the passenger will not have any right whatsoever to a refund
> unless the fare conditions of the Ticket allow it. As an example, and
> without this condition being limited to this specific case, ***if the
> passenger does not fly on the first segment that is specified in the
> itinerary (understood as the outbound flight), this passenger may
> not travel on any other segment*** (understood as the stopover flight
> or the inbound flight).

Transport Agreement § 2.9 (emphasis added). The Transport Agreement is available on

LATAM's website, and LATAM provides notice of it upon purchase of a ticket. Motion at 1.

BudgetAir notifies customers through the BudgetAir Terms and Conditions as follows:

> When you reserve or purchase Travel Products via our Services,
> additional terms and conditions from the Suppliers ('Supplier
> Terms') may apply. Please read those Supplier Terms carefully as
> they govern your use of the Travel Products that you purchase and
> you agree to abide by Supplier Terms, including all cancellation
> rules, imposed by any Supplier with whom you elect to deal.

BudgetAir Terms and Conditions at 3.[17] Accordingly, this provision informs its customers that

their bookings with LATAM are governed by LATAM's Transport Agreement, including the

No-Show Policy.  *See id*.

On April 13, 2020, the Plaintiff sued LATAM in the U.S. District Court for the Southern

District of Florida.  *See TM Sols. USA LLC v. LATAM Airlines Grp. S.A.*, No. 1:20-cv-21552

(S.D. Fla. Apr. 13, 2020) (the "**Florida Action**"). *See* Roll Decl. ¶ 3. The claims asserted in the

complaint underlying that action are substantially identical to the claims at issue herein.[18]  Upon

---

[17]   A copy of the BudgetAir Terms and Conditions is attached as Exhibit C to the Roll Declaration.

[18]   A copy of a redline comparison of the complaint in the Florida Action and the Complaint in this adversary
proceeding is attached as Exhibit B to the Roll Declaration.

the commencement of the Chapter 11 Cases, the Florida Action was automatically stayed pursuant to section 362(a) of the Bankruptcy Code.

On August 4, 2020, the Plaintiff filed a proof of claim in these cases for approximately $5 million.  *See* Proof of Claim No. 589.[19]

In this adversary proceeding, the Plaintiff seeks to certify the action as a class action pursuant to Federal Rule 23[20] in the following putative classes:

> (i)  All residents of the States of California, Florida, Massachusetts, New York, and the District of Columbia who purchased a roundtrip ticket with LATAM whose flights were cancelled by LATAM without their consent within the applicable limitations period (the "Multistate Class").
>
> (ii) All residents of the State of Florida who purchased a roundtrip ticket with LATAM whose flights were cancelled by LATAM without their consent within the applicable limitations period (the "Florida Subclass").

Complaint ¶¶ 29-30.[21]  In support of class certification, the Plaintiff contends that each of the required elements under Federal Rule 23—numerosity, commonality, typicality, adequacy, predominance, and superiority—is met.  *See id.* ¶¶ 32-40.

As the putative class representative, the Plaintiff asserts four claims for relief against LATAM, seeking: (1) declaratory judgment ("**Count One**");[22] (2) damage claims alleged under (a) the Montreal Convention for Unification of Certain Rules of International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106, 2242 U.N.T.S. 309 (the "**Montreal Convention**")

---

[19]    This proof of claim is available on the Debtors' claims register, maintained by the Debtors' claims agent at: https://cases.primeclerk.com/LATAM/Home-ClaimInfo.

[20]    Federal Rule 23 is made applicable herein by Bankruptcy Rule 7023.

[21]    Excluded from these classes are LATAM, its affiliates, subsidiaries, agents, board members, directors, officers, employees, and/or their family members. Complaint ¶ 31.

[22]    *Id.* ¶¶ 41-47.

("**Count Two**"),[23] and (b) principles of unjust enrichment ("**Count Three**");[24] and (3) injunctive

relief and monetary damages under the Florida Deceptive and Unfair Trade Practices Act

(the "**FDUTPA**") ("**Count Four**").[25]

The Proposed Amended Complaint

On September 7, 2021, TM Solutions filed the Motion to Amend.  In broad strokes, the

Motion to Amend seeks to: (i) add Torres as a putative class representative, (ii) amend the

Multistate Class definition; (iii) add a Pennsylvania Subclass (defined in the Proposed AC), (iv)

remove the cause of action brought under the Montreal Convention; and (v) add a cause of action

for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (the

"UTPCPL"). *See* Proposed AC ¶¶ 25-42, 44-45, 92-108. TM Solutions' factual allegations,

including the impact of LATAM's No-Show Policy on Egusquiza's and Guerrero's flights (as

well as how LATAM communicated the policy to TM Solutions) are materially unchanged in the

Proposed AC. *Compare* Complaint ¶¶ 8-26, *with* Proposed AC ¶¶ 8-24.

The Proposed AC states that Torres, the proposed new putative class representative, is an

individual residing in Pennsylvania. Proposed AC ¶ 2. It alleges that Torres booked tickets for

herself and her family on LATAM's website for a family vacation in the Galapagos Islands,

Ecuador, with stops in Miami, Bogota, and Guayaquil. *Id*. ¶ 27. She intended to depart from New

York's John F. Kennedy Airport ("**JFK**") on June 30, 2021 and to return to the U.S. on July 28,

2021. *Id*. On May 31, 2021, LATAM informed Torres she would need to rebook her flights

because LATAM cancelled her flight between Bogota and Guayaquil. *Id*. ¶ 28. Torres rebooked

---

[23]   *Id.* ¶¶ 48-56.

[24]   *Id.* ¶¶ 57-63.

[25]   *Id.* ¶¶ 64-76.

her flights and paid $3,388.72 for her tickets. *Id*. ¶ 29. Her and her family's new departure flight, from New York to Guayaquil, was operated by JetBlue Airways ("**JetBlue**"), even though she booked the flights through LATAM. *Id*.

On June 30, 2021, Torres and her family travelled to JFK for their departure flight in a vehicle she rented for approximately $200. *Id*. ¶ 30. When they arrived, a JetBlue employee told Torres that her party was too late to check in for their flights because she needed to arrive six to eight hours before her departure time to ensure sufficient time to process her through security due to the COVID-19 pandemic. *Id*. ¶ 32. A JetBlue representative told Torres they could not help her because she booked her tickets through LATAM, not JetBlue. *Id*. ¶ 33.

Between 2:00 p.m. and 9:30 p.m., Torres repeatedly called LATAM and spoke to different LATAM representatives who told her different things. *Id*. ¶ 34. Some told her that she could rebook her departure; others said she could do so only if she paid a small fee. *Id*. On each call, Torres was placed on hold before the call ultimately was dropped. *Id*. The flight from New York to Guayaquil departed without Torres and her family. At approximately 9:30 p.m., Torres spoke to a LATAM representative without the call disconnecting; the representative told her that the remaining legs of her flight were "void" because she and her family missed their departure flight. *Id*. ¶ 35.

Torres proposed to the LATAM agent that she could purchase alternative LATAM departure flights to the Galapagos scheduled the following day that she found on Expedia, but the agent told her LATAM could not reroute her because she missed her original departure flights and the whole trip was now "worthless." *Id*. ¶ 36. Torres alternatively proposed to book departure flights on another airline and keep her return tickets, but the agent told her that was not possible because the entire trip was "void." *Id*. ¶ 37. The agent told Torres that she would need

to pay between $1,200 and $1,500 in fees per person to reissue the tickets. *Id*. Torres alleges that

she and her family were then "stranded" in New York and paid $200 for a last-minute hotel

room. *Id*. ¶ 38. She paid $3,418.05 to cancel her condo reservation in the Galapagos Islands. *Id*. ¶

39.

## DISCUSSION

### The Motion to Dismiss

Rule 12(b)(6) Pleading Standards

> Rule 12(b)(6) states that:
>
> (b) Every defense to a claim for relief in any pleading must be asserted in the
> responsive pleading if one is required. But a party may assert the following
> defense[] by motion . . . (6) failure to state a claim upon which relief can be
> granted[.]

Fed. R. Civ. P. 12(b)(6).  In evaluating a Rule 12(b)(6) motion to dismiss, the Court is not to

assay the weight of the evidence, but to assess the sufficiency of the plaintiff's statement of a

claim for relief.  *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011); *Cortec Indus., Inc. v. Sum

Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("[A] Rule 12(b)(6) motion challenges the facts

alleged on the face of the complaint . . . or, more accurately, the sufficiency of the statements in

the complaint . . . ." (citations omitted)), *cert. denied*, 503 U.S. 960 (1992); *see also Swierkiewicz

v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (noting that "[t]he issue [under Rule 12(b)(6)] is not

whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

support the claims").

In assessing the merits of a motion to dismiss under Rule 12(b)(6), courts adopt a

two-prong approach. *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d

705, 717 (2d Cir. 2013) (noting that *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), "creates a 'two-

pronged approach' . . . based on '[t]wo working principles.'" (quoting *Iqbal*, 556 U.S. at 678-

79)).  First, although the allegations must be taken as true, the complaint must contain more than

just a formulaic recitation of the elements of a cause of action, and the court should "identify[]

allegations that, because they are mere conclusions, are not entitled to the assumption of truth."

*Iqbal*, 556 U.S. at 664; *see also Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183

(2d Cir. 2008) (stating that "bald assertions and conclusions of law will not suffice") (citation

omitted).  Second, the court must determine whether the well-pleaded factual allegations,

assuming their truth, "plausibly" give rise to an entitlement to relief.  *McCarthy v. Dun &*

*Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) ("In reviewing a motion to dismiss under

Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, we accept as

true all factual statements alleged in the complaint and draw all reasonable inferences in favor of

the non-moving party.").  The Court evaluates each cause of action in the Complaint under

Federal Rule of Civil Procedure 8(a) ("**Rule 8**"), made applicable to this proceeding by

Bankruptcy Rule 7008.[26]

     "The plausibility standard is not akin to a 'probability requirement,' but it [requires the

plaintiff to plead] more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*,

556 U.S. at 678 (citation omitted); *see also Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d

162, 189–90 (2d Cir. 2012) (explaining that "the plausibility standard is lower than a probability

standard, and there may therefore be more than one plausible interpretation of a defendant's

words, gestures, or conduct").  Determining plausibility is a "context-specific task that requires

the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at

---

[26]    While Florida district courts disagree whether Rule 8 or Rule 9(b) of the Federal Rules, the latter of which
applies to pleading fraud or mistake, governs FDUTPA claims, the Court need not address this discrepancy here.
*See*, *e.g.*, *Meyer v. Colavita USA Inc.*, No. 10-61781, 2011 WL 13216980, at *4 (S.D. Fla. Sept. 13, 2011) ("Courts
are divided as to whether a plaintiff alleging a FDUTPA violation sounding in fraud must meet the pleading
requirements of Rule 9(b).").

679. A claim is plausible where the factual allegations contained in the complaint are sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 663. In so doing, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citation omitted); *see also Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) (summary order) (noting that in "deciding whether to dismiss a complaint under Rule 12(b)(6), '[a court] is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference.'" (quoting *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002))).

Where an adversary complaint fails to have a proper basis to proceed as an adversary proceeding under Bankruptcy Rule 7001, dismissal is properly raised under Rule 12(b)(6).  *See, e.g.*, *Evergreen Solar, Inc. v. Barclays PLC (In re Lehman Bros. Holdings, Inc.)*, No. 08-13555, 2011 WL 722582, at *7-8 (Bankr. S.D.N.Y. Feb. 22, 2011) (dismissing breach of contract claim for failure to state a claim under Rule 12(b)(6), where the Court found the claim improper to proceed as an adversary proceeding); *Mondragon v. Circuit City Stores, Inc. (In re Circuit City Stores, Inc.)*, No. 08- 3563, 2010 WL 120014, at *4-5 (Bankr. E.D. Va. Jan. 7, 2010) (dismissing adversary proceeding pursuant to Rule 12(b)(6) in favor of claims process).

<u>Grounds for Dismissing the Complaint</u>

In the Motion, the Defendant contends that the Court must dismiss the Complaint in its entirety because (i) Counts Two, Three and Four of the Complaint fail to state claims upon

which relief can be granted and, as such, the Court must dismiss Count One, as it seeks a

procedural remedy only and requires an independent cause of action to be maintained; (ii) the

facts alleged do not warrant issuance of a declaratory judgment and, alternatively, the Court

should exercise its discretion to dismiss Count One; (iii) the Plaintiff's claims are prepetition

claims that are not within the scope of Bankruptcy Rule 7001 and, as such, cannot be brought as

an adversary proceeding; and (iv) the Plaintiff is bound to arbitrate its claims. LATAM's

contention that each cause of action in the Complaint fails to state a claim rests, in part, on

section 2.9 of the Transport Agreement, which discusses the No-Show Policy.

The Plaintiff has since voluntarily withdrawn its claim for violation of the Montreal

Convention (Count Two).  The Court considers the parties' arguments with respect to the

remaining claims (Counts One, Three, and Four) below.

Whether the Claims Can be Brought Through an Adversary Proceeding

The Defendant contends that the Court should dismiss the Complaint in its entirety in

favor of the claims resolution process in the Chapter 11 Cases. Opposition at 23-24. It asserts

that (i) the Plaintiff's claims are prepetition claims for money damages that cannot be brought

through an adversary proceeding; (ii) the requests for declaratory and injunctive relief do not

bring the claims in the Complaint within the ambit of Bankruptcy Rule 7001; (iii) the Plaintiff's

request for class certification does not make the adjudication of its claim in an adversary

proceeding appropriate; and (iv) allowing the adversary proceeding to move forward would

undermine the automatic stay and circumvent the claims process.  *See* Motion at 14-24.

Bankruptcy Rule 7001 sets forth a list of ten types of disputes and matters that must be

resolved through an adversary proceeding in a bankruptcy case. Fed. R. Bankr. P. 7001; *see also*

*Dade Cty. Sch. Dist. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 53 B.R. 346, 352

(Bankr. S.D.N.Y. 1985) ("Bankruptcy Rule 7001 . . . contains the exclusive list of matters which are classified as adversary proceedings."); *Scott v. Aegis Mortg. Corp.* (*In re Aegis Mortg. Corp.*), No. 07-11119, 2008 WL 2150120, at *6 (Bankr. D. Del. May 22, 2008) (same); *In re Lehman Bros. Holdings, Inc.*), 2011 WL 722582, at *7–8 (dismissing adversary proceeding seeking damages for prepetition breach of contract for failure to state a claim because the claim should have been asserted through the claims allowance process).

The list does not include proceedings to recover prepetition damages from the debtor. *See DBL Liquidating Trust v. P.T. Tirtamas Majutama (In re Drexel Burnham Lambert Grp., Inc.*), 148 B.R. 993, 998 (S.D.N.Y. 1992) ("A claim for damages arising from prepetition conduct is not one of [the] categories [enumerated in Rule 7001].").  The Debtor maintains that the allegations in the Complaint assert claims for prepetition damages because the transaction and flights at issue "unquestionably arose prior to the petition date," and as such, "are not within the scope of Bankruptcy Rule 7001, are improper in an adversary proceeding, and must be dismissed."  Motion 15.  Moreover, it notes that the Plaintiff has asserted the same claims for prepetition damages in the Florida Action (and action since stayed under Section 362 of the Bankruptcy Code), and has filed a proof of claim in these Chapter 11 Cases against the LATAM estate. *Id.*; *see also* Claim No. 589.

The Defendant is correct that courts in this and other districts have held that prepetition claims for monetary damages must be addressed through a debtor's claims adjudication process rather than through an adversary proceeding.  *See, e.g.*, *In re Aegis Mortg. Corp.*, 2008 WL 2150120, at *6 (stating that "[a] claim for damages arising from pre-petition conduct does not fall within one of the[] ten categories [of Bankruptcy Rule 7001]" and dismissing plaintiff's claims for monetary damages for violations of the Truth in Lending Act, Real Estate Settlement

16

Procedures Act, and Virginia State law in favor of addressing plaintiff's filed proofs of claim).
However, as the Plaintiff correctly counters, and the Defendant concedes, this proceeding is
being brought as a class action that seeks injunctive and declaratory relief to address not only
past harms, but also rights of other putative class members who allegedly are presently being
harmed and will continue to be harmed by LATAM, since LATAM continues to enforce its No-
Show Policy. *See* Opposition at 17. Because the Plaintiff's claims include declaratory relief
(Count One), injunctive relief (Count Four) and other equitable relief (Count Three), which are
among the matters that may be properly brought as an adversary proceeding under Bankruptcy
Rule 7001, the Court begins with an analysis of those claims.

### *Whether the Plaintiff has Article III Standing to Seek Injunctive Relief in Count Four of the Complaint*

Bankruptcy Rule 7001(9) identifies as an adversary proceeding, a proceeding "to obtain a
declaratory judgment relating to any of the foregoing[.]" In turn, "any of the foregoing" listed
proceedings includes "a proceeding to obtain an injunction or other equitable relief" under Rule
7001(7). Bankruptcy Rules 7001(7), 7001(9). The Defendant contends that the Plaintiff has no
standing to seek injunctive relief, and thus, the Plaintiff in turn cannot invoke Bankruptcy Rule
7001(9) to seek declaratory relief relating to the foregoing injunctive relief under Bankruptcy
Rule 7001(7). *See* Motion at 17. It maintains that the claim for injunctive relief must fail
because the Plaintiff cannot show a likelihood that it will suffer actual and imminent future harm.
*Id.* at 16. It further says that as to any future trips, because the Plaintiff is now aware of the No-
Show Policy, any potential injury is within the Plaintiff's control and ability to avoid, such as by
choosing to purchase flights on other airlines, or by simply boarding the outgoing flights. *Id.* at
16-17. As support, the Debtors cite to *Berni v. Barilla S.p.A.*, 964 F.3d 141 (2d Cir. 2020),
*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016), and *In re Johnson & Johnson Talcum*

*Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278 (3d Cir. 2018) ("***Johnson***
***& Johnson***").

The Plaintiff argues that a consumer may miss an outbound flight and have the return
flight cancelled, regardless of the consumer's "awareness" of the No-Show Policy. Opposition at
17.  It thus maintains that there is a need for injunctive relief because LATAM's position would
force consumers to choose between never buying LATAM's plane tickets or buying them at their
own peril.  *Id.* at 17-18. Moreover, the Plaintiff says that pursuant to the FDUTPA, "anyone
aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an
act or practice violates this part and to enjoin a person who has violated, is violating, or is
otherwise likely to violate this part" (Fla. Stat. § 501.211(1)), and "'[n]othing in the statute
requires proof that the declaratory or injunctive relief would benefit the consumer filing the
suit.'" Opposition at 17 (quoting *Davis v. Powertel, Inc.*, 776 So.2d 971, 975 (Fla. Dist. Ct. App.
2000)).  Thus, the Plaintiff asserts that "'an aggrieved party may pursue a claim for declaratory
or injunctive relief under the Act, even if the effect of those remedies would be limited to the
protection of consumers who have not yet been harmed by the unlawful trade practice.'"  *Id.* at
17-18 (quoting *Davis*, 776 So. 2d at 975).  The Plaintiff also contends that since it has standing
to seek injunctive relief, it can maintain this adversary proceeding to seek a declaratory judgment
relating to such injunctive or equitable relief under Bankruptcy Rule 7001(9).  *Id.* at 18.

The Court agrees with the Debtors that, as a general matter, past purchase or use of an
allegedly unfair or deceptive product or service cannot give rise to injunctive relief because
future harm is unlikely, and that the cases cited by the Debtors support this view.[27]  However,

---

[27]   In *Berni*, consumer plaintiffs commenced a putative class action against defendant Barilla, a pasta
manufacturer, seeking injunctive relief concerning allegedly deceptive packaging.  964 F.3d at 143.  The issue
before the Second Circuit was: "can a group of past purchasers of a product maintain a class action for injunctive
relief?" *Id.* The Second Circuit answered in the negative, concluding that the District Court could not certify the past

those cases address deceptive or fraudulent trade practices or products, whereas here, the

Plaintiff essentially contends that the No-Show Policy is void and unenforceable because it is

unfair and unconscionable.  The Court credits the Plaintiff's contention that, unlike the plaintiffs

in those cases whose knowledge prevented them from being deceived in the future, a passenger's

awareness of LATAM's No-Show Policy does not necessarily mean that there is no possibility of

future economic loss.  That is because it is still possible in a future LATAM transaction that a

passenger will miss one leg of its flight and have the entire reservation cancelled by LATAM

without recompense, even with knowledge of the No-Show Policy.

Additionally, none of the cases cited by the Debtors address claims for injunctive relief

under the FDUTPA. The FDUTPA expressly states:

---

purchasers of Barilla pasta as a Rule 23(b)(2) class because "not all class members [stood] to benefit from injunctive relief, the kind of relief the proposed settlement primarily provides."  *Id.*  The Court began its analysis by considering whether "each of the pasta purchasers [were] likely to be harmed by Barilla in the imminent future absent injunctive relief?"  *Id.* at 147. The Court held that such future harm was "not likely" and, as such, the "injunctive relief sought would not provide a remedy for all members of the class," because as a general matter, "past purchasers of a consumer product who claim to be deceived" are not likely to purchase the same product again.  *See id.*

In *Johnson & Johnson*, the plaintiff sued the defendant Johnson & Johnson for money damages, restitution and injunctive relief in connection with her purchase and use of Johnson & Johnson's baby powder. 903 F.3d at 282. Her complaint was dismissed by the district court, based on a lack of Article III standing because the Court concluded that she suffered no injury.  *Id.*  On appeal, the Second Circuit analyzed whether the plaintiff established standing for each of the alleged claims for relief, including, as relevant here, her claims for injunctive relief.  *Id.* at 292.  Specifically, her injunctive relief sought corrective advertising and "enjoining Defendants from continuing the unlawful practices of selling Baby Powder without properly warning consumers of the alleged health risks."  *Id.* The Second Circuit began by explaining that to have standing, the plaintiff must establish that she is "likely to suffer future injury from the defendant's conduct."  *Id.* (citations omitted).  The Court then concluded that because she had already used the baby powder she acquired, and was aware of the baby powder's risks, she was "not likely to suffer future economic injury."  *Id.*

Lastly, in *Nicosia*, the plaintiff filed a putative class action under the Consumer Product Safety Act (the "CPSA") after purchasing a weight loss product called "1 Day Diet" that contained a controlled substance, sibutramine, that had been removed from the market, seeking, among other things, an injunction requiring that: (1) remedial notices be sent to past purchasers of products containing sibutramine; and (2) measures be put in place to prevent Amazon from unwittingly selling other products containing sibutramine.  *Nicosia*, 834 F.3d at 226, 238. The Second Circuit found that the plaintiff lacked standing to assert a claim for injunctive relief because he did not establish a likelihood of future or continuing harm from Amazon's sale of certain products containing sibutramine. *Id.* at 329.  That is so because (i) Amazon ceased selling 1 Day Diet on its website, and (ii) the plaintiff failed to allege that he intends to use Amazon in the future to buy any products, let alone food or drug products generally or weight loss products in particular.  *See id.*

> Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.

Fla. Stat. § 501.211(1). There is no dispute that the Complaint alleges that the Plaintiff was aggrieved by LATAM's No-Show Policy, in that: (a) LATAM cancelled Egusquiza's and Guerrero's flights without their consent; (b) they were left stranded in Miami without return flights; (c) the Assistant had to procure replacement flights at significantly higher costs; and (d) the Plaintiff received no financial recompense from LATAM. The FDUTPA provides the statutory standing for Plaintiff to seek a declaratory judgment that the No-Show Policy violates the FDUTPA and an injunction against enforcement of the No-Show Policy. The language of the statute indicates that a party may seek injunctive and declaratory relief under FDUTPA without establishing that such relief "would benefit the consumer filing the suit." *Davis*, 776 So. 2d at 975. Thus, the Plaintiff maintains that it need not prove that an injunction against enforcement of the No-Show Policy would benefit it in the future. *See* Opposition at 18.

The Court finds no merit to that assertion. As the Debtor correctly counters, under established caselaw, statutory standing granted under the FDUTPA cannot supplant the requirement that the Plaintiff demonstrates that it has constitutional standing to seek the injunctive and/or declaratory relief under the statute. *See Snyder v. Green Roads of Fla. LLC*, 430 F. Supp. 3d 1297, 1304 (S.D. Fla. 2020) (concluding that plaintiffs seeking injunctive relief under FDUTPA failed to allege a likelihood of a future injury sufficient for Article III standing); *In re Monat Hair Care Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 18-MD-02841, 2019 WL 5423457, at *5 (S.D. Fla. Oct. 23, 2019) ("Although the FDUTPA allows a plaintiff to pursue injunctive relief even where the individual plaintiff will not benefit from an injunction . . . it cannot supplant constitutional requirements. Article III of the Constitution requires that a

plaintiff seeking injunctive relief allege a threat of future harm." (quoting *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373 (S.D. Fla. 2015))); *In re Brinker Data Incident Litig.*, No. 18-CV-686-J-32, 2020 WL 4287270, at \*4 (M.D. Fla. July 27, 2020) (same); *see also In re Brown*, No. 18-10617, 2018 WL 4637465, at \*3 (Bankr. S.D.N.Y. Sept. 25, 2018) ("It is settled that [t]he limits Article III imposes on federal jurisdiction apply equally to bankruptcy courts.") (citations omitted).

To establish constitutional standing under Article III for injunctive relief, a plaintiff must allege facts demonstrating "a substantial likelihood that he will suffer injury in the future." *Wusiya v. City of Miami Beach*, No. 12-24233-CIV, 2013 WL 11322661, at \*4 (S.D. Fla. Dec. 20, 2013), *report and recommendation adopted*, No. 12-24233-CIV, 2014 WL 11395056 (S.D. Fla. Aug. 29, 2014), *aff'd*, 614 F. App'x 389 (11th Cir. 2015) (per curiam). Here, the Plaintiff has not alleged that it would suffer any future harm, imminent or otherwise. Although the Complaint loosely alleges that putative *class members* "will continue to purchase" LATAM's flights, there are no allegations whatsoever as to what future transactions or existing (but unfulfilled) flights with LATAM that Plaintiff itself anticipates boarding. *See* Complaint ¶ 47. Nor has Plaintiff even vaguely alleged that it intends to book travel with LATAM in the future. Indeed, even in the Opposition, the Plaintiff nowhere contends that it risks suffering future loss, only that a hypothetical consumer may be forced to miss a flight based on circumstances beyond his or her control and risk losing the entire flight reservation. *See* Opposition at 10-11. As such, Plaintiff has not established that it has Article III standing to pursue the injunction it seeks under the FDUTPA in Count Four. Therefore, the Court dismisses Plaintiff's claim for injunctive relief in Count Four.

### *Whether the Plaintiff's Unjust Enrichment Claim In Count Three Is Preempted By the ADA*

In Count Three of the Complaint, on behalf of the Multistate Class, the Plaintiff seeks an order declaring that LATAM was unjustly enriched, and for monetary damages, prejudgment interest, attorney's fees and costs, and any other relief that the Court deems just and equitable. *See* Complaint ¶¶ 57-63.  As support for that claim, the Plaintiff asserts that:

> TM Solutions conferred a benefit on LATAM in the form of payments for two roundtrip tickets for the route LIM-MIA-LIM.
>
> LATAM knowingly and voluntarily accepted this benefit by collecting payment from TM Solutions as well as every time a class member purchases a roundtrip ticket.
>
> LATAM did not provide the class members all or part of the service they paid for, while retaining the class members' payments.

*Id.* ¶¶ 59-61.  It also contends that "LATAM resold the class members' flights in the open market" and, in doing so, "profited twofold or more on seats that belonged to the class members, who were left stranded at airports having to scramble for last-minute expensive flights to obtain what LATAM took from them."  *Id.* ¶ 62.[28]  The Plaintiff maintains that because of those actions, LATAM was "unjustly enriched from the payments they received from thousands of consumers, while not providing these consumers with at least one leg of their flights, and instead reselling the seats."  *Id.* ¶ 63.

Under Florida law,[29] the elements of unjust enrichment are: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that

---

[28]   It also asserts that LATAM does not lose any money by flying with the putative class members' seats empty pursuant to the No-Show Policy because LATAM would spend less fuel since it would be carrying less weight, yet would still retain the revenue from the tickets sold.  *Id.* ¶ 62 n.6.

[29]   The only named plaintiff in this putative class action is a Florida company, and thus LATAM contends that Florida law should apply for purposes of the Motion to Dismiss as to the Unjust Enrichment claim.  *See* Complaint ¶ 1.  The Plaintiff does not disagree and takes the position that "there are no true conflicts . . . among the various states' unjust enrichment laws."  Opposition at 4 n.2 (citing Complaint ¶ 58); *see also* Complaint at Appendix A.

benefit; and (3) the circumstances are such that it would be inequitable for the defendants to

retain it without paying the value thereof." *Omnipol, a.S. v. Worrell*, 421 F. Supp. 3d 1321, 1347

(M.D. Fla. 2019) (citing *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012));

*Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla., N.A.*, 667 So. 2d 876, 879

(Fla. Dist. Ct. App. 1996) (same).  Unjust enrichment is an equitable claim, based on a legal

fiction created by courts to imply a contract between the parties.  *See Tooltrend, Inc. v. CMT*

*Utensili, SRL*, 198 F.3d 802, 805 (11th Cir. 1999); *see also Koch Foods of Alabama, LLC v. Gen.*

*Elec. Capital Corp.*, 303 F. App'x 841, 846 (11th Cir. 2008) (per curiam) ("Unjust enrichment is

'an old equitable remedy permitting the court in equity and good conscience to disallow one to

be unjustly enriched at the expense of another.'" (citing *Avis Rent A Car Sys., Inc. v. Heilman*,

876 So. 2d 1111, 1123 (Ala. 2003))).

As an equitable claim, a claim for unjust enrichment may properly be brought as an

adversary proceeding.  *See* Bankruptcy Rule 7001(7) ("a proceeding to obtain an injunction or

other equitable relief").  However, the Defendant argues that the Plaintiff cannot state a claim for

unjust enrichment as a matter of law because: (1) it is not inequitable for LATAM to retain the

fare paid for the Plaintiff's flights; and (2) there was a contract between the Plaintiff and

Defendant setting forth the No-Show Policy (*i.e.*, the Transport Agreement).  *See* Motion at 5-6.

Alternatively, the Debtors assert that the claim for unjust enrichment is preempted by the ADA.

*Id.* at 6-7.

The Court agrees with the Defendant that the Unjust Enrichment claim is preempted by

the ADA.  The ADA was enacted by Congress in 1978, premised on the determination that

"maximum reliance on competitive market forces would further efficiency, innovation, and low

prices as well as "variety [and] quality . . . of air transportation services[.]" *Morales v. Trans*

*World Airlines, Inc.*, 504 U.S. 374, 378 (1992) (citations omitted).  The ADA contains an express

preemption clause that bars States from enacting or enforcing "a law, regulation, or other

provision having the force and effect of law related to a price, route, or service of an air carrier."

49 U.S.C. § 41713(b)(1).  "The term 'related to' has a broad scope and an expansive sweep.

Thus, a claim relates to rates, routes, or services, within the meaning of the ADA, if the claim

has a connection with, or reference to, the rates, routes, or services of an air carrier."  *Roman v.*

*Spirit Airlines, Inc.*, No. 19-CIV-61461, 2020 WL 255202, at *3 (S.D. Fla. Jan. 14, 2020),

*reconsideration denied*, No. 19-CIV-61461, 2020 WL 3303084 (S.D. Fla. Apr. 14, 2020)

(citations omitted).  The term "services" as used in the ADA is likewise interpreted broadly.

*Ulysse v. AAR Aircraft Component Servs.*, 841 F. Supp. 2d 659, 672 (E.D.N.Y. 2012) (noting

that "a broad interpretation of the term 'services' [under the ADA] is appropriate for several

reasons").  However, the scope of the ADA's preemptive reach is not without limits.  *Id.* at 673.

Rather, "the ADA's preemption prescription bars state-imposed regulation of air carriers, but

allows room for court enforcement of contract terms set by the parties themselves."

*Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 222 (1995).

The Defendant contends that the Plaintiff's unjust enrichment claim in Count Three is

preempted because it seeks a refund of airfares under a state-law claim. Motion at 7. The

Plaintiff disagrees.  First, it maintains that under *Wolens*, the Supreme Court "determined that the

ADA's preemption provision does not foreclose suits alleging a breach of the carrier's 'own self-

imposed undertakings' as these do not constitute a 'violation of state-imposed obligation.'"

Opposition at 7 (quoting *Wolens*, 513 U.S. at 228).  It argues that the state-imposed obligations

or common law must apply to every contract, and that the doctrine of unjust enrichment does not

apply to every contract, but rather serves to "effectuate the intentions of parties or to protect their

reasonable expectations." *See id.* at 8 (quoting *Nw., Inc. v. Ginsberg*, 572 U.S. 273, 285 (2014)).

In effect, the Plaintiff argues that its claim for unjust enrichment stems from the parties' own

self-imposed undertakings, rather than from a state-based obligation.  In reply, the Defendant

says that the Plaintiff misinterprets *Wolens* and is actually seeking the "inverse" of the relief that

*Wolens* has carved out as the exception to ADA preemption.  It maintains that the Plaintiff is

asking the Court to "*prevent LATAM from enforcing* its 'self-imposed undertakings.'"  Reply at 4

(emphasis in original).

    The Plaintiff's argument is unpersuasive.  While the Plaintiff correctly recounts the

holding in *Wolens*, it misapplies the holding of that case here.  In *Wolens*, the Supreme Court left

the door open for parties to assert claims based upon their "own self-imposed undertakings"

rather than state-imposed obligations because "[a] remedy confined to a contract's terms simply

holds parties to their agreements . . . ."  513 U.S. at 229.  Thus, plaintiffs remain free to assert

claims against airlines that they breached a voluntarily undertaken contractual obligation, and

these claims are not preempted by the ADA.

    The Plaintiff's unjust enrichment claim is not based upon a breach of contract.  The

Plaintiff is not seeking to enforce LATAM's self-imposed contractual obligations. Rather, it

seeks a determination that the No-Show Policy in the Transport Agreement is unenforceable.

Further, the unjust enrichment claim is a creature of Florida state common law.  Therefore, such

claim is within the scope of the ADA's preemption provision.  *See Gordon v. United Cont'l

Holding, Inc.*, 73 F. Supp. 3d 472, 480 (D.N.J. 2014) ("It is well settled that claims against

airlines for unjust enrichment fall within the ADA's preemption clause.").

    The Plaintiff's reliance on *Ginsberg* and *Solo* does not compel a different conclusion.  In

*Ginsberg*, the plaintiff sued Northwest Airlines for breach of contract and breach of the duty of

good faith and fair dealing for terminating his membership in the airline's frequent flyer program, purportedly based on a provision in the frequent flyer agreement to do so if, in its sole discretion, Northwest determined that a participant had abused the program. *Ginsberg*, 572 U.S. at 276. The trial court dismissed, finding that the ADA preempted the breach of duty claim, but the Ninth Circuit reversed, finding that claim was "too tenuously connected to airline regulation to trigger preemption under the ADA." *Id.* at 279 (citation and quotation omitted). On further appeal, the Supreme Court held that the ADA preempted the plaintiff's claim for the breach of the covenant of good faith and fair dealing. *Id.* at 289. In doing so, the Court explained that under Minnesota law, the implied covenant must be regarded as a state-imposed obligation as the parties could not contract around such covenant. *See id.* at 286–87. The Supreme Court also found that that there was an "an additional, independent basis for [its] conclusion" that under Minnesota law, except for employment contracts, the implied covenant applies to "every contract[.]" *Id.* at 287. Thus, the covenant is based upon a state policy, rather than the parties' implicit understanding of the contract. *Id.*

In *Solo*, the plaintiffs commenced a putative class action against UPS, for breach of contract, declaratory relief, violation of 49 U.S.C. § 13708(b) (regulating billing and collection practices for motor carriers), and alternatively, unjust enrichment, alleging that it overcharges customers for liability coverage against loss or damage for packages with a declared value of $300 or more. *Solo*, 819 F.3d at 791. Among the issues on appeal to the Sixth Circuit was whether the unjust enrichment claim was preempted by the Federal Aviation Administration Authorization Act ("FAAAA"). In addressing this, the Sixth Circuit began by noting that the district court did not reach this issue because it already determined that the parties were subject to an express contract, and thus, it was "not inclined to decide this matter before it has been fully

briefed by both parties and considered by the district court in the first instance." *Id.* at 797.

However, the Sixth Circuit went on to say that "several Supreme Court cases and the similarly

worded [ADA] provide guidance on the scope of the preemption provisions in the FAAAA[,]"

and that "[w]e review them here as instructive for the issue on remand." *Id.* (footnote omitted).

In doing so, the Sixth Circuit explained that the facts and issues before it were distinguishable

from the analysis and conclusion reached in *Ginsberg* in that a claim for unjust enrichment did

not necessarily "apply to all contracts as a matter of state policy[,]" but serves to effectuate the

parties' intentions and reasonable expectations. *Id.* at 798.  The Sixth Circuit also explained

Solo's claim was for fraud—that UPS had failed to follow through on an explicit representation

to customers that it would offer the first $100 of liability coverage for free—and thus, resembled

the claim asserted in *Wolens*, which was to "hold[ ] parties to their agreements." *Id.* at 797

(alteration in original).  The Sixth Circuit ultimately concluded that "[o]n remand, both parties

will have the opportunity to fully form their arguments on the preemption issue, to be considered

by the district court as the case progresses." *Id.* at 798.

　　For multiple reasons, *Solo* does not support Plaintiff's argument that its unjust

enrichment claim is not preempted by the ADA.  First, the Sixth Circuit focused exclusively on

*Ginsberg*'s analysis that the covenant of good faith and fair dealing applied to all contracts in

distinguishing it from a claim of unjust enrichment. *Id*.  The Supreme Court's primary rationale

in *Ginsberg* for why it was a state policy preempted under the ADA was that such a covenant

was not something the parties could contract around.  That it applied to all contracts other than

employment contracts was an additional ground for its conclusion.  Second, even under the "all

contracts" explanation—*i.e.*, that the doctrine of unjust enrichment does not apply to all contracts

as a matter of state policy, but rather serves to effectuate the parties' intentions and reasonable

expectations—Plaintiff's claims are not based on effectuating the parties' intentions.  As

discussed herein, the parties' expectations (or, at least what Plaintiff should have reasonably

been aware of under the Transport Agreement) under LATAM's No-Show Policy were that

LATAM had the unilateral right to cancel all legs of a reservation, without warning, in the event

that any customer cannot make any flight of that reservation.  Plaintiff's claims seek the opposite

of effectuating the parties' intentions; it maintains that it would be unjust enrichment to allow the

No-Show Policy to be effectuated as written and communicated.  Third, the question in *Solo* was

whether the unjust enrichment claim against UPS was preempted by the FAAAA, not the ADA,

and in any event, the Sixth Circuit was clear that it was not reaching any conclusions as to

whether there was any preemption, only that its analysis was *dicta* for remand purposes, and all

parties reserved all rights to argue the preemption issue before the district court. *See id.*

The Plaintiff also contends that its claim is "not about refunds, nor is [Plaintiff]

challenging LATAM's right to charge a particular fare for a particular route." *See* Opposition

at 7.  Rather, it asserts that the unjust enrichment claim is "about [LATAM's] deceptive and

unconscionable No-Show Policy[, which is] not preempted by the ADA." *Id.*  In support of its

contention, the Plaintiff relies on *Brown v. United Air Lines, Inc.*, 656 F. Supp. 2d 244, 249

(D. Mass. 2009).

Such reliance is overstated.  In *Brown*, United Airline's "skycaps"—airline employees

staffed with assisting passengers with baggage—commenced a putative class action asserting

various state law claims including, unjust enrichment, and violation of Massachusetts Tips Law,

for the airlines' imposition of a $2.00 per bag fee for curbside check-ins. *Id.* at 247.  The

plaintiffs' theory of liability was that: (1) such fee constituted "tips" that belonged to the

employees; and (2) the policy interfered with the skycaps' wages and deprived them of tips

because passengers were unlikely to tip if they were already charged a fee for the skycaps'
services. *Id.* The defendant moved to dismiss, arguing, among other things, that the plaintiffs'
unjust enrichment claims were preempted by the ADA. *Id.* The Court declined to apply the
ADA to preempt the unjust enrichment claim based on such claim having an impact on United's
prices, reasoning that the plaintiffs did not challenge the "airline's right to charge a fee for
curbside baggage services in the first place, nor do they challenge the amount of the fee," but
took issue with the "*deceptive manner* in which the fee [was] charged." *Id.* at 249 (emphasis in
original). The plaintiffs wanted the airline to charge the fee at a different time in the check-in
process so as not to confuse customers into thinking the fee was a de facto tip for the skycaps. *Id*.
at 249-50.

Here, unlike in *Brown*, the Plaintiff is challenging, in large part, LATAM's right to
cancel an entire reservation under the No-Show Policy without refunding the price of the
cancelled airfares or providing replacement flights at the same prices as the cancelled flights. In
other words, Plaintiff seeks to void the No-Show Policy—*i.e.*, prevent LATAM from retaining
the price it paid for air tickets—not simply change the way it is implemented. Indeed, the
allegations in the Complaint demonstrate that, notwithstanding the Plaintiff's assertions to the
contrary, the unjust enrichment claim is largely a challenge to LATAM's refusal to refund prices
paid for flights cancelled pursuant to the No-Show Policy and the purported inequity of LATAM
retaining the airfare prices and reselling the same seats for additional profit for itself. For
example:

> TM Solutions conferred a benefit on LATAM in the form of payments for two
> roundtrip tickets for the route LIM-MIA-LIM;
>
> LATAM knowingly and voluntarily accepted this benefit by collecting payment
> from TM Solutions as well as every time a class member purchases a roundtrip
> ticket;

LATAM did not provide the class members all or part of the service they paid for, while retaining the class members' payments;

LATAM resold the class members' flights in the open market and profited twofold or more on seats that belonged to the class members, who were left stranded at airports having to scramble for last-minute expensive flights to obtain what LATAM took from them;

LATAM benefited by being unjustly enriched from the payments they received from thousands of consumers, while not providing these consumers with at least one leg of their flights, and instead reselling the seats.

Complaint ¶¶ 59-63.

The crux of these allegations speaks to the improper retention by LATAM of the ticket fares (instead of refunding those fares to the passengers), rather than to the deceptive nature of the No-Show Policy. Stated another way, the Plaintiff's claim for unjust enrichment could not be maintained if LATAM had simply refunded the Plaintiff's airfares upon cancellation of the reservation, or provided replacement flights at the same, or lesser fare price. It is simply not credible to say that the unjust enrichment claim does not relate to how LATAM prices its airfares. Moreover, as noted above, the ADA's preemptive scope should be interpreted broadly and is applicable even if the impact on an airline's prices is not direct. *See Brown*, 656 F. Supp. 2d at 249 (noting that "the Supreme Court has repeatedly stressed the 'broad pre-emptive purpose' of the ADA." (citation omitted)).

As noted above, courts have held that claims related to airline refunds are preempted under the ADA. *See, e.g.*, *See Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 34-35 (1st Cir. 2007) (holding that plaintiffs' state law claims against airline for retaining fees and taxes on an unused non-refundable ticket were preempted by the ADA). In short, the Plaintiff's claim for unjust enrichment in Count Three of the Complaint is a claim that relates to LATAM's pricing policy

on its airfares and is based upon Florida state law.  Therefore, the Court dismisses Count Three

as preempted under the ADA.

### *Whether Plaintiff Can Independently Maintain the Declaratory Judgment Sought in Count One or Claim for Money Damages in Count Four*

For the foregoing reasons, the Court dismisses the Plaintiff's equitable claims in

Count Three for failure to state a claim, and it also dismisses Plaintiff's injunctive relief claims

in Count Four for lack of standing. The remaining claims in the Complaint for the Court to

consider are Plaintiff's request for money damages under the FDUTPA (Count Four) and request

for a declaratory judgment that the No-Show Policy is unconscionable (Count One). Bankruptcy

Rule 7001 precludes the Plaintiff from bringing either claim in this adversary proceeding without

Count Three or Count Four and as such, the Court dismisses both counts.

The Plaintiff cannot maintain an action for money damages under Count Four because

prepetition claims for money damages must be addressed through the Debtor's claims

adjudication process rather than an adversary proceeding. *See In re Aegis Mortg. Corp.*, 2008

WL 2150120, at *7 (dismissing claim for money damages because it "does not fall within one

[of] the ten categories constituting adversary proceedings listed in Rule 7001"). The Plaintiff did

so by filing a proof of claim for approximately $5 million and, as such, there is no basis to bring

Count Four as an adversary proceeding. As such, the Court finds that Plaintiff's claim for money

damages under the FDUTPA fails to state a claim and is dismissed.[30] Plaintiff's prepetition

---

[30]    Even assuming *arguendo* a prepetition claim for money damages was properly maintained as an adversary proceeding under Rule 7001, the Court would nonetheless dismiss Plaintiff's claim for damages under FDUTPA because it is preempted by the ADA. As discussed above, the gravamen of Plaintiff's claims is that LATAM unfairly retains the price customers paid for air travel after cancelling a leg of their itinerary pursuant to the No-Show Policy, allowing the airline to resell the tickets and "net the price of a single flight twice." *See*, *e.g.*, Complaint ¶ 26; *see also id.* ¶¶ 69-70 (LATAM "resell[s] class members' seats and make[s] twice or more the money on the same seat[s]" when those seats "were already paid for by the class members and [] the class members intended to use [them.]"). Accepting these allegations as true (as the Court must), it is plain that an airline's failure to issue refunds for forfeited tickets "relate[s] to" prices charged by an air carrier and, thus, that claims based on those allegations are preempted by the ADA. *See* 49 U.S.C. § 41713(b)(1).

claims for monetary damages are more appropriately adjudicated in the Debtors' claims process,

and all Plaintiff's rights regarding such process are reserved.

With the dismissal of the injunctive and equitable claims for relief, Rule 7001(7) can no

longer serve as the bases for the Plaintiff's request for a declaratory judgment in Count One.

While Rule 7001(9) permits adversary proceedings "to obtain a declaratory judgment," they

must "relat[e] to any of the foregoing" provisions—*i.e.*, subsections (1) through (8). Without an

equitable or injunctive claim remaining, Count One does not "relat[e] to" any proceeding that

---

Moreover, in analogous situations, courts have held that FDUTPA claims are preempted by the ADA. For example, in *Roman*, a plaintiff brought an FDUTPA claim against an airline, alleging that it failed to provide expedited security pursuant to its "Shortcut Security" program, for which plaintiff paid an extra fee. 2020 WL 255202, at *1. The complaint alleged that the airline used the program to "make up for lost profits," *id*. at *3; the airline stated that it offered the program to make "'ancillary revenues' which directly affect[ed] the prices it [could] charge," *id*. at *4. The Court agreed with the airline and held that the ADA preempted the FDUTPA claim because the program had a "'significant effect' on [the airline's] prices" and, accordingly, the plaintiff could not use the FDUTPA to challenge the program and thus attempt to "alter prices [it] charged." *Id*. So too here. Plaintiff concedes that the No-Show Policy provides LATAM a "profitable resale scheme" that "enlarg[es] its already formidable bottom line." Complaint ¶ 26. Those allegations "attempt to use FDUTPA to regulate" LATAM's No-Show Policy and "alter prices charged by" LATAM and revenue it receives from those charges. *See Roman*, 2020 WL 255202, at *4; Complaint ¶ 26. Accordingly, Count Four is preempted by the ADA.

Plaintiff's arguments to the contrary are unavailing. First, TM Solutions claims it is "not challenging LATAM's right to charge any particular rate," but only its "deceptive and unfair scheme of cancelling [tickets] for which it already has received full payment . . . and then reselling [the] cancelled tickets . . . ." Opposition at 8-9. It argues this allegation states a claim under *Bailey v. Rocky Mountain Holdings, LLC*, 889 F.3d 1259 (11th Cir. 2018), because the court in *Bailey* reasoned that "[w]hile the rates of air carriers are currently free from regulation, their practices are not." 889 F.3d at 1268. But the *Bailey* court held that the FDUTPA claim at issue *was* preempted by the ADA and reasoned that the Department of Transportation, not private parties, were responsible for regulating the practices of air carriers. *See id*. at 1269, 1273. Second, Plaintiff puts too much emphasis on *Zamber v. American Airlines, Inc*., by unpersuasively arguing that a state law's impact on an air carrier's prices is an "inherently factual question" that should not be decided on a motion to dismiss. *See* Opposition at 9; 282 F. Supp. 3d 1289, 1302 (S.D. Fl. 2017). *Zamber*, however, addressed a question "of first impression as to ADA preemption" *in the entire federal court system*: whether the ADA's preemption provision applies to travel insurance marketed by an airline but provided and sold by a third party. *Zamber*, 282 F. Supp. 3d at 1302. By definition, a case of first impression in the entire federal court system necessarily means there is a dearth of authority from which a court could determine that the pleadings, as a matter of law, fail to state a claim for relief. In contrast, courts regularly determine state consumer fraud claims are preempted, as a matter of law, by the ADA when they would have the impact of altering the prices charged by a carrier (as opposed to a third party). *See, e.g.*, *Wolens*, 513 U.S. at 226-28 (reversing denial of motion to dismiss and holding as a matter of law that plaintiff's claims under state consumer fraud statute concerning airline's frequent flyer program related to price); *Roman*, 2020 WL 3303084, at *4 ("No amount of discovery will change the fact that the fees Defendant charges affect the price it can charge consumers, and an attempt to regulate said fees via FDUPTA would therefore have a 'significant effect' on Defendant's prices"). As such, *Zamber* is inapposite and does not compel a different result.

can permissibly be brought in an adversary proceeding.[31] *See In re Smithey*, No. 10-30310, 2012

WL 3958060, at *3 (Bankr. N.D. Ohio Sept. 10, 2012) ("Bankruptcy Rule 7001(9) provides that

this Court can enter declaratory judgment, but limits such authority to only those matters

'relating to any of the forgoing' adversary proceedings for which an otherwise jurisdictional

basis exists . . . Rule 7001(9) cannot be used to create jurisdiction where no jurisdiction exists");

*In re Lernout & Hauspie Speech Prod., N.V.*, 264 B.R. 336, 339 (Bankr. D. Del. 2001) ("Rule

7001(9) applies only where the underlying action qualifies under one of the other sections")

(citing Fed. R. Bankr. P. 7001 advisory committee's note (1983)). As such, the Court dismisses

Count One of the Complaint.

Because every cause of action in the Complaint is subject to dismissal for the reasons set

forth above, the Court need not rule on the parties' remaining arguments concerning whether the

allegations in the Complaint survive a motion to dismiss, including the import of the class

allegations, or whether Plaintiff is bound to arbitrate its claims against LATAM.

Plaintiff's Request for a Declaratory Judgment is Preempted by the ADA

Even if Plaintiff could maintain Count One under Rule 7001(9), the Court finds that

Count One should be dismissed because it is preempted by the ADA for the same reasons set

forth above concerning Plaintiff's unjust enrichment claim (Count Three) and FDUTPA claim

(Count Four).

The Complaint alleges that the No-Show Policy is unconscionable because "LATAM

should be required to obtain customers' consent before cancelling flights that consumers already

paid for and that they expect to use." Complaint ¶ 43. Accordingly, Plaintiff seeks a judgment

---

[31]   Plaintiff does not meaningfully challenge this argument.  Instead, it claims only that Count Four is not subject to
dismissal because it has standing to pursue injunctive relief under Rule 7001(7), Opposition at 18, which is
unpersuasive for the reasons set forth above.

from the Court declaring that the No-Show Policy is "void and unenforceable" and "LATAM has an affirmative duty to request a consumer's consent before cancelling paid trips[.]" *Id.* ¶ 47. As with the other causes of action, the gravamen of Count One is that LATAM should not be permitted to retain the price customers paid for air travel after cancelling a leg of their itinerary pursuant to the No-Show Policy. *See, e.g., id.* ("LATAM creates a financial burden on class members who purchased (and will continue to purchase) LATAM's flights, unaware of the risks they face in the event they cannot complete one leg of their flights"). Plaintiff purports to anchor Count One to common law principles of unconscionability, as well the FDUTPA. *See id.* ¶ 43; Opposition at 17 (contending that the FDUTPA permits "anyone aggrieved by a violation of the [FDUTPA] may bring an action to obtain a declaratory judgment that an act or practice violates this part . . . .") (quoting Fla. Stat. § 501.211(1)).

Accordingly, as with Plaintiff's unjust enrichment and FDUTPA claims, the Complaint itself effectively pleads that Count One "relate[s] to" LATAM's prices. *See* 49 U.S.C. § 41713(b)(1). The Court finds that enforcing Count One would impact the prices LATAM charges and revenue it receives and, thus, holds that Count One is preempted by the ADA. *See, e.g., Roman*, 2020 WL 255202, at *3 (attempt to curtail expedited security charge as deceptive under the FDUTPA preempted by ADA because the complaint alleged that the fee helped the airline "make up for lost profits"). Put simply, if the Court granted Plaintiff relief under Count One and declared the No-Show Policy void, or found that LATAM has an affirmative duty to obtain the consent of its passengers prior to the cancellation of return flights, that would have a significant effect on LATAM's prices because it would not be able to resell the cancelled seats.

Plaintiff's arguments to the contrary are unavailing. First, the fact that the "law of unconscionability" itself "does not explicitly address LATAM's rates," Opposition at 13, is

immaterial; a law need only be "*enforce*[*d*]" in a manner that "*relate*[*s*]" to an airline's prices to be preempted and nothing in the ADA suggests that law itself must expressly reference prices or rates. 49 U.S.C. § 41713(b)(1) (emphasis added). To reason otherwise would gut the "broad scope" the Supreme Court has afforded to the term "relating to." *See Morales*, 504 U.S. at 383-84. Second, the Court cannot credit Plaintiff's argument that LATAM forgoes saving fuel costs by flying planes made heavier by reselling seats emptied under the No-Show Policy. *See* Opposition at 14. The Complaint does not mention the "fact" that cancelling reservations pursuant to the No-Show Policy actually saves the Debtors' fuel costs, let alone the economic tradeoff between fuel costs LATAM could save compared to revenue it could receive by reselling seats.

Accordingly, Plaintiff's declaratory judgment claim in Count One must be dismissed for the independent reason that it is preempted by the ADA.

### The Motion to Amend

As described above, Plaintiff seeks leave to file the Proposed AC, which adds new factual allegations, a new class representative, a new proposed state subclass, and an additional cause of action under Pennsylvania's consumer fraud statute. In broad strokes, Plaintiff contends that the Court should grant leave to file the Proposed AC because of the lenient standard for amendment under Federal Rule of Civil Procedure 15(a)(2). *See* Fed. R. Civ. P. 15(a)(2) ("[t]he court should freely give leave when justice so requires"). Plaintiff claims that the proposed amended and supplemental claims in the Proposed AC sufficiently plead claims upon which relief can be granted and, accordingly, the Court should grant the Motion to Amend. LATAM contends that the Proposed AC fails to correct the infirmities in the Complaint and fails to state a claim for the causes of action set forth by Torres. As such, it contends that amendment is futile and the Court

should deny the Motion to Amend. The Court agrees with LATAM for the reasons set forth below.

<u>Whether Amending the Complaint is Futile</u>

A party may amend its complaint as of right within the time limits imposed by Rule 15(a)(1) of the Federal Rules. Outside the prescribed time frames, the opposing party must consent or the moving party must obtain leave of the court. Fed. R. Civ. P. 15(a)(2).[32] Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend the complaint] when justice so requires." *Id*. The decision to grant or deny a motion to amend rests within the "sound judicial discretion of the trial court." *Adelphia Recovery Tr. v. FPL Grp., Inc. (In re Adelphia Commc'ns Corp.*), 452 B.R. 484, 489 (Bankr.S.D.N.Y.2011). A court may exercise its discretion to deny leave to amend where, *inter alia*, the amendment would be futile. *In re Enron Corp.*, 367 B.R. 373, 382 (Bankr. S.D.N.Y. 2007). Futility constitutes a good reason to deny leave to amend. *Id; see also Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993) (leave to amend may be denied when the proposed amendment is "unlikely to be productive"). "[I]f the proposed amended complaint would be subject to 'immediate dismissal' for failure to state a claim or on some other ground, the Court will not permit the amendment." *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F.Supp.2d 281, 298 (S.D.N.Y.2000) (citation omitted); *see also Chan v. Reno*, 916 F.Supp. 1289, 1302 (S.D.N.Y.1996) ("An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis."). As when assessing whether a cause of action states a claim under Rule 12(b)(6), if the movant has "at least colorable grounds for relief, justice" requires that its motion to amend be granted. *See Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.*, 748

---

[32]    Federal Rule of Procedure 15(a)(2) applies to this proceeding through Bankruptcy Rule 7015.

F.2d 774, 783 (2d Cir.1984); *see also In re Nokia Oyj (Nokia Corp.) Sec. Litig*., 423 F.Supp.2d 364, 410 (S.D.N.Y.2006) (in assessing whether proposed amended claims are futile, a court applies the same standard as when assessing a motion for failure to state a claim and thus "must treat the facts alleged by plaintiff as true, and view them in the light most favorable to him."). "The same standard applies to motions to supplement the complaint pursuant to Rule 15(d)." *Fjord v. AMR Corp. (In re AMR Corp.),* 527 B.R. 874, 880 (Bankr. S.D.N.Y. 2015). As such, leave to supplement should be freely granted unless, *inter alia*, the supplement would be futile. *Id*.

LATAM contends the proposed amended and supplemental claims in the Proposed AC are futile for the same reasons it argued the claims in the Complaint are subject to dismissal. In sum, LATAM contends: (1) the factual allegations as to TM Solutions in the Proposed AC are materially the same as in the initial Complaint; (2) Torres' unjust enrichment claim is preempted by the ADA and otherwise fails on the merits; (3) Torres' UTPCPL claim is preempted by the ADA and otherwise fails on the merits; (4) the declaratory judgment claim (i) cannot survive alone; (ii) is preempted by the ADA; (iii) fails to seek relief for future harm; and (iv) fails to allege the No-Show Policy is unconscionable and, therefore, fails to show it is void and unenforceable. Accordingly, LATAM argues the proposed amendments do not address the infirmities in the Complaint and thus amending the Complaint is futile. Opp. Am. at 3. It also argues that it is futile for TM Solutions to supplement the Complaint with Torres' allegations because they are also subject to dismissal. *See id*. at 1. The Court assesses these arguments below.

### *Whether the Proposed Amended and Supplemented Unjust Enrichment Claim is Futile*

As explained above, TM Solutions' unjust enrichment claim is precluded by well-established law.  Its allegations are essentially that LATAM inequitably refused to refund the price of its employees' cancelled flights pursuant to the No-Show Policy and, instead, retained TM Solutions' payment and resold the seats for additional profit. *See* Compl. ¶¶ 21, 26. That allegation necessarily relates to how LATAM prices its flights and is thus precluded by the ADA's broad preemption clause.

While the reason Torres did not board her outbound flight differs from Egusquiza's and Guerrero's, Torres' unjust enrichment claim rests on substantially the same allegations. She too alleges that her inability to board her outbound flight caused LATAM to cancel her return flights pursuant to the No-Show Policy. *See* Proposed AC ¶ 37 ("Torres offered to buy alternative flights to the Galapagos on another airline and keep[] the return flights . . . [but] the LATAM agent said that was not possible because the entire trip was now void."). Like TM Solutions, she also alleges that the No-Show Policy, as applied to her, allowed LATAM to inequitably keep the money she paid for her ticket and potentially profit further from reselling her return flights to another customer. *See id.* ¶ 42 (asking Torres for consent to resell her cancelled flights would "deprive LATAM of a rather profitable resale scheme under its current '[N]o-[S]how' [P]olicy, whereby LATAM nets the price of a single flight twice, enlarging its already formidable bottom line."). The Proposed AC presents no materially different allegations to correct the deficiencies in the Complaint—deficiencies that are fatal to both the Complaint and the Proposed AC as a matter of law. Accordingly, Torres' unjust enrichment claim, as pleaded in the Proposed AC, is preempted by the ADA. Thus, it would be futile to grant Plaintiff leave to amend the Complaint to assert the claim.

> ***Whether the Proposed Amended***
> ***FDUTPA Claim is Futile***

Only TM Solutions purports to bring the FDUTPA claim because Torres is not part of the

Florida Subclass as defined in the Proposed AC.  *See* Proposed AC ¶¶ 73-91. The Proposed AC

does not materially change TM Solutions' allegations.[33] The FDUTPA claim in the Proposed AC

is still subject to dismissal because: (1) TM Solutions lacks Article III standing to pursue

injunctive relief; (2) the claim for money damages cannot be maintained in an adversary

proceeding; and (3) in any event, the claim is preempted by the ADA because it relates to how

LATAM prices its airfare. *See supra*.

### *Whether the Proposed UTPCPL Claim is Futile*

The Complaint did not contain a Pennsylvania Subclass or claim for relief under the

UTPCPL. As such, the Court must assess Torres' allegations in the Proposed AC to determine if

supplementing the Complaint with a cause of action under UTPCPL is futile. For the reasons set

forth below, the Court finds the UTPCPL claim is preempted by the ADA and, accordingly, the

Proposed AC is futile with respect to this claim.

The UTPCPL provides a private right of action for "[a]ny person who purchases or leases

goods or services . . . and thereby suffers any ascertainable loss of money or property . . . as a

result of the use or employment by any person of a method, act or practice declared unlawful by

section 3" of the statute.  73 PA. STAT. AND CONS. STAT. § 201-9.2(a) (West 2022).  Section 3 of

the UTPCPL prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices

in the conduct of any trade or commerce." *Id*. § 201-3(a). "To establish a claim under the

---

[33]   TM Solutions has added an allegation in the Proposed AC that LATAM has and will continue to "unabated[ly]" violate the FDUTPA and, thus, it and putative class members may continue to suffer similar harm absent an order from the Court enjoining LATAM's actions. Proposed AC ¶ 89.  The Court finds this conclusory allegation fails to correct the deficiencies in the Complaint.  The Proposed AC still lacks allegations as to what future flights Plaintiff plans to book on LATAM, what future flights it has already booked, or any other factual allegations giving rise to an inference of future harm sufficient to confer TM Solutions Article III standing.

UTPCPL for deceptive conduct, a plaintiff must demonstrate: (1) a deceptive act that is likely to deceive a consumer acting reasonably under similar circumstances; (2) justifiable reliance; and (3) that the plaintiff's justifiable reliance caused ascertainable loss." *Hall v. Equifax Info. Servs. LLC*, 204 F. Supp. 3d 807, 810 (E.D. Pa. 2016). Torres seeks both an injunction and money damages under the UTPCPL. Proposed AC ¶¶ 107-108.

The crux of Torres' Pennsylvania consumer fraud claim is materially the same as TM Solutions' claim under the Florida analogue. Torres alleges that LATAM's enforcement of the No-Show Policy is "unfair and deceptive" because, *inter alia*, LATAM: (a) gouges the price for changing flights in such a way that forces consumers to purchase flights with other airlines when they cannot make one leg of their round-trip reservation, Proposed AC ¶ 97; (b) resells flights that were already paid for by the class members and that the class members intended to use, *id*. ¶ 98; and (c) does not request consumers' consent to cancel their flights, so it can then resell the class members' seats and make twice the money (or more) on the same seat, *id*. ¶ 99.

LATAM contends that this count is preempted by the ADA for the same reasons TM Solutions' FDUTPA claim is preempted—because (i) it is a state-law claim that attempts to expand LATAM's obligations beyond its contracts with its customers, and (ii) it relates to how LATAM prices its flights. *See* Opp. Am. at 8-9. It also argues that the UTPCPL claim fails on the merits because Torres: (i) fails to allege that the No-Show Policy is likely to deceive, and (ii) fails to plead justifiable reliance (*i.e*., that she purchased her tickets because of some representation by LATAM that it would not cancel the remainder of her itinerary if she failed to fly the first leg of her trip). *Id*. at 10.

The Court finds that, like TM Solutions' FDUTPA claim, Torres' UTPCPL claim is preempted by the ADA because it "relate[s] to" how LATAM prices its airfare. *See* 49 U.S.C. §

41713(b)(1). This is apparent from the face of the Proposed AC, as Torres recognizes that the

purpose of the No-Show Policy is for LATAM to enhance its revenue—an allegation that

necessarily relates to pricing. *See* Proposed AC ¶¶ 97-99. Courts dismiss UTPCPL actions when

allegations relate to the prices an air carrier charges, including claims that a customer is entitled

to a refund of his or her fare or fees. *See Shulick v. United Airlines*, No. 11-1350, 2012 WL

315483, at *5-6 (E.D. Pa. Feb. 2, 2012) (UTPCPL claim alleging airlines "misrepresented their

ability . . . to provide services" and deceptively failed to issue refunds for weather-related

cancellations found to "directly impact . . . ticket prices" and thus is preempted by the ADA).

Plaintiffs attempt to distinguish *Shulick* by arguing that the while enforcement of the

UTPCPL claim here may "constrain [LATAM's] ability to cancel flights," it would do so only to

ensure that LATAM fulfills its "own self-imposed undertakings, *i.e.*, the provision of flights that

customers have paid for." Rep. Am. at 8. However, this distinction is belied by the holding in

*Wolens* because Plaintiffs are not trying to hold LATAM to a voluntarily undertaken contractual

obligation, but rather seek a declaration that the contractual provision at issue (the No-Show

Policy) was unfair and deceptive. *See Wolens*, 513 U.S. at 229. Finally, Plaintiffs argue that a

state law's impact on airline prices is a factual question ill-suited to determination on a motion to

dismiss. *Id*. (quoting *Zamber*, 282 F. Supp. 3d at 1302).  The Court finds otherwise for the

reasons already set forth above.  The courts in *Wolens* and *Shulick*, among others, granted

motions to dismiss by holding that claims related to airline pricing were preempted by the ADA.

*See*, *e.g*., *Wolens*, 513 U.S. at 226-28 (reversing denial of motion to dismiss and holding as a

matter of law that plaintiff's claims under state consumer fraud statute concerning airline's

frequent flyer program related to airline's pricing).

The Court finds that Torres' UTPCPL claim in the Proposed AC is preempted by the ADA and, accordingly, the Court need not address the parties' other arguments concerning this cause of action.

### *Whether The Proposed Amended*
### *Declaratory Judgment Claim is Futile*

Because the unjust enrichment and state consumer fraud claims in the Proposed AC still fail as a matter of law, the Plaintiff still cannot maintain a cause of action for a declaratory judgment that LATAM's No-Show Policy is unconscionable, void, and unenforceable. *See* Bankruptcy Rule 7001(9) (permitting adversary proceedings "to obtain a declaratory judgment *relating to* [subsections (1) through (8)]") (emphasis added). In any event, as set forth above, because *both* TM Solutions' and Torres' allegations in the Proposed AC concerning the No-Show Policy are "related to" how LATAM prices its flights, they are preempted by the ADA. *See* 49 U.S.C. § 41713(b)(1). Accordingly, the Court finds the Proposed AC's attempts to amend and supplement the declaratory judgment claim are futile.

### **CONCLUSION**

For the reasons set forth above, the Court grants the Motion to Dismiss the Complaint, and denies the Motion to Amend with prejudice. Despite being on notice of the deficiencies in the Complaint through LATAM's Opposition, Plaintiff has failed to correct any of these infirmities in the Proposed AC. Further, based on the allegations in the Proposed AC, the Court finds that Torres' claims have not (and cannot) survive preemption by the ADA. Accordingly, the Court denies the Motion to Amend without leave to replead. *See Fernald v. Southwest Airlines Co*., No. 11cv0453, 2011 WL 13254382, at *4 (S.D. Cal. Sept. 28, 2011) ("Because the ADA preempts [plaintiff's unjust enrichment and state consumer fraud claims], the Court grants [defendant's] motion to dismiss . . . The Court does not see any set of circumstances in which

these state law claims can survive preemption.  Because an attempt to amend would be futile, the

Court dismisses the claims with prejudice").

IT IS SO ORDERED.

Dated: August 31, 2022
       New York, NY

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge